UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 09-10243-MLW |
| RYAN HARRIS AND TCNISO, INC. | ) ) ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT HARRIS' MOTION
TO DISMISS INDICTMENT FOR LACK OF VENUE OR TO TRANSFER VENUE**

The United States asks the Court to deny defendant Ryan Harris' Motion to Dismiss the Indictment for Lack of Venue or to Transfer Venue to the Eastern District of California.

**I.    Introduction**

The indictment charges Harris and his now-defunct company, TCNiSO, with conspiring with and aiding and abetting others who stole free, faster, and anonymous internet access from their local internet service providers ("ISPs"). Specifically, the indictment alleges that Harris developed and distributed cable modem hacking products and services that were designed to, and indeed did, enable users to steal internet access from local ISPs. Harris not only provided users with the necessary software and hardware, but he also provided them with valuable, ongoing customer support. This support included developing product updates, providing tutorials and advice about how to use the products, as well as operating an online platform through which users exchange stolen computer code and computer addresses that were used to steal free, fast, and anonymous internet access.

The indictment specifically references three unindicted co-conspirators, one of whom, "DShocker," is a Massachusetts resident. (Because he was a juvenile at the time of the

1

indictment, he was identified only by his online moniker).  DShocker successfully used Harris' products and services to steal free, faster, and anonymous internet access from ISPs in this district.  The indictment alleges that Harris knew DShocker, that DShocker communicated repeatedly with Harris and the other co-conspirators, and that Harris knew that DShocker was successfully using his products. [Ind. ¶¶ 21-22, 30].[1]  A second co-conspirator, Craig Phillips, is a former business associate of Harris' who lives in San Diego. [Ind. ¶ 4].[2]  The third unindicted co-conspirator is a former business associate of Harris' who resides in Kentucky.  Other than the co-conspirators, Harris's company, TCNISO, had only approximately three additional employees, one of whom was Harris's wife.

In his motion, the defendant argues that the indictment should be dismissed for lack of venue because (1) co-conspirator DShocker's alleged Massachusetts-based conduct is insufficient to support venue; (2) the indictment does not identify any "other" alleged Massachusetts users; and (3) the indictment does not allege that Harris was physically present in Massachusetts or that he "specifically sought contact" with anyone in Massachusetts.  At various points in his brief, the defendant also seems to conflate into his venue argument a challenge to the sufficiency of the evidence that he anticipates the government offering at trial.

Harris's challenges to venue in Massachusetts are without merit, because each of the eight counts of the indictment sufficiently alleges venue.  Count one, the conspiracy count,

---

[1] DShocker was prosecuted in this district for cable modem hacking and other crimes. He pled guilty and has completed his juvenile detention sentence.

[2]   Phillips was prosecuted in this district for his involvement with Harris in developing and distributing cable modem hacking products and services, and providing ongoing customer support to, Massachusetts residents.  His case was transferred, via Fed. R. Crim. P. 20, to the Southern District of California, where he pled guilty to an information and is awaiting sentencing.

alleges that the co-conspirators committed a series of overt acts in, and involving the District of Massachusetts.  Counts two through six, the aiding and abetting counts, allege that the underlying completed crimes of computer fraud and wire fraud took place in Massachusetts. As is set forth below, it is well settled that, for a conspiracy charge, venue is proper in any district in which a co-conspirator committed an overt act and, for an aiding and abetting charge, it is proper in any district where the principal completed the underlying crime.

In the context of challenging venue, the defendant contends that the indictment's aiding and abetting computer fraud charge (count two) is duplicitous.  Although he does not seek to dismiss the charge on that basis, and such a dismissal would be inappropriate, the government acknowledges that the defendant raises a legitimate concern, insofar as the indictment references Harris' aiding and abetting Massachusetts users other than DShocker.  The government intends to resolve this issue by notifying defense counsel of the recently-learned identities of additional Massachusetts users and by superseding the indictment to add additional charges that specifically relate to these users' conduct.  Accordingly, the Court does not need to address this issue at this time.

Harris also asks, in the alternative, that the Court exercise its discretion to transfer venue to the Eastern District of California.  This request makes no sense, however, as this prosecution has no connection to the Eastern District of California.  None of the conduct that gave rise to this prosecution occurred there.  Neither the defendant, nor the witnesses, nor evidence is located there.  TCNiSO is now defunct, and in any case, was based in San Diego, in the Southern District, not the Eastern District, of California.  Harris lives in Oregon.   It therefore makes far more sense to continue with the prosecution in Massachusetts, where the case was indicted, much of the criminal conduct took place, and most of the anticipated trial witnesses are located.

Finally, to the extent that Harris is challenging the sufficiency of the evidence that he anticipates the government offering at trial, this challenge is premature, and the Court need not consider it at this point.

## II.     Argument

### A.     The Court Should Deny the Motion to Dismiss for Improper Venue

"When a defendant moves to dismiss an indictment prior to his or her trial, the court will *accept as true* all of the factual allegations set forth in the indictment." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996) (emphasis added).  See also United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985); United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975)).  Venue is not an element of the offense, and the government bears the burden of proving it, not by a reasonable doubt, but merely by a preponderance of the evidence.  United States v. Lanou, 137 F.3d 656, 661 (1st Cir. 1998) (citing  United States v. Georgacarakos, 988 F.2d 1289, 1293 (1st Cir. 1993)).  The venue determination should be made "in the light most favorable to the government."  Id.  A district court's venue determination will be reviewed only for "abuse of discretion."  United States v. Lipscomb, 299 F.3d 303, 338 (5th Cir. 2002).

#### 1.     The Conspiracy Charge (Count One)

The conspiracy count adequately alleges venue, because it charges that a co-conspirator committed an overt act in the District of Massachusetts.  For conspiracy charges, venue exists where any co-conspirator committed any overt act in furtherance of the alleged conspiracy. United States v. Joselyn, 99 F.3d 1182, 1191 (1st Cir. 1996) (citing United States v. Uribe, 890 F.2d 554, 558 (1st Cir. 1989)).  Furthermore, the overt act of one conspirator in a district suffices to establish venue for all other co-conspirators in that district.  United States v. Al-Talib,

55 F.3d 923, 928 (4th Cir. 1995).  It follows that "the defendant need not have been physically present in the trial district during the conspiracy."  Joselyn, 99 F.3d at 1191 (citing United States v. Santiago, 83 F.3d 20, 24-25 (1st Cir. 1996) and others).  Acccord United States v. Caldwell, 16 F.3d 623, 624 (5th Cir. 1994) ("Venue in a conspiracy case is proper in any district where any overt act occurred and even where it permits trial against a defendant in a district where he never set foot"); United States v. Perez, 280 F.3d 318, 329 (3rd Cir. 2002).  Moreover, "the overt act necessary to support venue in a conspiracy case does not have to be substantial." United States v. Mitchell, 70 Fed. Appx. 707, 711 (4th Cir. 2003) (noting that "insubstantial acts such as telephone calls to the district have served to establish venue in conspiracy cases").  Id.[3]

Here, the indictment sets forth a series of overt acts allegedly committed by co-conspirator DShocker in Massachusetts, including: repeatedly communicating online with Harris and other co-conspirators about cable modem hacking; downloading the defendant's cable modem hacking software; successfully using the defendant's products and services to steal free internet access and hide his identity from ISPs within the district.  (Ind. ¶¶ 5, 13, 30-36).  The indictment also alleges that TCNISO shipped three hacked cable modems and Harris's "Hacking the Cable Modem" book to an undercover FBI agent in Massachusetts.  (Ind. ¶ 39).

The defendant's arguments to the contrary are unavailing.  He repeatedly complains that the indictment fails to allege that either his business associates or he had physical contact with Massachusetts.  (Def's Motion p. 7, 15).  But, as set forth above, a defendant's physical presence

---

[3]See also United States v. Ramirez-Amaya, 812 F.2d 813, 816 (2nd Cir. 1987) (finding venue proper when cocaine flew over district); United States v. Shearer, 794 F.2d 1545, 1550-1551 (11th Cir. 1986) (finding venue proper based on automobile trip through and airplane flight over district); Untied Sates v. Lewis, 676 F.2d 508, 511 (11th Cir. 1982) (finding venue proper based on telephone calls to district); United States v. Prueitt, 540 F.2d 995, 1006 (9th Cir. 1976) (finding venue proper where marijuana was flown over district).

in the district is not required in order to establish venue. Joselyn, 99 F.3d at 1191. Likewise, he argues that the indictment fails to allege that either his business associates or he "specifically sought contact with" anyone in the district. (Def's Motion, p.7, 15). But neither the venue statute nor the case law interpreting it requires that a defendant have some type of heightened mens rea vis-a-vis the location of the district in order to establish venue. Harris cites no authority to support the proposition that such intentional contact is required. The defendant also argues that venue is only proper in the district in which "the crime charged occurred," or "where the offense was committed." (Def's Motion, p.8-9). But this argument does not help him. As is discussed above, in the conspiracy context, the crime "occurs" and is "committed" where an overt acts take place, which, in this case, is Massachusetts.

Indeed, the authority the defendant cites to support his argument actually undermines it. In Direct Sales Co. v. United States, 319 U.S. 703 (1943), although the sufficiency of the evidence, not venue, was at issue, the defendant apparently had no contact whatsoever with the trial district. He operated a nationwide mail order business out of New York, and he was convicted of conspiracy to violate narcotics laws in the District of South Carolina based on the fact that he mailed shipments of morphine sulphate to a doctor in South Carolina. There was no allegation, let alone proof, that the defendant had ever set foot in South Carolina.

### 2. The Aiding and Abetting Charges (Counts Two Through Six)

The indictment's aiding and abetting counts also adequately allege venue. In aiding and abetting charges, venue is proper where the principal committed the underlying crime. See, e.g., United States v. Mendoza, 108 F.3d 1155, 1156 (9th Cir. 1997); United States v. Winship, 724 F.2d 1116, 1125 (5th Cir. 1984); United States v. Kibler, 667 F.2d 452, 455 (4th Cir. 1982); United States v. Buckhanon, 505 F.2d 1079, 1083 (8th Cir. 1974); United States v. Jackson, 482

F.2d 1167, 1178-79 (10th Cir. 1973); United States v. Kilpatrick, 458 F.2d 864, 868 (7th Cir. 1972)(same).  As with conspiracy charges, for offenses that are committed in more than one district, venue lies properly in any district "in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  See United States v. Lanoue, 137 F.3d 656, 661 (1st Cir. 1998).

Here, counts two through six allege that the defendants aided and abetted the commission of underlying crimes that took place in Massachusetts.  In count two, the alleged underlying computer fraud consists of Massachusetts-based users' successfully making unauthorized accesses to the ISPs' networks in order to steal free, faster, and anonymous internet service.  (Indictment ¶¶ 40-41).  In counts three through six, the alleged underlying wire fraud consists of Massachusetts-based users' making wire transmissions in furtherance of a scheme to defraud the ISPs into providing free, faster and anonymous internet access.  (Indictment ¶¶ 42-43).  Each of these counts then alleges specific wire transmissions that were made by the Massachusetts-based co-conspirator, DShocker, in furtherance of the scheme to defraud.

Other courts have held upheld venue in aiding and abetting prosecutions in similar circumstances.  In Mendoza, for example, the Court held that venue in the Western District of Washington was proper where California-based defendants were charged with aiding and abetting Washington-based drug possession.  The Court reasoned that, "assuming those facts to be true, venue properly lies in the Western District of Washington because the crime of . . . aiding and abetting such [drug] possession occurs where the principal commits it."  Mendoza, 108 F.3d at 1156.  Likewise, the crimes of unauthorized access to protected computers and wire fraud charged here occurred where the principals committed them, namely, in Massachusetts.

7

The defendant's arguments to the contrary are without merit. Harris seems to conflate his venue arguments with a challenge to the sufficiency of the evidence, but this challenge is premature. Indeed, the Court in Mendoza rejected the defendant's analogous attempts to convert a motion to dismiss for lack of venue into a challenge to the sufficiency of the evidence. Like Harris here, in Mendoza, the defendants had made a number of arguments in support of their venue challenge, "having to do with whether they could have foreseen or intended that cocaine supplied in California would have ended up in Washington." Id. The Court rejected this argument. It properly focused its analysis only on the four corners of the indictment, reasoning that, "Whether the charges are proved remains to be seen, but that's a question for another day." Id.; United States v. Polizzi, 500 F.2d 856, 898-99 (9th Cir. 1994) (same)); United States v. Ochoa-Torres, 626 F.2d 689, 691-92 (9th Cir. 1980) (same).

### 3. Sellers of Criminal Tools Can be Criminally Liable

To the extent that Harris is making the legal argument that suppliers of criminal tools can never be criminally liable for crimes others commit with those tools, this argument fails on the merits. The case law, including several of the cases that Harris himself cites, make clear that criminal liability can attach to suppliers of criminal tools. In Falcone, for example, cited by Harris, the Court specifically noted that the defendants, who had sold sugar, yeast, and cans to purchasers, were "not charged with aiding and abetting illicit distilling" but hinted that, had they been charged with that narrower offense, the evidence would have supported a conviction. United States v. Falcone, 311 U.S. 205, 210-211 (1940).

In Direct Sales, also cited by Harris, the Court upheld the defendant's conspiracy conviction, stating that it did not intend Falcone "to create a sweeping insulation for sellers to known illicit users," but rather to stand for the more limited proposition "that one does not

8

become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally." Direct Sales Co. v. United States, 319 U.S. 703, 709 (1943). The Court noted that, while sugar, cans, and yeast supplied in Falcone could be used for many legitimate purposes, the morphine at issue in Direct Sales was "susceptible to harmful and illegal use." Id. at 710. The Court took the defendant's knowledge that its products could be put to illegitimate use, along with its high-quantity price breaks and its continued supply to doctors in increased amounts, to support the inference both that it knew that the doctors were selling it without a prescription and that intended to further their enterprise. Id. at 714-15.

In United States v. Garcia-Rosa, 876 F.2d 209, 216 (1st Cir. 1989), vacated on other grounds, the First Circuit followed Direct Sales and upheld a conspiracy conviction where the defendant loaned money to drug runners. The Court reasoned that an inference of the defendant's intent to join the conspiracy could be drawn from the fact that he was not in the business of lending money and that the loan was to be repaid in cocaine.

Here, although it is premature to address sufficiency of the evidence, the indictment alleges, and the government intends to prove, that Harris had the requisite intent to participate in the conspiracy and to aid and abet computer and wire fraud. He purposefully designed his products and services to be used to steal free, faster and anonymous internet access; he knew that DShocker and others were using his products and services in this manner; and he knew that his products were being used in Massachusetts. The government also intends to prove that Harris did not, as he seems to contend, merely put a benign product into the stream of commerce. Rather, he tried to ensure that his users were successful in stealing free, faster, and anonymous

internet service.  In that vein, he and his co-conspirators provided valuable ongoing customer support services.

The government will also prove that Harris played a continual game of "cat and mouse" with the ISPs, where ISPs would try to detect and block users from using Harris' products to steal service, and in response to those detection and blocking techniques, Harris would tweak his products so that ISPs could not detect or block their use.  Harris provided his users with add-on products such as CoaxThief, a computer program that enabled users to "sniff" for and steal legitimate subscribers' MAC addresses, which the users could then use to obtain free internet access.[4]  Harris also operated an online platform for his users to trade stolen MAC addresses with one another, for use in conjunction with his other cable modem hacking products and services.  Furthermore, as alleged in the indictment, Harris personally participated in this active trading of stolen MAC addresses.  And the government also plans to prove that Harris himself used TCNISO's cable modem hacking products at his San Diego apartment to steal free or faster internet access and hide his identity, thus demonstrating his knowledge and intent that his products be used illegally.

The government will prove that TCNISO distributed approximately 1,000 hacked cable modems nationwide and mailed approximately 100 of these devices to locations in Massachusetts.  The mailing of the modems typically took place in the small storefront where Harris was often present or from Harris' own apartment.  Given the volume of sales, the size of

---

[4] ISPs use MAC addresses to determine which computer users are paying customers. TCNISO's products allow users to steal the MAC address of a paying customer, to then change the MAC address on the user's cable modem to the address of the paying customer, and finally to connect to the ISP and receive the service paid for by the customer whose MAC address the user is fraudulently using.

the operation, and the direct mail component, it is reasonable to infer that Harris knew that Massachusetts residents were using his products and services.

### B. The Court Need Not Address The Duplicity Argument

In the context of challenging venue, the defendant contends that count two of the indictment is duplicitous because it folds into one aiding and abetting charge the underlying crimes committed by multiple unnamed Massachusetts users. Although he does not seek to dismiss the charge on that basis, and such a dismissal would be inappropriate, the government acknowledges that the defendant raises a legitimate concern. Without conceding that it is required to do so, the government will resolve this concern by superseding the indictment to break this charge into several counts – one for each individual Massachusetts user.

As the government has orally informed defense counsel, the agents have recently identified a number of Massachusetts-based users of the defendant's cable modem hacking products and services other than DShocker. Agents have interviewed several of those users, and the government will provide copies of those 302s to defense counsel in short order. Agents intend to interview still more users in the near future and will produce additional 302s to defense counsel.

Because the government will resolve this duplicity argument by identifying the known users to defense counsel and by superseding the indictment, the Court need not address this issue at this time.

**C.     The Court Should Deny the Motion to Transfer the Case to the Eastern District of California**

The defendant argues, in the alternative, that this Court should transfer venue to the Eastern District of California, pursuant to Fed. R. Crim. P. 21(b). The Court should deny this motion because venue is more appropriate in this district.

This case has no connection to the Eastern District of California. None of the parties, witnesses, or evidence is located there, and none of the conduct that gave rise to this prosecution occurred there. Rather, the only ancillary connection to the Eastern District of California is the fact that the tax fraud prosecution against Harris, if it proceeds, will likely be venued in that district, because that is where his allegedly fraudulent tax returns were filed.[5]

For this case, however, Massachusetts is by far the more appropriate venue. The computer and wire fraud crimes and many of the overt acts underlying the indictment took place in Massachusetts. The bulk of the witnesses are located in Massachusetts, including DShocker, the other Massachusetts-based users of the defendant's cable modem hacking products, representatives from the victimized ISPs, and the FBI case agents. The undersigned AUSA is in the District of Massachusetts, and the DOJ prosecutor is in Washington, D.C., which is a one-hour shuttle away.

---

[5] During the course of the investigation that led to this indictment, the IRS agent working on the investigation determined that Harris had failed to report on his tax returns the approximately $500,000 in income he derived from TCNISO from 2005-2008. But because there was no venue for tax charges in Massachusetts, the government did not include them in this indictment. Shortly after indictment, however, the undersigned prosecutors met with defense counsel, explained that the financial records demonstrated that Harris had filed fraudulent tax returns, and offered him the option of waiving venue on those tax charges so that the government could seek a superseding indictment in this district that would include tax counts. That way, Harris would have had to defend against only one prosecution in one district. He has declined to waive venue, however, so any tax prosecution will likely be brought in the Eastern District of California, where Harris sent his allegedly-fraudulent returns for filing.

Harris's argument that the Court should transfer the case to the Eastern District of California is not persuasive. Harris himself lives in Oregon, which is a plane ride either to Sacramento or Boston. His claim that the travel to Boston would be disruptive and stressful rings hollow, especially given that, as noted during his detention hearing, he is a seasoned international traveler who has traveled regularly to Hong Kong (where his wife is from) and has lived there for months at a time. The evidence and witnesses are not located in California. TCNISO was based in San Diego, in the Southern District, not the Eastern District, of California. In any case, it is long-since defunct and has shuttered. Accordingly, there are no known documents or other physical evidence remaining in San Diego.

Harris's claim that an equal number of witnesses are on the West Coast as the East Coast is meritless. The only probable West Coast witness is co-conspirator Craig Phillips, who lives in San Diego, not in the Eastern District of California. Harris notes that the one or two TCNISO storefront employees and the arresting FBI agents are in California, but none are located in the Eastern District of California. In any case, few, if any, of this group are likely to be called as trial witnesses.

Furthermore, transferring venue at this juncture would waste resources. Discovery on the initial indictment is largely complete, and defense counsel has been steeped in the facts of this case from the inception. Transferring it to new defense counsel, and potentially a new prosecutor, this late in the litigation process makes no sense. Transferring the case to California would not only waste resources, it would significantly delay the trial and would be extremely burdensome to the government, as the case agents would have to travel across the country, as would both prosecutors (if they continued with the prosecution). The Court should therefore decline to transfer the case to the Eastern District of California. See United States v. Winter, 663

F.2d 1120, 1150 (1st Cir. 1981) (finding no abuse of discretion in denying transfer motion where two defendants lived in Las Vegas but others lived in Massachusetts, as did many of the Government's witnesses and some of the defense witnesses), abrogated on other grounds by Salinas v. United States, 522 U.S. 52 (1997); United States v. Stephenson, 895 F.2d 867, 875 (2nd Cir. 1990) ("Although [the defendant] points to several considerations favoring the District of Columbia as a more convenient forum, the residences of a number of Government witnesses and the location of the prosecutor and the documents and tape recordings . . . favored holding the trial in the Southern District [of New York]. The district court did not abuse its discretion in denying the Rule 21(b) motion").

## CONCLUSION

For the above reasons, the Court should deny the defendant's motion.

          Respectfully submitted,
          CARMEN M. ORTIZ
          United States Attorney

By:   */s/ Adam Bookbinder*
      Adam J. Bookbinder
      Assistant U.S. Attorney
      Mona Sedky
      Department of Justice Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

          */s/ Adam Bookbinder*
          Adam Bookbinder

Dated: February 8, 2011