# EXHIBIT A

Westlaw.

SUBCRL § 12.2                                                                            Page 1
2 Subst. Crim. L. § 12.2 (2d ed.)

Substantive Criminal Law
Current through the 2011 Update

Wayne R. LaFave[a0]

Part
Two. General Principles
Chapter
12. Conspiracy

### § 12.2. Acts and mental state

**West's Key Number Digest**

West's Key Number Digest, Conspiracy ☞24
West's Key Number Digest, Conspiracy ☞24.5
West's Key Number Digest, Conspiracy ☞27
West's Key Number Digest, Conspiracy ☞28
West's Key Number Digest, Conspiracy ☞40.1

**Legal Encyclopedias**

C.J.S., Conspiracy §§ 96

C.J.S., Conspiracy 108

C.J.S., Conspiracy 111 to 112

C.J.S., Conspiracy 123 to 126

C.J.S., Conspiracy 210

C.J.S., Conspiracy 241 to 243

As with other crimes, conspiracy requires certain acts and in addition a certain mental state. In the case of conspiracy, there must be: (1) an agreement between two or more persons, which constitutes the act; and (2) an intent thereby to achieve a certain objective which, under the common law definition, is the doing of either an unlawful act or a lawful act by unlawful means. Many jurisdictions also require an overt act in furtherance of the conspiracy, but this is usually viewed as an evidentiary requirement rather than yet another element of the of- fense.

(a) The Agreement.[1] As noted earlier, an essential element of every crime is an act (or omission).[2] The crime of conspiracy might appear to be an exception to this general rule, however, in that a conspiracy may be found to exist by virtue of the fact that the parties thereto have entered into an agreement. But conspiracy is not an exception, for the agreement itself is the requisite act.[3] As one court observed: "When two agree to carry

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 2

[an unlawful design] into effect, the very plot is an act in itself …. The agreement is an advancement of the intention which each has conceived in his mind; the mind proceeds from a secret intention to the overt act of mutual consultation and agreement."[4]

The agreement is all-important in conspiracy, for one must look to the nature of the agreement to decide several critical issues, such as whether the requisite mental state is also present,[5] whether the requisite plurality is present,[6] and whether there is more than one conspiracy.[7] As courts have so often said, the agreement is the "essence"[8] or "gist"[9] of the crime of conspiracy.

One might suppose that the agreement necessary for conspiracy is essentially like the agreement or "meeting of the minds" which is critical to a contract, but this is not the case.[10] Although there continues to exist some uncertainty as to the precise meaning of the word in the context of conspiracy,[11] it is clear that the definition in this setting is somewhat more lax than elsewhere.[12] A mere tacit understanding will suffice,[13] and there need not be any written statement or even a speaking of words which expressly communicates agreement.[14] As the Supreme Court has put it: "The agreement need not be shown to have been explicit. It can instead be inferred from the facts and circumstances of the case."[15] It is possible for various persons to be parties to a single agreement (and thus one conspiracy) even though they have no direct dealings with one another[16] or do not know the identify of one another,[17] and even though they are not all aware of the details of the plan of operation[18] or were not all in on the scheme from the beginning.[19]

Because most conspiracies are clandestine in nature, the prosecution is seldom able to present direct evidence of the agreement. Courts have been sympathetic to this problem, and it is thus well established that the prosecution may "rely on inferences drawn from the course of conduct of the alleged conspirators."[20] This notion has been traced back[21] to an oft-quoted instruction in an 1837 English case, where the judge told the jury: "If you find that these two persons pursued by their acts the same object, often by the same means, one performing one part of an act and the other another part of the same act, so as to complete it, with a view to the attainment of the object which they were pursuing, you will be at liberty to draw the conclusion that they have been engaged in a conspiracy to effect that object."[22] Such language, it has been noted, might be erroneously interpreted as meaning that there need be only a concurrence of wills rather than concurrence resulting from agreement,[23] and may in practice have resulted in "neglect of the fundamental fact that there is an agreement to be proved."[24]

Assume that *A* wants to burglarize a store and thus approaches *B* to solicit his assistance in the commission of the crime, that upon hearing *A*'s plan *B* manifests his complete concurrence in the scheme and expresses his willingness to participate, but that *B* secretly intends not to go through with the plan and has merely feigned agreement because he wishes to trap *A*. Is there a conspiracy under these circumstances? No is the answer traditionally given by the courts.[25] *B* quite clearly is not guilty of conspiracy, if for no other reason because he does not have the intent-to-burglarize mental state;[26] *A* does have the requisite mental state, but yet may not be convicted of conspiracy because there has been no agreement and thus no criminal act.[27] Although it has been suggested that *A* might appropriately be convicted of attempted conspiracy on those facts,[28] the Model Penal Code unilateral approach to conspiracy[29] (generally followed in modern recodifications[30]) instead makes it possible for *A* to be convicted of conspiracy.[31] There is something to be said for that result: *A*'s culpability is hardly decreased by *B*'s secret intention, and, while the chances of the scheme succeeding may be minimal under these circumstances, *A* has nonetheless engaged in conduct which provides unequivocal evidence of his firm purpose to commit a crime.[32]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 3

Although it is generally true that an act is not required when there is instead an omission which constitutes the failure to perform a legal duty,[33] there would not appear to be any set of circumstances in which a failure to agree instead of an agreement would suffice for the crime of conspiracy. For example, a conspiracy not to pay certain taxes is not established by the absence of any agreement to pay those taxes.[34] However, conduct of an individual which constitutes a failure to perform a legal duty, such as the failure of a law enforcement official to enforce the law against a certain group, is relevant as some evidence that the individual had entered into an agreement with the group.[35]

Is it possible for a person to become a party to the crime of conspiracy even in the absence of any agreement on his part? The question is deliberately stated in this way, for the inquiry is whether the principles applicable in determining whether one is a party to a substantive crime[36] are also applicable to conspiracy. As we shall see,[37] it is possible for one to become a party to a crime directly committed by another without there being any agreement or communication of any kind between the two persons. For example, *A* is an accomplice to murder if, knowing that *B* and *C* have set out to kill *D,* he prevents a warning from reaching *D,* and this is so even though *A's* actions were not by preconcert with *B* and *C* and did not become known to *B* and *C* prior to the killing.[38] This is because *A* has actually aided in the murder of *D* and rendered the aid with the intent that *D* be killed. But, on these facts may it be concluded by like analysis that *A* is a member of a conspiracy with *B* and *C* because *A* knew of the conspiracy and intentionally gave aid to the conspiratorial objective?

The Supreme Court has assumed without deciding the issue that the answer is yes,[39] and other courts have taken the position that aiding a conspiracy with knowledge of its purposes suffices to make one a party to the conspiracy.[40] In support of that view, it has been argued that one who aids what is known to be a conspiracy is deserving of punishment, for he has the requisite evil intent and also has taken some action to bring that intent to fruition.[41] Although he has not increased the danger to the community in the same way as other conspirators by enhancing the chances of the objective being achieved through mutual support and encouragement, he has added to the danger by giving aid which makes it more probable that the criminal objective will be achieved.[42] Moreover, if giving aid to a known conspiracy is recognized as an independent ground for conviction of conspiracy, then "the impetus to derive a fictional consensus to support the liability would be diminished."[43]

On the other hand, it has been objected that the aiding and abetting theory is not applicable in the circumstances stated above. "A person does not aid and abet a conspiracy by helping the 'conspiracy' to commit a substantive offense, for the crime of conspiracy is separate from the offense which is its object. It is necessary to help the 'conspiracy' in the commission of the crime of conspiracy, that is, in the commission of the act of agreement."[44] Thus, so the argument goes, one may become a conspirator without agreement by giving aid only if the assistance is that of bringing two or more persons together with the intention that they reach an agreement to commit a crime.[45] On a more practical level, taking into account the several disadvantages which may flow from being a conspiracy defendant,[46] there is the contention that one who aids a conspiracy should be subjected to prosecution and punishment on some theory other than that he has become a member of the conspiracy.[47] On this basis, the Model Penal Code characterizes such activity as an attempt.[48]

**(b) The Overt Act Requirement.**[49] At common law a conspiracy was punishable even though no act was done beyond the mere making of the agreement.[50] This is still the rule in the absence of a statute providing otherwise,[51] but most of the states now require that an overt act in furtherance of the plan be proven for all[52] or specified[53] conspiratorial objectives. In a few states this overt act must be a "substantial step" toward commission of the crime.[54] On the federal level, an overt act is specifically required by the general conspiracy statute,[55] and thus the absence of such a requirement in subsequently enacted federal conspiracy statutes deal-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 4

ing with specific subjects have been taken to reflect an intent by Congress to instead follow the common law as to those other provisions.[56]

The statutes uniformly require an overt act by only one of the conspirators,[57] and the act need not be criminal or unlawful in itself.[58] If the defendant charged with committing the only overt act is acquitted, then the other alleged members of the conspiracy must also be acquitted.[59]

The overt act provisions in the conspiracy statutes raise the issue whether the act is a part of the offense or merely an element of proof. A few statutes make this clear,[60] but most are open to both constructions. The Supreme Court currently regards the overt act merely as evidence of the offense,[61] but this has not always been the rule.[62] The problem is rarely important except for purposes of the statute of limitations,[63] jurisdiction[64] ] or venue.[65]

"The function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work,' ... and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence."[66] Thus the overt act may be the substantive offense which was the object of the conspiracy,[67] but may not be simply a part of the act of agreement.[68]

Courts have said that the overt act must be a step towards the execution of the conspiracy,[69] an act that tends to carry out the conspiracy,[70] an act to effect the object of the conspiracy,[71] or a step in preparation for effecting the object.[72] However, these definitions have sometimes led to confusion of the overt act with the object of the conspiracy. Thus it has sometimes been required that the overt act be the commencement of the consummation,[73] criminal,[74] or an element of the offense which is the object of the conspiracy.[75] These decisions are incorrect,[76] for they are inconsistent with the function of the overt act requirement as stated above.[77]

If the agreement has been established but the object has not been attained,[78] virtually any act will satisfy the overt act requirement.[79] Thus unexplained possession of a large quantity of dynamite,[80] an interview with a lawyer,[81] attending a lawful meeting,[82] picking a lock,[83] making a phone call,[84] delivering goods without the proper invoices,[85] distributing handbills in violation of an injunction,[86] and giving a co-conspirator money to deliver to another[87] have all been held to be overt acts in the context of the criminal object alleged. The overt act requirement may be satisfied by an omission,[88] and it may be the commission of some crime other than the object of the conspiracy.[89]

The overt act requirement may be said to be a legislative determination that mere agreement to commit the offense is insufficient to warrant criminal prosecution.[90] It has been suggested, however, that an overt act should not be required if the contemplated crime is serious, likely of completion, or likely to encourage future criminal activity.[91] The Model Penal Code excepts conspiracies to commit felonies of the first or second degree from the overt act requirement[92] on the ground that in such instances "the importance of preventive intervention is *pro tanto* greater than in dealing with less serious offenses."[93] However, this exception has not been generally adopted in the recent codes, including those which in other respects have tended to follow the Model Penal Code approach.[94]

(c) The Mental State.[95] Although the crime of conspiracy is "predominantly mental in composition,"[96] there has nonetheless always existed considerable confusion and uncertainty about precisely what mental state is required for this crime. The traditional definition of conspiracy does not focus upon the requisite state of mind,[97] and the matter has often been dealt with ambiguously by the courts[98] and has been largely ignored by the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 5

commentators.[99] As we shall see, this is undoubtedly attributable to two factors: (1) it is conceptually difficult to separate the mental state requirement from the agreement which constitutes the act;[100] and (2) as with all inchoate crimes, it is necessary to take into account the elements of the crime which is the objective.[101]

**(1) Intent to Agree Distinguished.** At the outset, it is useful to note that there are really two intents required for the crime of conspiracy.[102] Every conspiracy involves an agreement, so it must be established that the several parties intended to agree. But such an intent is "without moral content,"[103] and thus it is also necessary to determine what objective the parties intended to achieve by their agreement. Only if there is a common purpose to attain an objective covered by the law of conspiracy[104] is there liability.

One of these intents may exist without the other. Quite clearly there may be an intent to agree without there also being a common intent to achieve an unlawful objective, as where $A$ and $B$ agree to burn certain property and $A$ knows the property belongs to $C$ but $B$ (perhaps because he has been misled by $A$) believes that the property belongs to $A$. On the other hand, two persons may share an unlawful objective without having reached an agreement; $A$ and $B$ might both want $C$'s property burned and yet have reached no agreement in that regard—even if they had communicated their intentions to one another.[105]

The intent to agree is so intimately tied up with the agreement (the act part of the crime) that it is best dealt with in that context. Indeed, it may even be said that such intent is not really part of the *mens rea* of conspiracy; as one court put it, the state of mind in conspiracy "does not refer to the act of conspiring, but to the fruits of the conspiracy."[106] Thus, the concern in what follows is not with the intent to agree but rather with the additional mental state which is required in order to make the agreement a criminal conspiracy.

**(2) Intent to Achieve Objective.** Although there may be some uncertainty in existing law on the requisite state of mind because of the varied phrases used by the courts[107] and the occasional assertion that liability is based upon "joining" or "adhering" to a group,[108] it may generally be said that the mental state required is an intent to achieve a particular result[109] which is criminal[110] or which though noncriminal is nonetheless covered by the law of conspiracy.[111] (As is considered in more detail later,[112] certain noncriminal objectives are included within the common law definition and also in some statutory formulations of the crime.) This has been characterized as a specific intent,[113] although it has also been said that it would be difficult "to conceive of any crime in which the intent is less specific"[114] because of the many different objectives which might be intended. Doubtless we would be better off if the phrase "specific intent" were abandoned because of the confusion which it has caused,[115] but to the extent that it has meaning it is fair to say that conspiracy is a specific intent crime.[116]

Confusion is most likely to arise in those cases where the objective of the conspiracy, if achieved, is itself a crime, for under such circumstances the mental state for that crime must also be taken into account. Clearly, a "conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself."[117] If $A$ and $B$ agree to take $C$'s property, for example, this is not a conspiracy to commit the crime of larceny unless $A$ and $B$ had the intent to permanently deprive required for commission of larceny.[118] Likewise, where $D$ and $E$ agree to conceal $F$, this is not a conspiracy to violate the statute making it an offense to conceal a person against whom it is known a federal warrant has issued unless $D$ and $E$ had that knowledge.[119]

On the other hand, the fact that conspiracy requires an intent to achieve a certain objective means that individuals who have together committed a certain crime have not necessarily participated in a conspiracy to commit

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

that crime. To take the example given by the Model Penal Code draftsmen,[120] assume that two persons plan to destroy a building by detonating a bomb, though they know and believe that there are inhabitants in the building who will be killed by the explosion. If they do destroy the building and persons are killed, they are guilty of murder, but this is because murder may be committed other than with an intent-to-kill mental state.[121] Their plan constitutes a conspiracy to destroy the building, but not a conspiracy to kill the inhabitants, for they did not intend the latter result.[122] It follows, therefore, that there is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result.[123]

A somewhat different problem is that presented in People v. Horn,[124] where the defendants were convicted of conspiracy to commit murder. There was evidence that the defendants had been so intoxicated as to lack the capacity to entertain malice aforethought, meaning their scheme, if carried out, would have been only voluntary manslaughter. The trial judge's refusal to instruct on the lesser offense[124.1] of conspiracy to commit voluntary manslaughter was held to be reversible error. A dissent in Horn cogently pointed out that concepts of diminished capacity and the like, applicable to determine the level of a criminal homicide, did not carry over to conspiracy, where only an intent mental state (unadorned by further malice aforethought or premeditation-deliberation distinctions) need be proved. The failure of the Horn majority to accept that reasoning is doubtless attributable to a desire to afford conspiracy defendants the same sentence-mitigating benefits they would have as to the object crime. Such a concern is especially legitimate in Horn, where, as the majority emphasized, "the punishment for conspiracy to commit a homicide is the same as the punishment for the conspired felony."

Horn was later disapproved in People v. Cortez,[125] largely because of two intervening legislative actions regarding two of the linchpins in the Horn analysis: the legislature had (i) abolished the diminished capacity defense, and (ii) amended the murder statute by adding the declaration that "to prove the killing was 'deliberate and premeditated,' it shall not be necessary to prove the defendant maturely and meaningfully reflected upon the gravity of his or her act." The court in Cortez thus concluded that "all conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first-degree murder, and that all murder conspiracies are punishable in the same manner as murder in the first degree." As one member of the court had explained on an earlier occasion, conspiracy to commit murder "does not require, as a factual matter, a premeditated and deliberate intent to kill unlawfully. But an intent of such character is present in the context of a conspiracy, practically by definition, because it does not arise all of a sudden within a single person but is necessarily formed and then shared by at least two persons."[126] Other courts agree with the Cortez view that conspiracy to murder is necessarily a conspiracy to commit murder in the first degree,[127] but there is also contrary authority.[128]

**(3) Providing Goods or Services.**[129] While one "can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense,"[130] what mental state must exist regarding such contemplated facilitation? One problem in this area which has continued to perplex the courts is that of determining under what circumstances the supplier of goods or services to a known criminal undertaking becomes a party to the conspiracy. If the notion "that a conspiracy is a partnership in criminal purposes and that all are guilty who join it with knowledge of such purposes"[131] was generally accepted as the basis of conspiracy liability, then it might be said that all such suppliers are conspirators. But, as we have seen, it is intent rather than knowledge which is usually required, and thus the question is when the circumstances will suffice to show that the supplier shared the intent to achieve the criminal objective. The two leading cases on this point are United States v. Falcone[132] and Direct Sales Co. v. United States.[133]

In Falcone, a group of distillers and others who supplied them with sugar, yeast and cans were convicted of a conspiracy to operate illicit stills. The Court of Appeals reversed as to the suppliers, holding that the seller of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 7

innocent goods does not become a conspirator merely because of his knowledge that the buyer plans to use them in the commission of a crime. "[I]n prosecutions for conspiracy … his attitude towards the forbidden undertaking must be more positive. It is not enough that he does not forego a normally lawful activity, of the fruits of which he knows that others will make an unlawful use; he must in some sense promote their venture himself, make it his own, have a stake in its outcome." Before the Supreme Court, the government attempted to avoid that result by shifting to a theory that the suppliers had aided and abetted a conspiracy, but they did not succeed because the evidence did not show the suppliers knew that a conspiracy existed between others.

In Direct Sales, the defendant company, a registered drug manufacturer and wholesaler, was convicted of conspiracy to violate the narcotics laws upon a showing that the corporation "sold morphine sulphate to Dr. Tate in such quantities, so frequently and over so long a period it must have known he could not dispense the amounts received in lawful practice and was therefore distributing the drug illegally." The defendant contended that such a result was inconsistent with the rationale of Falcone, but the Supreme Court held that Falcone was not controlling because the "commodities sold there were articles of free commerce" while in the instant case they were "restricted commodities, incapable of further legal use except by compliance with rigid regulations." The Court noted that the character of the goods in the present case was important for two reasons: (1) to show that the defendant knew the illegal use to which they were being put by the buyer; and (2) to show that the defendant had taken "the step from knowledge to intent and agreement." Although declining to state that a "stake in the venture" would be essential, the Court found sufficient evidence of the defendant's intent from the fact that it actively stimulated repeated sales of unlimited quantities of a restricted commodity and thus received profits which it was known could only come from its encouragement of the illegal operation.

Lower courts have also placed reliance upon the factors stressed in Direct Sales: the quantity of the sales;[134] the continuity of the relationship between seller and buyer;[135] the seller's initiative or encouragement;[136] and the nature of the goods.[137] The failure of the seller to submit sales reports required by government regulations has also been considered relevant,[138] as has the failure to keep the usual business records or other secretive techniques.[139] Intent may also be inferred from the fact that the seller has made inflated charges,[140] that he has supplied goods or services which have no legitimate use,[141] or that the sales to the illegal operation have become the dominant proportion of the seller's business.[142]

Dictum in one case suggests that

a supplier who furnishes equipment which he *knows* will be used to commit a serious crime may be deemed from that knowledge alone to have intended to produce the result. … For instance, we think the operator of a telephone answering service with positive knowledge that his service was being used to facilitate the extortion of ransom, the distribution of heroin, or the passing of counterfeit money who continued to furnish the service with knowledge of its use, might be chargeable on knowledge alone with participation in a scheme to extort money, to distribute narcotics, or to pass counterfeit money. The same result would follow the seller of gasoline who knew the buyer was using his product to make Molotov cocktails for terroristic use.[143]

There do not appear to be any decisions reaching such a result,[144] although it certainly could be argued that taking account of the seriousness of the criminal objective is appropriate in striking a balance between the "conflicting interests … of the vendors in freedom to engage in gainful and otherwise lawful activities without policing their vendees, and that of the community in preventing behavior that facilitates the commission of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 8

crimes."[145]

(4) **Liability Without Fault.** Although the question has seldom been confronted in the cases, it seems clear that there is no such thing as liability without fault conspiracy. "While one may, for instance, be guilty of running past a traffic light of whose existence one is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past."[146] Thus, even if what was done under an agreement has been made unlawful on a liability without fault basis, there can be no conviction for conspiracy unless it is shown that the parties actually intended to achieve what was done.[147] This is as it should be, for the fact that a statute has made the doing of a certain act an offense without regard to mental fault can hardly be said to have a worked a change in the mental element of the distinct crime of conspiracy.[148]

The offense which is a liability without fault crime in all respects must be distinguished from the offense which does require a certain mental state as to some elements of the crime but not as to others. This is the case as to several federal statutes in which the attendant circumstances affording a basis for federal jurisdiction are made an element of the crime.[149] Although strict liability is often imposed as to these circumstance elements, for a time some federal courts held that knowledge of those circumstances was essential for a conspiracy to violate such statutes.[150] The better view, however, is that when one "sets out with the purpose of engaging in the proscribed conduct or producing the undesirable result with the lesser culpability concerning attendant circumstances that suffices for commission of the crime, and his preparation progresses to the point of a conspiracy or attempt, the reasons for reaching his behavior as an inchoate crime are in no way decreased by such lesser culpability concerning the circumstances."[151] The Supreme Court has now adopted this position as to the federal conspiracy statute.[152] The Court explained that a contrary result, requiring that the conspirators be aware of the facts giving rise to federal jurisdiction, would not serve the policies underlying the crime of conspiracy.[153] This means, for example, that a conspiracy to transport stolen goods in interstate commerce does not require knowledge by the conspirators that the stolen goods are to be transported across state lines, for such awareness would be unnecessary on a transportation charge.[154]

(5) **The "Corrupt Motive" Doctrine.** In People v. Powell,[155] the defendants were prosecuted for conspiracy to violate a statute requiring municipal officers to advertise for bids before purchasing supplies, and they asserted as a defense that they had acted in good faith because they were unaware of the existence of the statute. The court ruled in their favor, holding it was "implied in the meaning of the word conspiracy" that the agreement "must have been entered into with an evil purpose, as distinguished from a purpose to do the act prohibited, in ignorance of the prohibition." Under what has since become known as the corrupt motive doctrine, it has similarly been held, for example, that election officials may defend against a charge of conspiracy to violate the election laws by showing they were ignorant of those laws,[156] and that druggists could defend against a charge of conspiracy to violate the prohibition laws by establishing that they had erroneously interpreted those laws as not being applicable to their selling methods.[157]

Some courts have rejected the corrupt motive doctrine,[158] usually by resort to the general rule that ignorance of the criminality of one's conduct is no defense.[159] Several other courts which have considered the issue have accepted the Powell rule in one form or another. Because it was noted in Powell that the offense was "innocent in itself," many jurisdictions utilize the *malum in se-malum prohibitum* distinction[160] here and thus recognize a claim of good faith only if the criminal objective of the conspiracy was not inherently wrong.[161] Assuming circumstances in which the defense may be presented, some courts have taken the view that it is sufficient that the defendants were unaware of the statute prohibiting their objective,[162] while others require the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 9

absence of a corrupt or evil motive in a more general sense.[163]

The decisions accepting the corrupt motive doctrine usually give no explanation for it beyond the notion expressed in Powell that such a result is implied by the word conspiracy. That reasoning is hardly convincing,[164] and it has been questioned whether any other reason exists for making an exception to the general principle that ignorance of the law is no excuse.[165] Some commentators have suggested, however, that the corrupt motive doctrine is consistent with the rationale underlying the crime of conspiracy.[166] Thus, taking note of the fact that conspiracy reaches farther back than attempt to a point where immediate achievement of the objective is less likely, it is argued that "the danger arising from the mere act of agreement is less when the defendants are actuated by no 'criminal intent,' and so may be expected to desist if, before committing the act, they discover its illegality."[167] Similarly, it has been suggested that a group which combines to achieve an objective not inherently wrong and not known by them to be illegal poses no threat of continued wrongdoing because they are unlikely to undertake similar schemes after learning that the objective is against the law.[168] On the other hand, it has been observed that the corrupt motive doctrine has created much confusion concerning the *mens rea* requirements of conspiracy, and that the question of whether unawareness of regulatory offenses should be a defense is better resolved without regard to whether there was group activity.[169]

**(6) Plurality of Intent.** Although some of the decisions seem to suggest that when a person joins a group enterprise he is by that fact alone shown to have the same intention as the others,[170] it must be remembered that the question of whether the requisite intent was present must be separately considered as to each individual who is alleged to be a member of the conspiracy. If, for example, *A, B,* and *C* agree to take *D's* property, and *A* and *B* thereby intend to permanently deprive *D* of the property but *C* does not have that intent, then it is not correct to conclude that *C* is part of a conspiracy to commit larceny. Likewise, where the corrupt motive doctrine prevails, if *E, F,* and *G* agree to do a certain act which is not inherently wrong but which is proscribed by a statute of which only *E* and *F* are aware, then it may not be said that *G* was a member of a conspiracy to violate that statute.

Moreover, because of the plurality requirement[171] it must be shown that the requisite intent existed as to at least two persons. That is, there must be a common design, so that if only one party to the agreement has the necessary mental state then even that person may not be convicted of conspiracy.[172] This result has been questioned on the ground that there still exists a need to proceed against that person because of his criminal disposition,[173] and under the unilateral approach of the Model Penal Code[174] the one party to the agreement with the necessary mental state could be convicted.

[FNa0] David C. Baum Professor Of Law Emeritus And Professor Emeritus In The Center For Advanced Study, The University Of Illinois.

---

[FN1] See Marcus, Conspiracy: The Criminal Agreement in Theory and Practice, 65 Geo.J.J. 925 (1977); Orchard, "Agreement" in Criminal Conspiracy, 1974 Crim.L.Rev. 292, 335.

[FN2] See §§ 6.1, 6.2.

[FN3] This is made clear in most of the modern recodifications, which specify that an agreement is necessary. Ala.Code § 13A-4-3; Alaska Stat. § 11.31.120; Ariz.Rev.Stat.Ann. § 13-1003; Ark.Code Ann.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

§ 5-3-401; Colo.Rev.Stat.Ann. § 18-2-201; Conn.Gen.Stat.Ann. § 53a-48; Del.Code Ann. tit. 11, § 511; Fla.Stat.Ann. § 777.04; Haw.Rev.Stat. § 705-520; Ill.Comp.Stat.Ann. ch. 720, § 5/8-2; Ind.Code Ann. § 35-41-5-2; Iowa Code Ann. § 706.1; Kan.Stat.Ann. § 21-3302; Ky.Rev.Stat.Ann. § 506.040; La.Rev.Stat.Ann. § 14:26; Me.Rev.Stat.Ann. tit. 17-A, § 151; Mo.Ann.Stat. § 175.251; N.H.Rev.Stat.Ann. § 629:3; N.J.Stat.Ann. § 2C:5-2; N.Y.Penal Law § 105.00; N.D.Cent.Code § 12.1-06-04; Ohio Rev.Code Ann. § 2923.01; Or.Rev.Stat. § 161.450; Pa.Cons.Stat.Ann. tit. 18, § 903; Tenn.Code Ann. § 39-12-103; Tex.Penal Code Ann. § 15.02; Utah Code Ann. § 76-4-201; Wash.Rev.Code § 9A.28.040; Wis.Stat.Ann. § 939.31; Wyo.Stat. § 6-1-303.

Some in addition or instead say that what is necessary is that the defendant "combine," Fla.Stat.Ann. § 777.04; Idaho Code § 18-1701; Iowa Code Ann. § 706.1; La.Rev.Stat.Ann. § 14:26; N.M.Stat.Ann. § 30-28-2 (knowingly); Va.Code Ann. § 18.2-22; Wis.Stat.Ann. § 939.31; "conspire," Cal.Penal Code § 182; Fla.Stat.Ann. § 777.04; Ga.Code Ann. § 16-4-8; Idaho Code § 18-1701; Mich.Comp.Laws Ann. § 750.157a; Minn.Stat.Ann. § 609.175; Miss.Code Ann. § 97-1-1; Okla.Stat.Ann. tit. 21, § 421; R.I.Gen.Laws Ann. § 11-1-6; S.D.Cod.Laws § 22-3-8; Va.Code Ann. § 18.2-22; W.Va.Code § 61-10-31 ; or "plans with another," Ohio Rev.Code Ann. § 2923.01.

"The prohibition against criminal conspiracy, however, does not punish mere thoughts; the criminal agreement itself is the *actus reus*." United States v. Shabani, 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

[FN4] State v. Carbone, 10 N.J. 329, 91 A.2d 571 (1952).

[FN5] See § 12.2(c)

[FN6] See § 12.4(c).

[FN7] See § 12.3(b).

[FN8] E.g., Iannelli v. United States, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

[FN9] E.g., People v. Gem Hang, 131 Cal.App.2d 69, 280 P.2d 28 (1955).

[FN10] G. Williams, Criminal Law: The General Part 666 (2d ed.1961).

[FN11] "It is universally conceded that an agreement need not be express, although whether the idea of an implied agreement connotes only an unspoken, actual consensus or has broader, fictional components is by no means clear." Model Penal Code § 5.03, Comment at 419 (1985).

[FN12] However, a refusal of essential terms indicates no agreement. See United States v. Melchor-Lopez, 627 F.2d 886 (9th Cir.1980) (defendants refused terms offered by person arranging the transaction, so no agreement). Also, there is no agreement where the matter is still in the negotiation stage as to the critical and essential aspects of the criminal objective. United States v. Iennaco, 893 F.2d 394 (D.C.Cir.1990); Mondello v. State, 843 P.2d 1152 (Wyo.1992). But, there is no "general rule that as a matter of law there can be no conspiracy without proof of an agreement not merely to carry out an illegal objective but also on such terms as price, quantity, and time, place and manner of delivery." United States v. Sharif, 817 F.2d 1375 (9th Cir.1987) (distinguishing Melchor-Lopez, court holds agreement existed as to intermediaries to intended drug transaction even though their principals never reached

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 11

agreement on price and quantity).

[FN13] United States v. Hartley, 678 F.2d 961 (11th Cir.1982); State v. Mapp, 585 N.W.2d 746 (Iowa 1998); O'Neil v. State, 237 Wis. 391, 296 N.W. 96 (1941); Martinez v. State, 943 P.2d 1178 (Wyo.1997).

Ekholm v. State, 102 P.3d 201 (Wyo.2004).

[FN14] American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); United States v. Amiel, 95 F.3d 135 (2d Cir.1996); State v. Gillespie, 336 S.W.2d 677 (Mo.1960); Burk v. State, 848 P.2d 225 (Wyo.1993).

Charity v. Commonwealth, 49 Va.App. 581, 643 S.E.2d 503 (2007).

[FN15] Iannelli v. United States, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

But there are limits. See, e.g., United States v. Garcia, 151 F.3d 1243 (9th Cir.1998) (testimony "that generally gang members have a 'basic agreement to back up one another in fights,' " "which at most establishes one of the characteristics of gangs but not a specific objective of a particular gang—let alone a specific agreement on the part of its members to accomplish an illegal objective—is insufficient to provide proof of a conspiracy to commit assault or other illegal acts").

[FN16] United States v. Fincher, 723 F.2d 862 (11th Cir.1984), noting also that it makes no difference that a non-conspirator government undercover agent is the go-between linking the conspirators.

United States v. Haynes, 582 F.3d 686 (7th Cir.2009).

[FN17] Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947); United States v. Rangel-Arreola, 991 F.2d 1519 (10th Cir.1993); United States v. Watson, 594 F.2d 1330 (10th Cir.1979); People v. Moran, 166 Cal.App.2d 410, 333 P.2d 243 (1958).

[FN18] Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947); United States v. Burgos, 94 F.3d 849 (4th Cir.1996); United States v. Michelena-Orovio, 702 F.2d 496 (5th Cir.1983), on rehearing 719 F.2d 738 (5th Cir.1983).

[FN19] United States v. Burchinal, 657 F.2d 985 (8th Cir.1981).

[FN20] Interstate Circuit v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939). There are limits, of course, as to what inferences may be drawn. See, e.g., McBrady v. State, 460 N.E.2d 1222 (Ind.1984) (fact that *A,* hours after stealing *B*'s car, sold it to *C,* did not permit inference of pre-existing conspiracy to commit theft by *A* and *C*); Smith v. State, 902 P.2d 1271 (Wyo.1995).

And thus "the reasons why a defendant forfeits his confrontation rights apply with equal force to a defendant whose coconspirators render the witness unavailable, so long as their misconduct was within the scope of the conspiracy and reasonably foreseeable to the defendant," as where "several individuals enter into a conspiracy, and, as part of the conspiracy, they agree to kill all potential witnesses against them." United States v. Carson, 455 F.3d 336 (D.C.Cir.2006).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 12

[FN21] See Cousens, Agreement as an Element of Conspiracy, 23 Va.L.Rev. 989 (1937), describing the importation and acceptance of this instruction in the United States.

[FN22] Regina v. Murphy, 172 Eng.Rep. 502 (1837). This language persists in the cases even today. See, e.g., Griffin v. State, 248 Ark. 1223, 455 S.W.2d 882 (1970).

This language persists. See, e.g., Charity v. Commonwealth, 49 Va.App. 581, 643 S.E.2d 503 (2007).

[FN23] G. Williams, supra note 10, at 667. The same danger exists, it has been observed, because "courts have commonly referred to agreement or combination, in the alternative." Model Penal Code § 5.03, Comment at 419 (1985). Such language is also to be found in some of the more recent recodifications, e.g., Fla.Stat.Ann. § 777.04 ("agree, conspire, combine, or confederate"); Iowa Code Ann. § 706.1 ("an agreement or combination"); La.Rev.Stat.Ann. § 14:26 ("agreement or combination of two or more persons"); N.M.Stat.Ann. § 30-28-2 ("knowingly combining with another"); S.C.Code Ann. § 16-17-410 ("a combination between two or more persons"); Va.Code Ann. § 18.2-22 ("conspire, confederate, or combine"); Wis.Stat.Ann. § 939.31 ("agrees or combines with another").

[FN24] Cousens, supra note 21, at 910.

[FN25] United States v. Escobar de Bright, 742 F.2d 1196 (9th Cir.1984); People v. Foster, 99 Ill.2d 48, 75 Ill.Dec. 411, 457 N.E.2d 405 (1983); Moore v. State, 290 So.2d 603 (Miss.1974); Delaney v. State, 164 Tenn. 432, 51 S.W.2d 485 (1932); Williams v. State, 646 S.W.2d 221 (Tex.Crim.App.1983); Regina v. O'Brien, [1955] 2 D.L.R. 311 (1954).

United States v. Delgado, 631 F.3d 685 (5th Cir.2011).

[FN26] See 12.2(c)

[FN27] Because this is the reason, it thus follows that if *A, B* and *C* had joined together and indicated agreement with each other on a common criminal scheme, but only *B* secretly intended not to pursue the plan, *A* and *C* could still be convicted of conspiracy because there would be an agreement between them. Jung Quey v. United States, 138 C.C.A. 314, 222 F. 766 (1915).

[FN28] Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 927 n. 35 (1959). See also Robbins, Double Inchoate Crimes, 26 Harv.J.Legis. 1 (1989).

But courts have not been sympathetic to this view, at least when there were alternative means of reaching *A*'s conduct. See United States v. Anzalone, 40 M.J. 658 (NMCMR 1994) (theory of attempted conspiracy to commit espionage with supposed Soviet agent who was an FBI undercover agent rejected; court notes no similar bar to conviction for attempting to violate a lawful general order for same conduct); Hutchinson v. State, 315 So.2d 546 (Fla.App.1975) (attempted conspiracy theory rejected, court notes defendant could be convicted of solicitation); State v. St. Christopher, 305 Minn. 226, 232 N.W.2d 798 (1975) (attempted conspiracy theory rejected, but Model Penal Code unilateral approach accepted). Other cases holding there is no such crime as attempted conspiracy are collected in State v. Sanchez, 174 Ariz. 44, 846 P.2d 857 (App.1993), also so holding.

[FN29] Model Penal Code § 5.03(1) is stated in terms of what is required to establish liability with respect to any given actor, in contrast to the traditional approach of requiring agreement between two or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

more persons.

[FN30] Most modern codes, as does the Model Penal Code, define conspiracy in terms of a single actor agreeing with another, rather than as an agreement between two or more persons. Ala.Code § 13A-4-3; Alaska Stat. § 11.31.120; Ariz.Rev.Stat.Ann. § 13-1003; Ark.Code Ann. § 5-3-401; Colo.Rev.Stat.Ann. § 18-2-201; Conn.Gen.Stat.Ann. § 53a-48; Del.Code Ann. tit. 11, § 511; Fla.Stat.Ann. § 777.04; Ga.Code Ann. § 16-4-8; Haw.Rev.Stat. § 705-520; Ill.Comp.Stat.Ann. ch. 720, § 5/8-2; Ind.Code Ann. § 35-41-5-2; Kan.Stat.Ann. § 21-3302; Ky.Rev.Stat.Ann. § 506.040; Me.Rev.Stat.Ann. tit. 17-A, § 151; Minn.Stat.Ann. § 609.175; Mo.Ann.Stat. § 564.016; Mont.Code Ann. § 45-4-102; Neb.Rev.Stat. § 28-202; Nev.Rev.Stat.Ann. § 175.251; N.H.Rev.Stat.Ann. § 629:3; N.J.Stat.Ann. § 2C:5-2; N.M.Stat.Ann. § 30-28-2; N.Y.Penal Law § 105.00; N.D.Cent.Code § 12.1-06-04; Ohio Rev.Code Ann. § 2923.01; Or.Rev.Stat. § 161.450; Pa.Cons.Stat.Ann. tit. 18, § 903; Tex.Penal Code Ann. § 15.02; Utah Code Ann. § 76-4-201; Vt.Stat.Ann. tit. 13, § 1404 (but it also necessary that "at least two of the co-conspirators are persons who are neither law enforcement officials acting in official capacity nor persons acting in cooperation with a law enforcement official"); Va.Code Ann. § 18.2-22; Wash.Rev.Code § 9A.28.040; Wis.Stat.Ann. § 939.31; Wyo.Stat. § 6-1-303.

But this is no guarantee that each of these statutes will be interpreted as embracing the unilateral approach. Consider, State v. Colon, 257 Conn. 587, 778 A.2d 875 (2001) (declining to overrule holding in State v. Grullon, 212 Conn. 195, 562 A.2d 481 (1989), that conspiracy statute requires agreement between two coconspirators); People v. Foster, 99 Ill.2d 48, 75 Ill.Dec. 411, 457 N.E.2d 405 (1983) (despite use of Model Penal Code language, statute deemed not to depart from prior bilateral approach); State v. Pacheco, 125 Wash.2d 150, 882 P.2d 183 (1994) (despite Model Penal Code language, court relies on dictionary definition of agreement as meaning mutual agreement; court also states unilateral approach serves no purpose and has "potential for abuse"); State v. Heitman, 262 Neb. 185, 629 N.W.2d 542 (2001) (since "Legislature adopted the unilateral approach, … only the defendant need agree with another person; the second party can feign agreement," even where "the party who feigns agreement is a government agent"); Miller v. State, 955 P.2d 892 (Wyo.1998) (court decides to "follow the majority rule of our sister states" and "hold that valid public policy as well as the language and the legislative history of our conspiracy statute makes the unilateral approach to conspiracy the law").

Even if the general conspiracy statute in a particular jurisdiction is unilateral, it may be that some other, special conspiracy statute is not. See, e.g., Palato v. State, 988 P.2d 512 (Wyo.1999) (notwithstanding Miller, controlled substances conspiracy statute deemed bilateral because of different language used, and thus defendant not guilty of conspiracy to deliver controlled substances where government agent the only other participant).

[FN31] See, e.g., Saienni v. State, 346 A.2d 152 (Del.1975); Garcia v. State, 271 Ind. 510, 394 N.E.2d 106 (1979); Commonwealth v. Sego, 872 S.W.2d 441 (Ky.1994); State v. St. Christopher, 305 Minn. 226, 232 N.W.2d 798 (1975); State v. Tyma, 264 Neb. 712, 651 N.W.2d 582 (2002); State v. Valladares, 99 Wash.2d 663, 664 P.2d 508 (1983).

Suding v. State, 945 N.E.2d 731 (Ind.App.2011).

[FN32] Model Penal Code § 5.03, Comment at 400 (1985). "[S]uch an approach is justified in that a man who believes that he is conspiring to commit a crime and wishes to conspire to commit a crime has

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

a guilty mind and has done all in his power to plot the commission of an unlawful purpose." Friedman, Mens Rea in Conspiracy, 19 Modern L.Rev. 276, 283 (1956).

Compare Burgman, Unilateral Conspiracy: Three Critical Perspectives, 29 DePaul L.Rev. 75 (1979), criticizing the Model Penal Code approach.

[FN33] See § 6.2.

[FN34] Jones v. United States, 251 F.2d 288 (10th Cir.1958).

[FN35] Jezewski v. United States, 13 F.2d 599 (6th Cir.1926). But see Weniger v. United States, 47 F.2d 692 (9th Cir.1931) (fact that county sheriff did not enforce prohibition laws not sufficient to show that he had joined conspiracy of village officials to permit sale of liquor upon payment of certain fees to the village).

[FN36] See §§ 13.1 to 13.3.

[FN37] See § 13.2(a).

[FN38] State ex rel. Martin v. Talley, 102 Ala. 25, 15 So. 722 (1894).

[FN39] The government relied upon this theory in United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940), thus claiming that those who supplied the operators of illicit stills with sugar, yeast and cans were in a conspiracy with the operators. The Court responded: "The argument, the merits of which we do not consider, overlooks the fact that the opinion below [109 F.2d 579 (2d Cir.1940)] proceeds on the assumption that the evidence ... fell short of showing respondents' participation in the conspiracy or that they knew of it." However, on a later occasion the Court asserted that the Falcone decision "comes down merely to this, that one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally." Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943).

As to what will suffice to show such knowledge, it has been suggested that knowledge may sometimes be inferred from awareness that the objective could not be achieved except by cooperative efforts, in much the same way as knowledge of the nature of the operation will support the conclusion that a defendant was in a conspiracy with other parties he did not know but whose existence would be essential to the contemplated scheme. Comment, 16 UCLA L.Rev. 155, 159 n. 21 (1968).

[FN40] United States v. Kasvin, 757 F.2d 887 (7th Cir.1985); United States v. Galiffa, 734 F.2d 306 (7th Cir.1984); Duke v. United States, 233 F.2d 897 (5th Cir.1956); Luteran v. United States, 93 F.2d 395 (8th Cir.1937); Pattis v. United States, 17 F.2d 562 (9th Cir.1927); Simpson v. United States, 11 F.2d 591 (4th Cir.1926).

Compare United States v. Colon, 549 F.3d 565 (7th Cir.2008) (distinguishing Kasvin, as here defendant was a drug buyer who was *not* a major customer).

[FN41] Comment, supra note 39, at 171; Model Penal Code § 5.03, Comment at 420 (1985).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN42] Comment, supra note 39, at 172.

[FN43] Model Penal Code § 5.03, Comment at 420 (1985).

[FN44] Developments, supra note 28, at 934.

[FN45] As occurred in People v. Strauch, 240 Ill. 60, 88 N.E. 155 (1909), where the father introduced his son to another with the intent that they should enter into a conspiracy, which they did, and the court held that "if any two of the defendants charged entered into such conspiracy, and the third aided, assisted, and encouraged the making of such unlawful agreement, such third party would be equally guilty with those who actively participate in the unlawful agreement."

[FN46] See § 12.1(b).

[FN47] Model Penal Code § 5.03, Comment at 420 to 421 (1985).

[FN48] Model Penal Code § 5.01(3). That position has been criticized on the ground that "it would seem more appropriate to punish the aider and abettor ... with the penalties attaching to conspiracy rather than the penalties attaching to attempting the substantive object of the conspiracy. After all, the complicitous party is not only increasing the chances that the substantive offense will be consummated, he is facilitating the realization of the greater potential harm inherent in conspiracy." Comment, supra note 39, at 174.

[FN49] See Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 945–48 (1959); Note, 75 Colum.L.Rev. 1122, 1153–58 (1975).

[FN50] King v. Gill, 106 Eng.Rep. 341 (1818); Poulterers Case, 77 Eng.Rep. 813 (1611). Thompson v. State, 106 Ala. 67, 17 So. 512 (1895); Garland v. State, 112 Md. 83, 75 A. 631 (1910).

[FN51] United States v. Sassi, 966 F.2d 283 (7th Cir.1992) (while general federal conspiracy statute specifically requires overt act, several specific conspiracy statutes, including 21 U.S.C.A. § 846, do not so specify, and as to them proof of overt act unnecessary); State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950); Martin v. State, 197 Miss. 96, 19 So.2d 488 (1944); State v. Condrey, 349 S.C. 184, 562 S.E.2d 320 (2002). A few conspiracy statutes follow the common law rule that no overt act need be proven. Fla.Stat.Ann. § 777.04; Nev.Rev.Stat.Ann. § 175.251; N.M.Stat.Ann. § 30-28-2; Or.Rev.Stat. § 161.450; Va.Code Ann. § 18.2-22.

Although "the law does not punish criminal thoughts," the absence of an overt act requirement for conspiracy does not violate this principle, for "the criminal agreement itself is the *actus reus*." United States v. Shabani, 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

[FN52] This is the position taken in the great majority of conspiracy statutes. Ala.Code § 13A-4-3; Alaska Stat. § 11.31.120; Ark.Code Ann. § 5-3-401; Cal.Penal Code § 184; Colo.Rev.Stat.Ann. § 18-2-201; Conn.Gen.Stat.Ann. § 53a-48; Ga.Code Ann. § 16-4-8; Haw.Rev.Stat. § 705-520; Idaho Code § 18-1701; Ill.Comp.Stat.Ann. ch. 720, § 5/8-2; Ind.Code Ann. § 35-41-5-2; Iowa Code Ann. § 706.1; Kan.Stat.Ann. § 21-3302; Ky.Rev.Stat.Ann. § 506.050; La.Rev.Stat.Ann. § 14:26; Me.Rev.Stat.Ann. tit. 17-A, § 151; Minn.Stat.Ann. § 609.175; Mo.Ann.Stat. § 564.016; Mont.Code Ann. § 45-4-102; Neb.Rev.Stat. § 28-202; N.H.Rev.Stat.Ann. § 629:3; N.Y.Penal Law § 105.20; Ohio

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Rev.Code Ann. § 2923.01; Okla.Stat.Ann. tit. 21, § 423; Pa.Cons.Stat.Ann. tit. 18, § 903; S.D.Cod.Laws § 22-3-8; Tenn.Code Ann. § 39-12-103; Tex.Penal Code Ann. § 15.02; Vt.Stat.Ann. tit. 13, § 1404 ("substantial" and not "speech alone"); Wash.Rev.Code § 9A.28.040; W.Va.Code § 61-10-31; Wis.Stat.Ann. § 939.31; Wyo.Stat. § 6-1-303. See, e.g., State v. Heitman, 262 Neb. 185, 629 N.W.2d 542 (2001); State v. Ladd, 210 W.Va. 413, 557 S.E.2d 820 (2001).

[FN53] Ariz.Rev.Stat.Ann. § 13-1003 (all but felony upon person, arson and burglary); Del.Code Ann. tit. 11, § 511 (only if agreement is to aid another in crime); N.J.Stat.Ann. § 2C:5-2 (except for crime of first or second degree or distribution of controlled substance); Utah Code Ann. § 76-4-201 (except for capital offenses, felony against person, arson, burglary, or robbery).

[FN54] But this does not necessarily mean that the "substantial step" test in this context is as demanding as that used in many jurisdictions with respect to the act required for an attempt, discussed in § 11.4(d). See, e.g., State v. Dent, 123 Wash.2d 467, 869 P.2d 392 (1994) (this "requires a lesser act than does the attempt statute" and thus trial judge properly refused to charge it "requires more than mere preparation").

[FN55] 18 U.S.C.A. § 371.

[FN56] United States v. Shabani, 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994); Singer v. United States, 323 U.S. 338, 65 S.Ct. 282, 89 L.Ed. 285 (1945); Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913).

Whitfield v. United States, 543 U.S. 209, 125 S.Ct. 687, 160 L.Ed.2d 611 (2005).

[FN57] See Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947); United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211 (1915); United States v. Reyes, 302 F.3d 48 (2d Cir.2002); State v. Gonzalez, 69 Conn.App. 649, 796 A.2d 1225 (2002); People v. McGee, 49 N.Y.2d 48, 424 N.Y.S.2d 157, 399 N.E.2d 1177 (1979).

Compare Rosenberg, Several Problems in Criminal Conspiracy Laws and Some Proposals for Reform, 43 Criminal Law Bull. 427 (2007), proposing a requirement of an overt act by each defendant.

[FN58] Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); Castro v. United States, 296 F.2d 540 (5th Cir.1961); State v. Heitman, 262 Neb. 185, 629 N.W.2d 542 (2001); McCann v. State, 606 S.W.2d 897 (Tex.Cr.App.1980).

[FN59] DeWees v. State, 216 Tenn. 104, 390 S.W.2d 241 (1965). See § 12.4(c)(1).

[FN60] E.g., Ill.Comp.Stat.Ann. ch. 720, § 5/8-2 (evidence); Okla.Stat.Ann. tit. 21, § 423 (element of crime).

[FN61] Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). But federal courts nonetheless sometimes speak of the overt act requirement as one of the "elements of conspiracy"; see, e.g., United States v. Reyes, 302 F.3d 48 (2d Cir.2002).

[FN62] Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). The majority and dissenting opinions in this case give a good exposition of the two positions. See also Note, 37 Harv.L.Rev.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 17

1121 (1924).

[FN63] One overt act must be proven within the period of limitations, Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). Merely keeping the conspiracy secret after the object is accomplished is no overt act, ibid., but this exception is narrowly construed. United States v. Nowak, 448 F.2d 134 (7th Cir.1971) (false answers to FSLIC examinee after loan fraudulently obtained). See Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 948 (1959); Note, 70 Yale L.J. 1311 (1961).

[FN64] See Developments, supra note 28, at 947–48.

[FN65] Venue lies in any district where an overt act is committed or where the agreement is made. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). See generally Abrams, Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The Crime Committed Formula, 9 UCLA L.Rev. 751 (1962).

[FN66] Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). Accord: People v. Arroyo, 93 N.Y.2d 990, 695 N.Y.S.2d 537, 717 N.E.2d 696 (1999); State v. Miller, 677 P.2d 1129 (Utah 1984); Burk v. State, 848 P.2d 225 (Wyo.1993).

[FN67] United States v. Hayutin, 398 F.2d 944 (2d Cir.1968); State v. Erwin, 101 Utah 365, 120 P.2d 285 (1941).

[FN68] People ex rel. Conte v. Flood, 53 Misc.2d 109, 277 N.Y.S.2d 697 (1966).

[FN69] State v. Sullivan, 68 Ariz. 81, 200 P.2d 346 (1948).

[FN70] People v. Arroyo, 93 N.Y.2d 990, 695 N.Y.S.2d 537, 717 N.E.2d 696 (1999).

[FN71] Williams v. State, 16 Okla.Crim. 217, 182 P. 718 (1919).

[FN72] State v. Moretti, 52 N.J. 182, 244 A.2d 499 (1968). One court, probably incorrectly, has said the overt act must be done openly. Commonwealth v. Cohen, 203 Pa.Super. 34, 199 A.2d 139 (1964).

[FN73] Hall v. United States, 109 F.2d 976 (10th Cir.1940).

[FN74] State v. Heron, 94 Ariz. 81, 381 P.2d 764 (1963).

[FN75] People v. Bauer, 32 A.D.2d 463, 305 N.Y.S.2d 42 (1969).

[FN76] Thus, for example, a defendant may be convicted of a conspiracy to violate the wire fraud and mail fraud statutes where neither he nor his co-conspirator used the mails or other communications media, as the overt act need not be the objective and can be perfectly innocent in itself. United States v. Donahue, 539 F.2d 1131 (8th Cir.1976). See also State v. John, 213 Neb. 76, 328 N.W.2d 181 (1982).

[FN77] See text at note 66 supra. One court has even stated that an overt act was required at common law. State v. Gladstone, 78 Wash.2d 306, 474 P.2d 274 (1970).

[FN78] Rose v. St. Clair, 28 F.2d 189 (W.D.Va.1928).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN79] "An overt act can be the slightest action on the part of a conspirator," State v. Stewart, 643 N.W.2d 281 (Minn.2002), and "it does not matter how remote the act may be from accomplishing its object." State v. Miller, 677 P.2d 1129 (Utah 1984).

[FN80] Cline v. State, 204 Tenn. 251, 319 S.W.2d 227 (1958) (conspiracy to blow up school building).

[FN81] Kaplan v. United States, 7 F.2d 594 (2d Cir.1925).

[FN82] Bary v. United States, 248 F.2d 201 (10th Cir.1957) (conspiracy to overthrow the government).

[FN83] People v. Silbelo, 61 Cal.App. 92, 214 P. 462 (1923).

[FN84] United States v. Fellabaum, 408 F.2d 220 (7th Cir.1969); Singer v. United States, 208 F.2d 477 (6th Cir.1953); Bartoli v. United States, 192 F.2d 130 (4th Cir.1951); Smith v. United States, 92 F.2d 460 (9th Cir.1937).

[FN85] United States v. Harris, 409 F.2d 77 (4th Cir.1969).

[FN86] People v. Makvirta, 224 App.Div. 419, 231 N.Y.S. 279 (1928).

[FN87] People v. Wolff, 24 A.D.2d 828, 264 N.Y.S.2d 40 (1965). A payment to a co-conspirator is not an overt act, but merely seals the agreement. People v. Hines, 168 Misc. 453, 6 N.Y.S.2d 2 (1938).

[FN88] Gerson v. United States, 25 F.2d 49 (8th Cir.1928) (failure to list assets in bankruptcy).

But see People v. Abedi, 156 Misc.2d 904, 595 N.Y.S.2d 1011 (1993) ("since the purpose of requiring pleading and proof of overt acts is to show that a conspiracy has moved beyond the talk stage and is being carried out, alleging failure to act as an overt act seems to be a contradiction in terms"; alleged overt acts in instant case, failure to inform others of certain facts, not sufficient; Gerson distinguished because there "the overt act in question consisted of failing to list assets on a bankruptcy petition," which is "not so much an omission, but an act, namely, filing an incomplete petition").

[FN89] Commonwealth v. Byrd, 490 Pa. 544, 417 A.2d 173 (1980); State v. Sinnott, 72 S.D. 100, 30 N.W.2d 455 (1947).

[FN90] People v. George, 74 Cal.App. 440, 241 P. 97 (1925).

[FN91] Developments, supra note 28, at 948.

[FN92] Model Penal Code § 5.03(5).

[FN93] Model Penal Code § 5.03, Comment at 453 (1985).

[FN94] But a few excluded certain criminal objections.

[FN95] See Elliott, Lynch & Smith, Mens Rea in Statutory Conspiracy, 1978 Crim.L.Rev. 202; Marcus, Criminal Conspiracy: The State of Mind Crime—Intent, Proving Intent, and Anti-Federal Intent, 1976 U.Ill.L.F. 627.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN96] Harno, Intent in Criminal Conspiracy, 89 U.Pa.L.Rev. 624, 632 (1941).

[FN97] "The traditional definition said nothing about the actor's state of mind except insofar as the concept of agreement itself carries certain implications about his attitude toward the crime." Model Penal Code § 5.03, Comment at 403 (1985).

[FN98] "The verbalisms of the courts describing the intent in conspiracy are well-nigh terrifying. The decisions abound in statements that the intent must be 'evil,' 'wicked,' or 'corrupt'; that the federation must be 'corrupt,' and that the 'motives' of the actors must be 'evil' or 'corrupt.' " Harno, supra note 96, at 636.

[FN99] "It is a curious fact that in all that has been written about criminal conspiracy there is scant mention of intent." Id. at 629.

[FN100] See § 12.2(a).

[FN101] As stated by Justice Jackson, concurring in Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), conspiracy, "chameleon-like, takes on a special coloration from each of the many independent offenses on which it may be overlaid."

[FN102] See Harno, supra note 96, at 631.

[FN103] Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 936 (1959).

[FN104] See, § 12.3(a).

[FN105] Thus, in State v. King, 104 Iowa 727, 74 N.W. 691 (1898), *A* told *B* that if he would whip *C* someone would pay his fine, to which *B* replied that he did not want anyone to pay his fine because he had a grievance of his own against *C*. Thereafter, *B* beat *C* severely, after which *A* indicated his satisfaction with what *B* had done. The court held that there had been no agreement between *A* and *B* and thus no conspiracy.

See also Rude v. State, 851 P.2d 15 (Wyo.1993) (no factual basis for plea of guilty to conspiracy to murder on showing defendant shot and killed his son's wife after son expressed desire that she be killed; "Evidence showing a person overheard another person's desires and acted on those desires, without more, will not suffice" to show agreement).

[FN106] Elkin v. People, 28 N.Y. 177, 179 (1863).

[FN107] See note 98 supra.

[FN108] E.g., Laska v. United States, 82 F.2d 672 (10th Cir.1936); Burkhardt v. United States, 13 F.2d 841 (6th Cir.1926).

[FN109] It is *not* necessary that each conspirator have agreed "to commit or facilitate each and every part of the substantive offense," as one "can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense." Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 20

[FN110] This intent need not be so particular that the conspirator has in mind a particular time, place, victim, etc., but at least must relate to a particular type of criminal activity. See, e.g., United States v. Gallishaw, 428 F.2d 760 (2d Cir.1970) (jury instruction which, in effect, said defendant who supplied gun could be convicted if he knew generally that the others would "use the gun to violate the law" was reversible error).

When the state charges in a single count a conspiracy to commit several crimes, the jury must determine, as an essential element of the crime of conspiracy, the particular underlying offense or offenses the defendant conspired to commit. State v. Toth, 29 Conn.App. 843, 618 A.2d 536 (1993).

[FN111] The Model Penal Code, which requires a criminal objective for conspiracy, uses the phrase "with the purpose of promoting or facilitating its commission." Model Penal Code § 5.03(1).

Most of the modern codes specifically state that an "intent" or "purpose" to commit a crime is required. Ala.Code § 13A-4-3; Alaska Stat. § 11.31.120; Ariz.Rev.Stat.Ann. § 13-1003; Ark.Code Ann. § 5-3-401; Colo.Rev.Stat.Ann. § 18-2-201; Conn.Gen.Stat.Ann. § 53a-48; Del.Code Ann. tit. 11, § 511; Fla.Stat.Ann. § 777.04; Haw.Rev.Stat. § 705-520; Ill.Comp.Stat.Ann. ch. 720, § 5/8-2; Ind.Code Ann. § 35-41-5-2; Ky.Rev.Stat.Ann. § 506.040; La.Rev.Stat.Ann. § 14:26; Me.Rev.Stat.Ann. tit. 17-A, § 151; Mo.Ann.Stat. § 564.016; Mont.Code Ann. § 45-4-102; Neb.Rev.Stat. § 28-202; N.H.Rev.Stat.Ann. § 629:3; N.J.Stat.Ann. § 2C:5-2; N.M.Stat.Ann. § 30-28-2; N.Y.Penal Law § 105.00; Ohio Rev.Code Ann. § 2923.01; Or.Rev.Stat. § 161.450; Pa.Cons.Stat.Ann. tit. 18, § 903; Tenn.Code Ann. § 39-12-103 ; Tex.Penal Code Ann. § 15.02; Utah Code Ann. § 76-4-201; Wash.Rev.Code § 9A.28.040; W.Va.Code § 61-10-31; Wis.Stat.Ann. § 939.31. See Note, 75 Colum.L.Rev. 1122, 1145–48 (1975). Some, however, are not that specific. Fla.Stat.Ann. § 777.04 ("agree … to commit any offense"); Ga.Code Ann. § 16-4-8 ("conspires to commit any crime"); Iowa Code Ann. § 706.1 ("agreement … to engage in a course of conduct which will consist in whole or in part, of criminal acts"); Kan.Stat.Ann. § 21-3302 ("agreement with another to commit a crime or assist in a crime"); Minn.Stat.Ann. § 609.175 ("conspires with another to commit a crime"); N.D.Cent.Code § 12.1-06-04 ("agrees … to engage in or cause conduct which, in fact, constitutes an offense"); S.D.Cod.Laws § 22-3-8 ("conspires … to commit any offense"); Va.Code Ann. § 18.2-22 ("conspire … to commit a felony"); Wyo.Stat. § 6-1-303 ("agrees … that they … will commit a crime").

[FN112] See § 12.3.

[FN113] Harno, supra note 96, at 636. See, e.g., United States v. Childress, 58 F.3d 693 (D.C.Cir.1995) (district court erred in characterizing conspiracy as general intent crime, but such reference in instructions harmless error where instructions also gave jury adequate guidance on intent required).

In re Heather B., 369 Md. 257, 799 A.2d 397 (2002).

[FN114] Developments, supra note 103, at 935.

[FN115] See § 5.2(e).

[FN116] Thus, if specific intent is taken to mean an intent which goes beyond the required acts (e.g., in burglary, where the acts are breaking and entering a dwelling, and the intent is to commit a felony therein, see § 21.1), then conspiracy is a special intent crime because the intent is more than the intent

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 21

to agree. Also, the notion that a specific intent must be proved and may not be presumed from the commission of the acts has been applied in conspiracy cases. See Harno, supra note 96, at 637–39.

[FN117] Developments, supra note 103, at 939. See also United States v. Lichenstein, 610 F.2d 1272 (5th Cir.1980) (applying this rule, it necessary that conspiracy to submit false statement to U.S. Customs include the intent to deceive needed for the completed crime); McDonald v. State, 454 So.2d 488 (Miss.1984) (though defendant participated in possession and transportation of marijuana, he did so in effort to extricate his brother and a good friend from involvement in the activity, and thus was not a member of a conspiracy to possess with intent to distribute).

See also State v. Warburton, 145 Idaho 760, 185 P.3d 272 (App.2008) (defendant not guilty of conspiracy to deliver cocaine, as defendant, receiver of same, lacked requisite intent to deliver).

[FN118] There remains, of course, the possibility that the absence of the intent required for the other crime will not bar conviction for conspiracy if the intent is nonetheless wrongful. See, e.g., Rex v. Ripsal, 97 Eng.Rep. 852 (1762), where an indictment for conspiracy to extort failed to allege the mental state required for extortion, but was deemed sufficient on the ground that there had been a conspiracy to injure the victim.

[FN119] Fulbright v. United States, 91 F.2d 210 (8th Cir.1937).

[FN120] Model Penal Code § 5.03, Comment at 407 to 408 (1985).

[FN121] See § 14.4.

[FN122] State v. Baca, 124 N.M. 333, 950 P.2d 776 (1997) (because conspiracy requires an intent to achieve a particular result, there is no such thing as conspiracy to commit depraved-heart murder). Cf. People v. Swain, 12 Cal.4th 593, 49 Cal.Rptr.2d 390, 909 P.2d 994 (1996) (though "implied malice" murder exists where one kills another acting with intent to do an act, the natural consequences of which are dangerous to human life, such mental state not sufficient for conspiracy to murder, where only intent to kill will suffice).

[FN123] Palmer v. People, 964 P.2d 524 (Colo.1998) (crime of conspiracy to commit reckless manslaughter "would indeed pose a legal and logical conflict that is irreconcilable"); State v. Beccia, 199 Conn. 1, 505 A.2d 683 (1986) (no crime of conspiracy to commit arson in third degree, defined as recklessly causing damage to building by fire or explosion).

This must be distinguished from an offense such as reckless driving which is defined only in terms of conduct creating a risk of harm, where there might be a conspiracy to commit that crime if the intent is to create that risk—as by urging the driver of a car to go faster. Model Penal Code § 5.03, Comment at 408 (1985).

State v. Greene, 274 Conn. 134, 874 A.2d 750 (2005) (no crime of conspiracy to commit reckless homicide); State v. Donohue, 150 N.H. 180, 834 A.2d 253 (2003) ("A person cannot be guilty of conspiracy to commit a reckless assault").

So too, for the same reason there is no such crime as conspiracy to commit felony murder via an unintended killing. Evanchyk v. Stewart, 340 F.3d 933 (9th Cir.2003) (Ariz. law); State v. Wilson, 30

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Kan.App.2d 498, 43 P.3d 851 (2002); Butler v. State, 91 Md.App. 515, 605 A.2d 186 (1992); State v. Gibbs, 335 N.C. 1, 436 S.E.2d 321 (1993). But consider Commonwealth v. Weimer, 602 Pa. 33, 977 A.2d 1103 (2009) (strong dissent objects defendant convicted and sentenced for crime of conspiracy to commit third-degree murder, a homicide occurring as the unintended consequence of a malicious act).

[FN124] People v. Horn, 12 Cal.3d 290, 115 Cal.Rptr. 516, 524 P.2d 1300 (1974).

[FN124.1] As noted in United States v. Boidi, 568 F.3d 24(1st Cir.2009), collecting federal cases in point, courts "have regularly concluded or assumed that a less serious conspiracy can be a lesser included offense of a similar but greater one," provided "the two crimes coincide except that to commit the greater crime, an additional ingredient (or ingredients) is necessary."

[FN125] People v. Cortez, 18 Cal.4th 1223, 77 Cal.Rptr.2d 733, 960 P.2d 537 (1998).

[FN126] Mosk, J., concurring in Swain, note 122 supra.

[FN127] Mitchell v. State, 363 Md. 130, 767 A.2d 844 (2001) ("where the charge is made and the evidence shows that the defendant conspired to kill another person unlawfully and with malice aforethought, the conspiracy is necessarily one to commit murder in the first degree ..., as the agreement itself ... would supply the necessary deliberation and premeditation"); People v. Hammond, 187 Mich.App. 105, 466 N.W.2d 335 (1991) (prior planning and agreement necessary elements of conspiracy and thus it is "logically inconsistent to 'plan' to commit second-degree murder").

[FN128] United States v. Croft, 124 F.3d 1109 (9th Cir.1997) (citing Chagra, court concludes that "it is logically possible to conspire to commit second degree murder"); United States v. Chagra, 807 F.2d 398 (5th Cir.1986) (conspiracy to commit second degree murder legally possible, as where prosecution proves that at the moment of conspiratorial agreement, the intent "was impulsive and with malice aforethought"). There are other cases, collected in Mitchell v. State, 363 Md. 130, 767 A.2d 844 (2001), where a person was convicted of conspiracy to commit second degree murder but without consideration of the issue, or where conspiracy to commit second degree murder has been assumed to exist by statute.

[FN129] See Note, 53 Colum.L.Rev. 228 (1953), dealing with such situations in terms of conspiracy liability and also accessory liability for the completed crime. On the latter situation, see § 6.7(d).

[FN130] Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997).

[FN131] Scales v. United States, 227 F.2d 581 (4th Cir.1955), rev'd 355 U.S. 1, 78 S.Ct. 9, 2 L.Ed.2d 19 (1957). See also Bender v. State, 253 A.2d 686 (Del.1969): "If a person understands the unlawful nature of the acts taking place, and nevertheless assists in any manner in the carrying out of the common scheme, he thereupon becomes a conspirator to commit the offense."

[FN132] United States v. Falcone, 109 F.2d 579 (2d Cir.1940), affirmed 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940).

[FN133] Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943).

[FN134] E.g., Eley v. United States, 117 F.2d 526 (6th Cir.1941).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 23

[FN135] E.g., United States v. Moran, 984 F.2d 1299 (1st Cir.1993); Wehr v. State, 841 P.2d 104 (Wyo.1992); United States v. Michelana-Orovio, 702 F.2d 496 (5th Cir.1983), on rehearing 719 F.2d 738 (5th Cir.1983) (thus crew member on ship headed for U.S. with 12 tons of marijuana was member of conspiracy to import marijuana, but not conspiracy to distribute marijuana in U.S.).

United States v. Delgado, 631 F.3d 685 (5th Cir.2011).

[FN136] E.g., Bartoli v. United States, 192 F.2d 130 (4th Cir.1951); United States v. Cusimano, 123 F.2d 611 (7th Cir.1941).

[FN137] E.g., United States v. Tramaglino, 197 F.2d 928 (2d Cir.1952); United States v. Kertess, 139 F.2d 923 (2d Cir.1944).

[FN138] E.g., United States v. Tramaglino, 197 F.2d 928 (2d Cir.1952); United States v. Loew, 145 F.2d 332 (2d Cir.1944).

[FN139] E.g., United States v. Loew, 145 F.2d 332 (2d Cir.1944); Bacon v. United States, 127 F.2d 985 (10th Cir.1942).

[FN140] People v. Lauria, 251 Cal.App.2d 471, 59 Cal.Rptr. 628 (1967) (dictum).

[FN141] Ibid., citing as a leading case People v. McLaughlin, 111 Cal.App.2d 781, 245 P.2d 1076 (1952), where the court upheld a conviction of the suppliers of horse racing information by wire for conspiracy to promote bookmaking, when it was established that the wire-service information had no other use.

[FN142] People v. Lauria, 251 Cal.App.2d 471, 59 Cal.Rptr. 628 (1967) (dictum), noting that in Direct Sales the Court found significant the fact that the defendant had attracted as customers a disproportionately large group of physicians who had been convicted of violating the narcotics laws.

[FN143] Ibid.

[FN144] Rather, the cases continue to emphasize that knowing aid is not sufficient. See, e.g., United States v. Alvarez, 610 F.2d 1250 (5th Cir.1980), on rehearing 625 F.2d 1196 (5th Cir.1980) (unloading illegal cargo of plane does not make one a member of the known conspiracy).

The court in Lauria cited no conspiracy cases for this proposition, but instead relied upon Regina v. Bainbridge, [1959] 3 W.L.R. 656 (holding supplier of oxygen-cutting equipment to one known to intend to use it to break into bank an accessory to the crime); and Sykes v. Director of Public Prosecutions, [1962] A.C. 528 (holding one having knowledge of theft of pistols, submachine guns, and ammunition guilty of misprision of felony for failure to disclose theft to authorities).

See, e.g., State v. Maldonado, 137 N.M. 699, 114 P.3d 379 (App.2005) (selling pseudoephedrine to another, knowing it to be used to manufacture methamphetamine, no conspiracy, as statute requires intent rather than mere knowledge).

[FN145] Model Penal Code § 5.03, Comment at 404 (1985).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Given the several disadvantages which flow from being a defendant in a conspiracy case, see § 12.1(b), others have indicated that knowing facilitation should not be sufficient for conspiracy liability even if it is recognized as a basis of liability for the completed crime as an accessory. Ibid.; Note, supra note 129, at 241.

[FN146] United States v. Crimmins, 123 F.2d 271 (2d Cir.1941).

[FN147] Churchill v. Walton, [1967] 1 All E.R. 467, noted in 83 L.Q.Rev. 325 (1967).

[FN148] G. Williams, Criminal Law: The General Part § 84 (2d ed.1961), also noting "that the idea that conspiracy may be a crime of absolute responsibility is fundamentally inconsistent with the rule, now quite firmly established, that secondary parties to a crime cannot be convicted in the absence of knowledge of all the facts." On strict liability as to accomplices, see § 13.2(f).

[FN149] Such would no longer be the case under the proposed new federal code, which gives distinct treatment to the jurisdictional and behavioral content of the law. National Comm'n on Reform of Federal Criminal Laws, Final Report—Proposed New Federal Criminal Code § 201 (1971).

[FN150] Thus, it was held that while one may be convicted of transporting stolen goods through interstate commerce even without knowledge of the interstate element, a conspirator must be aware of the past or contemplate the future passage of the goods through interstate commerce. E.g., United States v. Tannuzzo, 174 F.2d 177 (2d Cir.1949). Similarly, it was held that though one may be convicted of using the mails to defraud merely upon a showing that the mails were in fact used, for a conspiracy it must be established that use of the mails was contemplated. E.g., United States v. Taylor, 217 F.2d 397 (2d Cir.1954).

[FN151] Model Penal Code § 5.03, Comment at 409 (1985).

[FN152] United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975) (because assault of federal officer crime does not require knowledge of victim's status, conspiracy to commit such an assault does not either); United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (conspiracy to possess unregistered firearms does not require knowledge of lack of registration, as such mental state not required for the possession crime). See Berger, Conspiracy and Federal Jurisdiction: From Crimmins to Feola, 22 Vill.L.Rev. 554 (1977).

[FN153] The Court explained that knowledge by the conspirators "that their planned joint venture violates federal as well as state law seems totally irrelevant to that purpose of conspiracy law which seeks to protect society from the dangers of concerted criminal activity," and also to that purpose of allowing intervention of the criminal law when "the likelihood of a commission of an act is sufficiently great and the criminal intent sufficiently well formed."

[FN154] United States v. Franklin, 586 F.2d 560 (5th Cir.1978). Compare United States v. Prince, 529 F.2d 1108 (6th Cir.1976) (defendant not a member of conspiracy to violate Travel Act, involving travel in interstate commerce with intent to engage in, e.g., prostitution, unless defendant, a madam in a house of prostitution, knew of interstate transportation of girls working for her).

See also United States v. Sorrow, 732 F.2d 176 (11th Cir.1984) (conspiracy to defraud the United

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBCRL § 12.2
2 Subst. Crim. L. § 12.2 (2d ed.)

Page 25

States, an offense under 18 U.S.C.A. § 371, does not require anti-federal intent under the Feola rationale, as "whether persons who plan to defraud the United States in fact realize that federal dollars are the object of their scheme is irrelevant to the goal of safeguarding federal fiscal resources").

Compare United States v. Salgado, 519 F.3d 411 (7th Cir.2008) (defendants not member of conspiracy to assault with intent to steal property of U.S., as they unaware prospective drug purchases they planned to rob were federal agents).

[FN155] People v. Powell, 63 N.Y. 88 (1875).

[FN156] Commonwealth v. Gormley, 77 Pa.Super. 298 (1921).

[FN157] Landen v. United States, 299 F. 75 (6th Cir.1924).

[FN158] E.g., United States v. Cohen, 260 F.3d 68 (2d Cir.2001) (noting that "many circuits have since, in effect, moved away from the doctrine," and that this court "has long expressed its discontent with the Powell doctrine," court holds "that whatever remains of Powell does not apply to this case," where defendant charged with conspiracy to violate 18 U.S.C.A. § 1084, prohibiting transmission of bets in interstate or foreign commerce); United States v. Blair, 54 F.3d 639 (10th Cir.1995) (consistent with Feola, note 152 supra, the "specific intent" required under the general conspiracy statute, 18 U.S.C.A. § 371 does not include awareness that the contemplated objective violates federal law); People v. McLaughlin, 111 Cal.App.2d 781, 245 P.2d 1076 (1952); People v. Cohn, 358 Ill. 326, 193 N.E. 150 (1934). Also, in some of the decisions relying upon Powell it appears that the defendants were in addition or instead ignorant of certain factual matters which would have afforded them a defense without resort to the corrupt motives rule. See, e.g., State v. Burns, 215 Minn. 182, 9 N.W.2d 518 (1943).

[FN159] See § 5.6(d). It would seem that such a result could be expected under most of the modern recodifications, for they accept this general principle and do not, in their conspiracy provisions, give any express recognition to the corrupt motive doctrine.

[FN160] See § 1.6(b).

[FN161] E.g., Commonwealth v. Benesch, 290 Mass. 125, 194 N.E. 905 (1935).

[FN162] E.g., Mitchell v. State, 248 Ala. 169, 27 So.2d 36 (1946); Commonwealth v. Benesch, 290 Mass. 125, 194 N.E. 905 (1935).

[FN163] E.g., Cruz v. United States, 106 F.2d 828 (10th Cir.1939).

[FN164] "We demur to the notion that there is anything particularly wicked attached to the word 'conspiracy.' No doubt in common speech 'conspiracy' has a melodramatic and sinister implication, but it has been pointed out that it carries no such implication in law. The definition of it is simply an agreement to do an unlawful act—an act prohibited by statutory provisions—or a lawful act by unlawful means. It does not matter how prosaic the unlawful act may be or how ignorant the conspirators may be of the fact that the act is prohibited by the statutory provision." Rex v. Clayton, 33 Crim.App.R. 113 (1943).

[FN165] United States v. Mack, 112 F.2d 290 (2d Cir.1940).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN166] See subhead § 12.1(c).

[FN167] Note, 38 Harv.L.Rev. 96, 99 (1924).

[FN168] Developments, supra note 103, at 936.

[FN169] Model Penal Code § 5.03, Comment at 417 to 418 (1985).

[FN170] E.g., United States v. Patten, 226 U.S. 525, 33 S.Ct. 141, 57 L.Ed. 333 (1913): "[T]he conspir-
ators must be held to have intended the necessary and direct consequences of their acts and cannot be
heard to say the contrary. In other words by purposely engaging in a conspiracy which necessarily and
directly produces the result which the statute is designed to prevent, they are in legal contemplation,
chargeable with intending that result."

[FN171] See § 12.4(c).

[FN172] Regle v. State, 9 Md.App. 346, 264 A.2d 119 (1970) (only other person insane); Common-
wealth v. Benesch, 290 Mass. 125, 194 N.E. 905 (1935) (only one person had corrupt motive).

[FN173] Developments, supra note 103, at 940.

[FN174] Model Penal Code § 5.03, Comment at 398 to 402 (1985).

Westlaw. © 2011 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

SUBCRL § 12.2

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.