UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 09-10243-MLW |
| RYAN HARRIS, | ) ) ) | |

**GOVERNMENT'S SECOND SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO HARRIS'S (RENEWED) MOTION
TO DISMISS SUPERSEDING INDICTMENT**

In this second supplemental memorandum, the United States responds to defendant Harris's supplemental memorandum, filed November 4, 2011, and renews its opposition to his (renewed) Motion to Dismiss the Superseding Indictment. In his supplemental memorandum, Harris argues that (1) this is "a case of first impression," and the government has "abandoned" all of the other cable modem prosecutions in other districts, and (2) the superseding indictment is flawed because the government has not alleged that Harris personally knew and communicated directly with each of the four named Massachusetts users. These arguments have no merit, and the Court should deny Harris's motion to dismiss.

**I.      This Is Not a "Case of First Impression"**

This is not, as Harris states, a "case of first impression," and the government has not "abandoned" the other cable modem hacking prosecutions in other districts. Counsel for the government is aware of three cable modem hacking prosecutions in other districts that involved significantly less culpable targets than Harris, two of which resulted in guilty pleas (including a jail sentence in one), and one of which is still pending. See United States v. Robles (CR-11-

00602) (filed June 30, 2011, C.D. Cal.);[1] United States v. Delorey, (10-MAG-83) (filed Jan. 15, 2010, S.D.N.Y.);[2] and United States v. Swingler (09-MAG-033) (filed Jan. 8, 2009, S.D.N.Y.).[3]

It also bears noting that two of Harris's own co-conspirators have already pleaded guilty for their roles in this scheme. In connection with this prosecution, Craig Phillips pleaded guilty to an information charging him with aiding and abetting a felony violation of 18 U.S.C. § 1030, and he is awaiting sentencing. Nathan Hanshaw, in his juvenile prosecution, pleaded guilty to violating § 1030, in part for his use of Harris's cable modem hacking products to steal internet access. He was sentenced to 11 months in a juvenile detention facility for this and other hacking crimes.

Furthermore, there have been numerous prosecutions of sellers of analogous "theft of service"-type devices. In the 1990s, there were a number prosecutions of individuals who designed and sold modified satellite t.v. and cable t.v. "descramblers" or "converters." These devices enabled (1) satellite t.v. viewers to decrypt and view premium channel broadcasts

---

[1] Robles pleaded guilty to an information charging him with unauthorized access to a computer network, in violation of 18 U.S.C. § 1030. In his factual basis, Robles admitted that he sold "cloned" modems to 63 customers, causing a total loss of $8,345 to two ISPs. It appears that, unlike Harris, Robles was merely a re-seller, had no involvement in the design or manufacture of the products, and caused a fairly modest loss, which may account for the misdemeanor resolution.

[2] Delorey was charged by complaint with wire fraud, aiding and abetting, and conspiracy, and he pleaded guilty to violating 18 U.S.C. §§ 1030, 2. (10 CR 682-01) (filed Nov. 4, 2010). The complaint alleges that Delorey sold hacked cable modems. He was sentenced to four months' in custody and one year of supervised release, and he was ordered to pay restitution.

[3] Swingler was charged with access device fraud, in violation of 18 U.S.C. §§ 1029, 2, in a complaint alleging that he sold modified cable modems. It appears that Swingler was merely a re-seller, with no involvement in the design or manufacture of the products. Counsel for the government has spoken to the AUSA in charge of that prosecution, who reports that the case is still pending and in no way has been "abandoned."

without authorization from (and payment to) the broadcasters, and (2) cable t.v. viewers to intercept and receive t.v. programs without authorization from (and payment to) the cable companies.

For example, in United States v. Manzer, 69 F.3d 222 (8th Cir. 1995), the defendant manufactured and distributed modified satellite t.v. "descramblers," sold "cloned" chips containing unit addresses from authorized units, and sold "cloning packages" with the information and unit addresses needed to clone additional counterfeit chips. Manzer, 69 F.3d at 225-226. Notably, although the issue was not addressed on appeal, Manzer's communications with his customers (in that case, a private investigator) appear to be limited to product ordering (by telephone) and product fulfilment (by shipping). Id. at 225. Manzer was convicted of, *inter alia*, wire fraud and mail fraud. Id.

On appeal, Manzer argued that there was insufficient evidence that he had the intent to defraud. Like Harris argues here, Manzer "essentially argues that he could just as easily have intended to sell the technology for nonfraudulent testing or educational purposes." Id. at 226. The Eighth Circuit rejected this contention and affirmed his conviction. The Court held that "[t]he type of technology sold, the volume of sales, the nature of his clientele, the level of secrecy employed, and the fact that his operation directly modified [descrambling devices] to intercept decrypted broadcast signals all support the reasonable inference that Manzer acted with intent to defraud." Id. at 227 (citations omitted).

Here, Harris's business operation and his cable modem hacking products are strikingly similar to those in Manzer. Furthermore, the superseding indictment here includes facts similar to those that the Eighth Circuit found sufficient to support an inference of intent to defraud – the type of technology (with no meaningful legal commercial purpose), the volume of sales (e.g., $1

million in gross revenues and 20 sales to one customer alone), the level of secrecy employed (e.g., use of an alias and refusal to use his true name on his web posts or in his book), the nature of his clientele (the Massachusetts users alleged in the indictment are individuals in residences, not cable companies looking to buy diagnostic tools), and the fact that "his operation directly modified [cable modems] to [obtain free and faster internet access]." Likewise, as in Manzer, Harris's communications with his customers were typically limited to taking orders and then shipping out products. (That Manzer may have communicated by phone and Harris may have communicated online is of no legal significance).

Likewise, in United States v. Coyle, 943 F.2d 424 (4th Cir. 1991), the defendant manufactured and distributed cable t.v. "converters" or "descramblers" that enabled cable t.v. customers to receive additional channels without paying the required fees to the cable companies. Coyle, 943 F.2d at 425. Coyle also sold a "Cable TV Data Blocker," which hindered the cable companies from discovering the unauthorized use of the descrambler. Id. Notably, in Coyle there is no mention in the opinion of any communications that Coyle had with his customers (although presumably Coyle must have communicated with them about product ordering in some fashion). Coyle was convicted of mail fraud.

On appeal, Coyle argued that there was insufficient evidence that he made an affirmative misrepresentation or false promise, was a fiduciary, or was under an independent statutory duty to make, and failed to make, disclosure. The Fourth Circuit affirmed his conviction. The Court held that the term "any scheme or artifice to defraud" is to be "construed broadly" and covers "dishonest methods or schemes." Id. at 427 (citations omitted). The Court held that Coyle violated the mail fraud statute in two ways: (1) he "manufactured and distributed devices intended by him to enable his customers to receive cable programs without paying for them.

This was a scheme or artifice to defraud . . . because it wronged the cable companies in their 'property rights by dishonest methods or schemes'" and (2) he "intentionally assisted his customers to obtain the service of cable companies without authorization by fraudulently pretending and representing that they were bona fide subscribers." Id.

Even before the descrambler cases, in the 1970s, as Harris mentions in his supplemental brief, there were prosecutions of individuals who designed and sold "blue boxes" that enabled telephone users to by-pass the telephone companies' electronic circuitry and make telephone calls without paying the required tolls. See United States v. Patterson, 528 F.2d 1037 (5th Cir. 1979). See also Lawlor, James, "Federal Criminal Prosecutions under Wire Fraud Statute for Use of 'Blue Box' or Similar Device Permitting User to Make Long-Distance Telephone Calls Not Reflected on Company's Billing Records," 34 A.L.R. Fed. 278 (West 2009) (citing a list of circuit court published decisions involving § 1343 charges).

Here, Harris's cable modem hacking operation falls even more squarely within the wire and mail fraud statutes than the cable descrambler and blue box operations at issue in Coyle and Patterson. Those devices essentially allowed users to remain silent and "unidentified" to the providers, whereas Harris's cable modem hacking products incorporated affirmative misrepresentations to the providers. As alleged in the indictment, Harris's products incorporated the use of MAC addresses and config files that belonged to legitimate, paying subscribers, thereby allowing users to misrepresent their identities to the ISPs.[4]  Likewise, the modified

---

[4] Indeed, in the wake of Neder v. United Sates, 527 U.S. 1 (1999), which held that the wire and mail fraud statutes implicitly require a material misrepresentation, some courts have held that the use or distribution of cable t.v. converter/descrambler devices do not involve material misrepresentations. See, e.g., United States v. Gee, 226 F.3d 885 (7th Cir. 2000) (reversing conviction of seller of cable t.v. descramblers). Notably, in Gee, unlike here, the government had earlier specifically acknowledged that it did not base its fraud charges on any

satellite t.v. descramblers at issue in <u>Manzer</u> allowed users to clone authorized "unit addresses" and therefore pose as authorized users to the satellite broadcasters.

## II. The Superseding Indictment Alleges Sufficient Connection Between Harris and His Customers

Harris asks the Court to dismiss the superseding indictment because it fails to allege that he personally knew and directly communicated with the identified Massachusetts customers. But it is well settled that, in order to be convicted of conspiracy, the government need not prove that the defendant "agreed specifically to or knew about all of the details of the crime, or knew every other co-conspirator or that he/she participated in each act of the agreement or played a major role . . . ." <u>First Cir. Pattern Jury Instr. (Criminal)</u> 4.03 (1998). <u>Accord</u> <u>United States v. Mena-Robles</u>, 4 F.3d 1026, 1033 (1st Cir. 1993) (affirming conspiracy conviction, holding that "the jury need not be presented with evidence showing that each coconspirator knew . . . every other coconspirator" and that a conspiracy may exist "where there has been no direct contact among the participants") (citations omitted).  Likewise, in order to convict a defendant of aiding and abetting, the defendant "need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its execution to be guilty of aiding and abetting." <u>First Cir. Pattern Jury Instr. (Criminal)</u> 4.03 (1998).  Similarly, in establishing a wire fraud or mail fraud scheme, as set forth in <u>Manzer</u> and <u>Coyle</u>, a seller of a "theft of service" device can be convicted of substantive wire fraud or mail fraud without having any communications with customers other than placing and fulfilling orders.

In any case, the government expects to prove at trial that Massachusetts co-conspirator/user Nathan Hanshaw had repeated communications with Harris and with the other

---

misrepresentation or omission. <u>Id.</u> at fn. 3.

TCNISO co-conspirators and that they knew full well that he was using their products to steal internet access.

## CONCLUSION

For the above reasons, the Court should deny the defendant's motion.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   /s/ Mona Sedky
Adam J. Bookbinder
Assistant U.S. Attorney
Mona Sedky
Department of Justice Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Mona Sedky

Dated: November 14, 2011