UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                          )
        v.                )        Cr. No. 09-10166-MLW
                          )
SALVATORE F. DIMASI,      )
RICHARD W. MCDONOUGH,     )
and RICHARD D. VITALE,    )
        Defendants.       )

ORDER

WOLF, D.J.                                        June 12, 2011

Attached are new instructions on Reasonable Doubt, Joseph
Lally, Sentencing Guidelines, and Consciousness of Guilt, as well
as a red-lined version showing revisions to the draft instructions
circulated on June 11, 2011 that have been made in response to the
parties' June 12, 2011 submissions.

If the parties have any further suggestions or objections,
they shall submit them by 7:00 a.m. on June 13, 2011.

UNITED STATES DISTRICT JUDGE

## REASONABLE DOUBT

As I have said, the burden is upon the Government to prove beyond a reasonable doubt that a defendant is guilty of the charge made against him. The burden of proof has nothing to do with who called the witness or offered documents into evidence. It has to do with the quality of the evidence.

Proof beyond a reasonable doubt is a strict and heavy burden, but it does not mean that a defendant's guilt must be proved beyond all possible doubt. It does require that the evidence exclude any reasonable doubt concerning a defendant's guilt.

A reasonable doubt may arise not only from the evidence produced but also from the lack of evidence produced by the government. Reasonable doubt exists when, after weighing and considering all the evidence, using reason and commonsense, jurors cannot say that they have a settled conviction of the truth of the charge.

Of course, a defendant is never to be convicted on suspicion or guesswork. If, for example, you view the evidence in the case as reasonably permitting either of two conclusions - one that a defendant is guilty as charged, the other that the defendant is not guilty - you will find the defendant is not guilty.

It is not sufficient for the Government to establish a probability, though a strong one, that an element of, or a fact necessary to prove, an offense charged is more likely to be true than not true. That is not enough to meet the burden of proof

beyond a reasonable doubt. On the other hand, there are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.

Concluding my instructions on the burden, then, I instruct you that what the Government must do to meet its heavy burden is to establish the truth of each part of each offense charged by proof that convinces you and leaves you with no reasonable doubt, and therefore satisfies you that you can, consistently with your oath as jurors, base your verdict upon it. If you find a particular charge against a defendant has been proven beyond a reasonable doubt, you will return a verdict of guilty on that charge. If, on the other hand, you think there is a reasonable doubt about whether a defendant is guilty of a particular offense, you must give the defendant the benefit of the doubt and find the defendant not guilty of the offense.

First Circuit Pattern Jury Instruction; United States v. Cleveland, 106 F.3d 1056, 1062-63 (1st Cir. 1997); see United States v. O'Shea, 426 F.3d 475, 482 (1st Cir. 2005)(concluding that a similar instruction was not plain error); United States v. Woodward, 149 F.3d 46, 69 n. 15 (1st Cir. 1998)(noting approval of instruction set forth in Cleveland).

In re Winship, 397 U.S. 358, 364 (1970)(holding "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); United States v. DeMasi, 40 F.3d 1306, 1317 (1st Cir. 1994)("It is also true, however, that each piece of evidence and every 'inference forming a part of the mosaic making up the jury's ultimate finding of guilt beyond a reasonable doubt need [not] itself be established beyond a reasonable doubt.'" (quoting United States v. Corgain, 5 F.3d 5, 10 (1st Cir. 1993))).

## JOSEPH LALLY

You have heard testimony from Joseph Lally, who testified pursuant to a plea agreement with the government. The plea agreement provides that no testimony given by Lally can be used against him, directly or indirectly, except in a prosecution for perjury if he testifies falsely. In the plea agreement, the government also provided Lally certain monetary benefits and promised to recommend a reduced sentence for Lally if, in the government's view, he testified truthfully, and provided substantial assistance to the government in the investigation or prosecution of other individuals.

You are instructed that the government is entitled to enter into such an agreement and present such a witness. Some people in Lally's position are entirely truthful when testifying.

However, the testimony of Lally should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely because a witness hoping to get his sentence reduced may have a motive to testify falsely against others, by making up stories or exaggerating what others did, because they want to help themselves.

As with all evidence, in deciding whether some or all of Lally's testimony was truthful, you should consider, among other things, whether it was contradicted or corroborated by other evidence in the case.

As I said, you should scrutinize Lally's testimony with great

care and rely upon it with caution.  If, after doing so, you find
some or all of Lally's testimony to be true, you should give it
such weight as you believe it deserves.


First Circuit Instruction 2.07; Simonelli, 237 F.3d 19 (1st Cir.
2001);  Defendant's  Supplemental  Request  (Docket  No.  396);
Government Supplemental Request (Docket No. 429-1).

2

SUBSTANTIAL ASSISTANCE

In connection with Lally's testimony, you have heard references to the Sentencing Guidelines and the concept of "Substantial Assistance." I will now explain them to you solely so you can consider their meaning in judging Lally's credibility. As I told you before, you may not consider or discuss what the possible sentence for the defendants on trial might be if you return verdicts of guilty against any or all of them. Sentencing is the responsibility of the judge alone. It is not permissible for jurors to consider or be affected by what the possible sentence might be if a defendant is found guilty.

Sentencing in federal court is governed by an advisory guideline system. It begins with the judge considering a number of facts and calculating in months a Guideline range for the sentence. That range is the starting point for deciding the most appropriate sentence based on many factors concerning the defendant, the nature of the crime, and other considerations. The Guideline range is not presumed to be the reasonable range for the sentence. The parties can, and do, argue for the sentence they view as most appropriate. Judges are required to give a sentence that is sufficient but not more than necessary to serve the purposes of sentencing. In a particular case, that sentence may be higher, lower, or within the Guideline range.

If the government decides that a defendant has provided

3

substantial assistance to it in the investigation or prosecution of one or more other individuals, it may ask the judge to impose a sentence that is below the Guideline range and recommend a particular sentence. The defendant can argue for an even lower sentence. Usually such a substantial assistance motion by the government results in a sentence below the Guideline range. Ultimately, however, it is up to the judge to consider his assessment of the defendant's truthfulness and the value of his assistance to the government, among other things, in deciding the most appropriate sentence.

Gall,

## CONSCIOUSNESS OF GUILT

You have heard some evidence of what the government asserts were false statements by a defendant, or efforts to conceal information, that the government contends show that the crimes charged in this case occurred and that defendant who made the statement or allegedly acted to conceal information knew that he had committed those crimes.

With regard to the allegedly false statements, you should first decide whether the statement was made and, if so, whether it was false. Similarly, you should decide whether a defendant did something to conceal information.

If so, you should decide whether any false statement or action to conceal is evidence of a consciousness of guilt concerning any or all of the crimes charged in this case. Feelings of guilt may exist in innocent people, and false statements or acts of concealment do not necessarily reflect actual guilt of particular crimes. In your consideration of the evidence of the alleged false statements and alleged acts of concealment, you should consider that there may be reasons for a person's actions that are fully consistent with innocence of the crimes charged in this case.

It is up to you to decide if there is proof of false statements or acts of concealment and, if so, whether they show a consciousness of guilt concerning the crimes charged here. If these facts are proven, you must decide what weight or significance to give them.

Adapted from First Circuit Pattern Instruction 2:10 on Flight as Consciousness of Guilt; <u>Boyle</u>, 675 F.2d 430, 432-33 (1st Cir. 1982); <u>Myers</u>, 550 F.2d 1036, 1049-50 (5th Cir. 1977); Gov. Proposed Inst. 505 (Docket No. 307); Defendants' Objections (Docket No. 400).

WordPerfect Document Compare Summary

Original document: Q:\McFadden\Criminal\DiMasi\JURY INSTRUCTIONS\dimasi GENERAL INSTRUCTIONS MLW.wpd
Revised document: @PFDesktop\:MyComputer\Q:\McFadden\Criminal\DiMasi\JURY INSTRUCTIONS\dimasi GENERAL INSTRUCTIONS MLW 6 12 11.wpd
Deletions are shown with the following attributes and color:
    ~~Strikeout~~, Blue RGB(0,0,255).
    Deleted text is shown as full text.
Insertions are shown with the following attributes and color:
    <u>Double Underline</u>, Redline, Red RGB(255,0,0).

The document was marked with 7 Deletions, 8 Insertions, 0 Moves.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
         v.              )          Cr. No. 09-10166-MLW
                         )
SALVATORE F. DIMASI,     )
RICHARD W. MCDONOUGH,    )
and RICHARD D. VITALE,   )
    Defendants.          )

WOLF, D.J.                               ~~340 pm~~ June 1~~1~~2,
                                         2011

#### GENERAL INSTRUCTIONS

There are 9 charges for you to decide. Counts 1 through 8 allege crimes by DiMasi, McDonough and Vitale. Count 9 alleges a crime by DiMasi alone.

The indictment is merely an accusation. It is not evidence or proof that a defendant is guilty of any or all of the crimes charged. Each defendant has pled not guilty. Therefore, the government must prove that a particular defendant is guilty beyond a reasonable doubt to achieve that defendant's conviction on any charge.

Each count alleges a separate crime. You should consider each count separately and return a separate verdict for each.

Unless I gave a limiting instruction in the course of the trial, you may consider all of the evidence in deciding each count. If I gave you a limiting instruction, you must follow that instruction.

Although some of the evidence relates to all of the

defendants, you must consider the charges against each of them separately. You must decide the charges against each of them individually. As to each separate count, you must determine whether the government has proved an individual defendant guilty beyond a reasonable doubt.

You should not, however, consider whether any person other than DiMasi, McDonough, or Vitale is guilty. Evidence provided by or concerning Lally may be considered by you. However, the fact that Joseph Lally pled guilty is not itself evidence or proof that any of the defendants in this case are guilty of any crime. Your verdict should be based solely upon the evidence or lack of evidence concerning each defendant, in accordance with my instructions, and without regard to Lally's guilty plea.

## OVERVIEW OF THE INDICTMENT

As I mentioned to you, the criminal charges against the defendants case are set forth in the indictment. I am now going to provide you with an overview of those charges.

### Count 1

In Count 1, the three defendants on trial, DiMasi, McDonough, and Vitale, are charged with conspiring with each other and Lally to commit three separate crimes. The three crimes are called the objects of the alleged conspiracy.

1. The first object of the alleged conspiracy is known as honest services mail fraud. The defendants are accused of conspiring to engage in a scheme to deprive the Commonwealth of Massachusetts and its citizens of their right to the honest services of DiMasi as the Speaker of the House of Representatives and of using or causing the use of the United States mail or a private commercial interstate carrier in the execution of that scheme.

2. The second object of the alleged conspiracy is known as honest services wire fraud, which concerns the same scheme alleged in honest services mail fraud, except that instead of the mails, it is alleged that the defendants agreed to a scheme involving the use of interstate wire communications, such as email, in executing the scheme.

3. The third object of the alleged conspiracy is the crime

4

of extortion under color of official right, allegedly affecting interstate commerce.

The indictment also alleges that one or more of the defendants acted to achieve the goals of the conspiracy as described in the "Overt Acts" section.

### Counts 2-4

Each of the defendants is charged in Counts 2 through 4 with the crime of honest services mail fraud or aiding and abetting honest services mail fraud. Counts 2 through 4 allege that the defendants caused a specific mailing or delivery to be made on or near the dates alleged for the purpose of not carrying out the scheme.

### Counts 5-8

Each of the defendants is charged in counts 5 through 8 with the crime of honest services wire fraud or aiding and abetting honest services wire fraud. These counts allege that the defendants caused an interstate wire communication, such as an email or transfer of funds between banks, on or near the dates alleged for the purpose of carrying out the scheme.

### Count 9

Only DiMasi is charged in Count 9 with the crime of extortion under color of official right.

5

## CONSPIRACY

As I said, Count 1 alleges that DiMasi, McDonough and Vitale conspired with each other, and Lally, to commit 3 federal crimes, in violation of 18 U.S.C. §371. The conspiracy charged is described in paragraph 12. [Read ¶12?]

In addition, there are many overt acts alleged beginning in ¶18.

### [Read example?]

### Conspiracy - Essential Elements

For you to find a defendant guilty of conspiracy, you must ~~be convinced~~find that the government has proven each of the following things beyond a reasonable doubt:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people named in the indictment - DiMasi, Lally, McDonough, and Vitale – to commit the crime of honest services mail fraud, or the crime of honest services wire fraud, or the crime of extortion under color of official right;

Second, that the defendant knowingly and willfully joined in that agreement; and

Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to achieve one of the illegal objects or goals of the conspiracy.

6

If the government fails to prove any of these three elements beyond a reasonable doubt concerning a particular defendant, you must find that defendant not guilty. If you do find every element proven beyond a reasonable doubt concerning that defendant, you will find them guilty.

7

## EXISTENCE

With respect to the first element – the existence of the agreement – you should understand that a "conspiracy" is simply a spoken or unspoken agreement by two or more people to commit a crime. It is the agreement that is the essence of the crime and it does not matter whether it achieved any unlawful goal.

In this case, as I have said, the defendants allegedly agreed to commit the crimes of honest services mail fraud, honest services wire fraud, and extortion under color of official right, which I will define for you. As I also said earlier, only one of these objects have to be proven.

With regard to the existence of the conspiracy, what the evidence must show is that the members, in some way or manner, came to a mutual understanding to try to accomplish their common unlawful purpose, and that they did so knowing that the plan was unlawful and intending to carry it out.

However, the evidence to establish the existence of a conspiracy need not show that the conspirators entered into an express agreement or formal agreement, or even that they directly, by spoken or written words, stated between themselves what their object or purpose was, or the details of the scheme, or the means by which they would succeed. Mere similarity of conduct among various persons, and the fact that they may have associated with each other, discussed illegal activity, or taken steps to further

8

the conspiracy's purposes does not necessarily establish proof of the existence of a conspiracy. However, you may consider such factors. It is sufficient if an agreement is shown by conduct evidencing a silent understanding to share a purpose to violate the law.

You may consider all of the direct and circumstantial evidence in deciding whether a conspiracy has been proven. ~~However, since a conspiracy is often secret, it would be unusual for there to be an express written or oral agreement. Therefore, n~~Neither the existence of a conspiratorial agreement, nor a defendant's participation in it, must be proved by direct evidence. Both may be proven by circumstantial evidence alone. <u>Pesaturo</u>, 476 F.~~2d~~3d 60, 72 (1st Cir. 2007); <u>Perez-Gonzalez</u>, 445 F.3d 39, 49 (1st Cir. 2006); <u>Medina-Martinez</u>, 396 F.3d 1, 5 (1st Cir. 2005).

MEMBERSHIP

To achieve the conviction of a defendant on Count 1 the government must also prove beyond a reasonable doubt that the particular defendant you are considering was a member of the conspiracy, meaning that he must have knowingly and willfully joined in the agreement with at least one other person named in paragraph 12 of Count 1 to commit at least one of the crimes alleged to be an object of the conspiracy.

As I use the terms throughout these instructions, to act knowingly means to acts voluntarily and intentionally, and not by accident or mistake.

To act willfully means to act voluntarily and purposefully with the specific intent to do something the law forbids; that is to say, with a bad purpose either to disobey or disregard the law.

To prove that a defendant joined a conspiracy willfully, the government must prove beyond a reasonable doubt that the individual defendant both intended to agree with at least one other alleged conspirator to commit at least one of the crimes of honest services mail fraud, honest services wire fraud, or extortion under color of official right, and also intended that the crime actually be committed.

It is not sufficient for the government to prove that a defendant merely had knowledge of a conspiracy or merely associated with members of a conspiracy. It is also not sufficient for the

10

government to prove that a person merely acted in a way that happened to further some purpose of a conspiracy. Rather, the government must prove that a particular defendant intended to join the agreement and intended that the agreed-to crime be committed.

A defendant's membership in a conspiracy must be proved by evidence of his own words and actions. In deciding whether a defendant was a member of the conspiracy alleged in this case, you should consider the direct and circumstantial evidence of his own acts and statements. Such evidence may include acts or statements of the other defendants and Lally only to the extent that they are evidence of the words and actions of the defendant you are considering. Richardson, 225 F.3d 46, 53 (1st Cir. 2000); Petroziello, CITE.

The government does not have to prove that a particular defendant knew about or agreed to all of the specific details of the crime. Nor does the government have to prove that a particular defendant knew every other conspirator. However, the government does have to prove beyond a reasonable doubt that a particular defendant knew of and intended to agree to the essential features and general aims of the venture.

A defendant cannot be convicted of conspiracy on the basis of suspicion or surmise. He cannot be convicted of conspiracy if it is only proved that he merely associated with someone committing a crime, or that he merely knew of illegal activity by other people,

11

or that he was merely present when a crime was committed. Nor can he be convicted of conspiracy if he merely took actions that happened to further the objectives of a conspiracy that he did not agree to join. These are, however, relevant factors that you may consider in deciding the ultimate question, which is whether the government has proved beyond a reasonable doubt that a particular defendant knowingly and willfully joined an agreement to commit a crime alleged in the indictment and intended to commit that crime.

If, however, you find that the conspiracy charged did exist and that the defendant you are considering knowingly and willfully participated in it, the extent of his participation has no bearing on his guilt or innocence. The guilt of a conspirator is not measured by the extent or duration of his participation. Even if the defendant participated in the conspiracy to a lesser degree or for shorter period of time than another person, he is also guilty, so long as he was in fact a conspirator. Thus, a single act [or statement] may be enough to make someone a conspirator, provided the proof establishes that the defendant entered into the conspiratorial agreement.

Each member of a conspiracy may perform separate and distinct acts at different times and at different places. The extent of a particular defendant's participation in a conspiracy and the importance of his role in achieving the purpose of the conspiracy are not determinative of the defendant's guilt or innocence. You

12

may find that two or more people conspired even though you find that one's role was greater than the other's role.

In addition, even if a defendant was not part of the agreement at the very start, he can be found guilty of conspiracy if it is proven that he knowingly and willfully joined the agreement later.

## OVERT ACT

The third element the government must prove beyond a reasonable doubt is that one of the conspirators committed an overt act. An overt act is an act knowingly committed by one or more of the conspirators, during the period of the conspiracy, in an effort to accomplish a goal of the conspiracy.

The indictment alleges many overt acts. Only one of those alleged overt acts has to be proved.

The government is not required to prove that the particular defendant you are considering personally committed or knew about the overt act. It is sufficient if the government proves one of the conspirators committed one overt act at some time during the period of the conspiracy.

The overt act may appear to be completely innocent and legal. It does not itself have to be a crime. However, to find this element proven, you must unanimously agree on which overt act or acts alleged in the indictment were committed.

As I said earlier, the government does not have to prove that the conspiracy succeeded or that the conspirators achieved their goal or goals.

14

## UNANIMITY

As I said, there are 3 alleged illegal goals of the conspiracy. The government does not have to prove that all 3 crimes were objects of the conspiracy. However, to convict any or all of the defendants, you must unanimously find that one of the alleged crimes was a goal of the conspiracy.

The indictment alleges essentially two types of payments in exchange for official acts -- payments to DiMasi through Topazio and payments to Vitale and/or McDonough. The government does not have to prove that the conspiracy involved an agreement to commit a crime involving both types of payments. It would be sufficient if the government proves beyond a reasonable doubt that a defendant agreed to commit a crime involving one type of payment or the other. However, in order to convict any defendant of conspiracy, you must unanimously agree that a particular defendant agreed to commit a crime involving payments to DiMasi through Topazio in exchange for official acts, or agreed to commit a crime involving payments to Vitale and/or McDonough caused by DiMasi and in exchange for official acts, or agreed to commit a crime involving both of these types of payments. It would not be sufficient, for example, if six of you find that a defendant agreed to commit a crime involving payments through Topazio but not to Vitale and/or McDonough, and the other six find that the same defendant agreed to commit a crime involving payments to Vitale and/or McDonough but

15

not through Topazio.  In order to convict any defendant of conspiracy, you must all agree that the defendant agreed to commit a crime involving one type of payment in exchange for official acts, or the other, or both.  See Richardson v. United States, 526 U.S. 813, 824 (1999); cf. United States v. Lee, 317 F.3d 26, 35-36 (1st Cir. 2003); United States v. Marino, 277 F.3d 11, 32 (1st Cir. 2002); United States v. Torcasio, 959 F.2d 503, 507-08 (4th Cir. 1992), abrogated on other grounds as recognized in United States v. Hairston, 46 F.3d 361, 372 (4th Cir. 1995).

In addition, the indictment charges that the conspiracy existed from about December, 2004 to about February, 2008.  The government does not, however, have to prove the alleged conspiracy existed during all of this period.  It would be sufficient if the government proved, beyond a reasonable doubt, that the conspiracy charged in the indictment existed during at least some part of the period between December, 2004 and February, 2008 and that the defendant you are considering was a member of the conspiracy during the time that it existed.  You must, however, unanimously agree on the period of any proven conspiracy, among other things.

16

After considering each defendant separately, if you find every element of the conspiracy charged in Count 1 to be proven beyond a reasonable doubt against that defendant, you will find him guilty on Count 1. If you do not find every element proven beyond a reasonable doubt concerning that defendant, you must find him not guilty on Count 1.

17

THEORIES OF LIABILITY

Counts 2 through 8 of the indictment charge DiMasi, McDonough, and Vitale with committing the crimes of honest services mail fraud and honest services wire fraud, which, as I said earlier, are two of the three goals of the conspiracy alleged in Count 1. There are three ways in which the government may prove a defendant guilty on each of those charges.

First, a defendant is guilty of a particular charge if the government proves beyond a reasonable doubt that he personally committed the mail or wire fraud as I will define those crimes for you.

Second, the defendant is guilty of a particular charge if the government proves beyond a reasonable doubt that someone else committed the crime and also that the defendant you are considering aided and abetted that crime.

A person who aids and abets another to commit an offense is just as guilty of the offense as if he committed it himself.

Therefore, if you find that someone else committed a particular mail or wire fraud, then you must consider whether the defendant you are considering aided and abetted the commission of it.

To "aid and abet" means to intentionally help someone else commit a crime. To establish aiding and abetting, the government must prove beyond a reasonable doubt that: (1) someone committed

18

the charged crime and (2) the defendant you are considering knowingly, willfully, and with intent to defraud associated himself in some way with the crime and, with that state of mind, participated in it as he would in something he wished to bring about.

In this case, this means that the government must prove that the defendant you are considering knew that another person was committing the mail or wire fraud at issue and did something knowingly, willfully, and with intent to defraud to help him succeed in the commission of that crime.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its execution to be guilty of aiding and abetting. However, a general suspicion that an unlawful act may occur or that something criminal happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

There is a third way that a defendant may be found guilty of a particular mail or wire fraud charge. A defendant may be convicted of the fraud if you find him guilty of the conspiracy charged in Count 1 and you also find that it is proven beyond a reasonable doubt that another conspirator committed the charged mail or wire fraud pursuant to their conspiratorial agreement, at a time when the defendant was a member of the conspiracy, in an

19

effort to achieve a shared goal of their conspiracy, and that the fraud the other conspirator committed was one that the defendant should have reasonably foreseen might be committed as a result of his conspiracy. <u>Pinkerton v. United States</u>, 328 U.S. 640, 646-48 (1946); <u>O'Campo</u>, 973 F.2d 1015, 10121 (1st Cir. 1992); <u>Patriarca</u>, 912 F. Supp. 596, 605 (D. Mass. 1995).

20

DRAFT June 1~~1~~2, 2011

## Honest Services Fraud

Counts 2, 3 and 4 allege mail fraud in violation of 18 U.S.C. §§1341 and 1346.  Counts 5, 6, 7, and 8 allege wire fraud in violation of 18 U.S.C. §§1343 and 1346.  Each alleges a scheme to defraud the citizens of Massachusetts of their right to the honest services of Salvatore DiMasi as a member and the Speaker of the Massachusetts House of Representatives.

[Read Counts 2 and 5]

To prove a defendant committed a mail fraud or wire fraud charge in this case the government must prove the following things beyond a reasonable doubt.

First, the defendant devised or participated in a scheme to defraud the citizens of the Commonwealth of Massachusetts their right to the honest services of Salvatore DiMasi;

Second, the scheme to defraud involved a material falsehood;

Third, the defendant acted knowingly, willfully and with an intent to defraud and intent to deceive the public; and

Fourth, (a) in the case of mail fraud, the use of the United States mail or a private or commercial interstate carrier, in furtherance of the scheme; or (b) in the case of wire fraud, that an interstate wire communication was used in furtherance of the scheme.

As with conspiracy, if the government fails to prove any of these four elements beyond a reasonable doubt concerning a

particular defendant you must find that defendant not guilty, unless, as I will explain, it is proven beyond a reasonable doubt that he aided and abetted the commission of that crime by another person or is responsible for it as a member of a proven conspiracy. If the government does prove beyond a reasonable doubt that a particular defendant committed every element of an alleged mail or wire fraud, you will find him guilty of that crime.

3

## Scheme to Defraud

The first thing the government must prove beyond a reasonable doubt is that a defendant devised or participated in a scheme to defraud, which in this case requires proof of a scheme to deprive the public of its right to DiMasi's honest services. See 18 U.S.C. §1346.

A scheme is a plan or course of conduct that involves some form of concealment or deceit. Potter, 463 F.3d 9, 16 (1st Cir. 2006); Sawyer II, 239 F.3d 31, 41 (1st Cir. 2001) ("Sawyer II"); Sawyer I, 85 F.3d 713, 732 (1st Cir. 1996) ("Sawyer I").

While DiMasi was an elected official, the public had a right to his honest services. Silvano, 812 F.2d 754, 759 (1st Cir. 1987). If DiMasi performed an official act in exchange for a payment to him, or in exchange for a payment that he caused to be made to Vitale or McDonough for his benefit, the public would have been deprived of its right to his honest services. Skilling, 130 S.Ct. at 2931. In this case it is alleged that an object, or goal, of the scheme [and the alleged conspiracy as well,] was for DiMasi to receive, and cause Vitale and/or McDonough to receive, payments from Lally and Cognos in return for performing official acts. Indictment. ¶14. Therefore, to find a defendant guilty of committing the crime of mail or wire fraud, you must find that he devised or participated in a scheme to exchange one or more such payments for the performance by DiMasi of one or more official

4

acts.

A payment in the context of the fraud charges means a thing of value given to DiMasi, or caused by DiMasi to be given to Vitale or McDonough, for DiMasi's benefit, in exchange for official acts. McNally, 483 U.S. at 360; Lupton, 620 F.3d at 794, 804 n.3 (7th Cir. 2010).

It is not contended that any payments from Cognos or Lally kept by Topazio were made for DiMasi's benefit. Therefore, such payments kept by Topazio, rather than given to DiMasi, are not a basis for the mail or wire fraud charges in this case. See Bill of Particulars.

A payment made in exchange for an official act, which is sometimes called a quid pro quo bribe or kickback, is a payment made with the intent to influence an official act and received with the intent to be influenced in an official act. Cf. Sun-Diamond, 526 U.S. at 404-05. However, it is not necessary for the government to prove that the scheme involved making a specific payment for a specific official act. Urciuoli, 613 F.3d 11, 14-15 (1st Cir. 2010) ("Urciuoli II"); Ganim, 510 F.3d 134, 148-49 (2d Cir. 2007). Rather, it would be sufficient if the government proves beyond a reasonable doubt a scheme to make a series of payments in exchange for DiMasi performing official actions benefitting Lally or Cognos as opportunities arose or when DiMasi was called upon to do so. Ganim, 510 F.3d at 145; Kincaid-Chauncy,

5

556 F.3d 923, 943 (9th Cir. 2009).

The government also does not have to prove that DiMasi originated the scheme or personally developed every detail of it. Potter, 463 F.3d at 16. Nor must the government prove that the scheme succeeded. Id. It only has to be proven that the defendant you are considering participated in the alleged scheme with the required state of mind. Id.

As a member and Speaker of the House of Representatives, DiMasi was permitted to practice law and to receive fees for referring clients to other lawyers. A payment to Dimasi made or received solely for providing legal services, or solely as a payment genuinely made for referring a client to another lawyer for legal services, is not a basis for a mail or wire fraud charge. Similarly, in this case it would not be enough if the government only proves that Cognos and/or Lally made a payment to DiMasi, McDonough, or Vitale only to cultivate a business or political relationship with DiMasi, or only to express gratitude for something DiMasi had done. Sawyer I, 85 F.3d at 720-22; Sun-Diamond, 526 U.S. at 404-05. In addition, any payment to McDonough or Vitale only to lobby public officials – meaning to advocate positions to public officials – or to provide strategic advice to clients seeking public contracts, or for business advice is not a basis for a mail or wire fraud charge. In essence, any payment made or received by DiMasia defendant solely for one or more lawful

6

purposes is not a basis for a mail or wire fraud charge.

However, people at times act with a mixture of motives. If the government proves beyond a reasonable doubt a payment made in exchange for an official act, it is not required to prove that this was the only reason for the payment. If the government proves there was a scheme to make and receive one or more payments in exchange for official acts, then it makes no difference if there was also some other, lawful motive for giving or receiving the payment, such as an expression of friendship of cultivation of good will. Woodward, 149 F.3d at 71. As long as one purpose motivating the payment was unlawful, a defendant may be convicted of mail or wire fraud. Id.

"Official acts" are acts by DiMasi personally, or through others acting at his direction, that used his official powers as a legislator or Speaker. As a legislator, DiMasi used his official powers when he cast a vote on a particular piece of legislation. Urciuoli I, 513 F.3d 290, 294, 296-98 (1st Cir. 2008) ("Urciuoli I"); Urciuoli II, 613 F.3d at 16-17; However, a legislator's official acts include more that just his votes. Id. They also include his informal and behind-the-scenes influence on legislation, such as any request by DiMasi, or by others acting at his direction and on his behalf as Speaker, to influence the content of bills or the timing of legislative action. Potter, 463 F.3d at 17-18.

7

In addition, DiMasi's official acts include any act that intentionally, explicitly or implicitly threatened or promised to use his power concerning the legislative process to take or withhold legislative action in order to persuade the person he was seeking to influence. Urciuoli II, 613 F.3d at 16-17. Urciuoli I, 513 F.3d at 295-96; see also Rivera Rangel, 396 F.3d 476, 484 (1st Cir. 2005) (Hobbs Act). Mere statements by DiMasi to members of the Executive Branch are not generally official acts. However, a statement by DiMasi to the Governor or a member of the Executive Branch, or by others acting at his direction and on his behalf as Speaker, would be an official act if you find that it was intended to influence what would be included in any legislation proposed by the Governor, or was intended to convey a threat or promise that DiMasi would use his powers concerning legislation in an effort to persuade the person he was seeking to influence. Id. In essence, an official act of DiMasi would be an act that either involved the legislative process or intentionally exploited his influence concerning it. Urciuoli I, 513 F.3d at 296.

Although McDonough and Vitale are not public officials and do not themselves owe a duty of honest services to the public, the law prohibits them from devising or participating in a scheme to deprive the public of its right to DiMasi's honest services. Potter, 463 F.3d at 17; Urciuoli II, 613 F.3d at 17-18. If you find that the government has proven beyond a reasonable doubt that

8

McDonough or Vitale devised or participated in a scheme to have one or more payments exchanged for the performance of one or more official acts by DiMasi, McDonough or Vitale may be found guilty.

The government does not have to prove that any scheme actually succeeded, or that DiMasi actually took any official act, or that any payment was actually made to him, or for his benefit. Potter, 463 F.3d at 16-17. What the government must prove beyond a reasonable doubt is a that a particular defendant devised or participated in a scheme to exchange one or more payments for DiMasi's performance of one or more official acts. Id.

As I have said, the government must prove beyond a reasonable doubt a scheme to exchange one or more payments for one or more official acts by DiMasi on behalf of Lally or Cognos. Skilling, 130 S. Ct. at 2926, 2932, 2933; McNally, 483 U.S. at ___; Urciuoli II, 613 F.3d at 17. To prove such a scheme, the government does not have to establish that DiMasi would not have taken official actions as Speaker to promote the acquisition of an Education Data Warehouse, business intelligence software, or performance management software, including Cognos software, without such payments. Skilling, 130 S. Ct. at 2926, 2934 n.45 (honest services fraud reaches at least as far as bribery statute, §201(b)); Quinn, 359 F.3d at 675; cf. Urciuoli II, 613 F.3d at 15 (instructing government must prove payment was made with intent to alter official acts).

9

Nor must the government prove that the Executive Branch would not have purchased Cognos software in the absence of official acts by DiMasi or that the Executive Branch paid too much for it and, therefore, lost money. The essence of the crimes charged in Count 2 through 8 is a scheme to deprive the citizens of Massachusetts of DiMasi's honest services rather than a scheme to deprive the Commonwealth of Massachusetts of money. Skilling, 130 S.Ct. At 2926; McNally, 483 U.S. at 360. As I explained earlier, the public had a right to DiMasi's honest services and any scheme involving payments made in exchange for his official acts would deprive the citizens of that right and, therefore, be an element of a mail or wire fraud offense. Skilling 130 S. Ct. at 2926; McNally 483 U.S. at 360; Quinn, 359 F.3d at 675.

As I instructed you earlier concerning conspiracy, in order to convict a defendant of honest services fraud, you must unanimously agree that the defendant participated in a scheme involving payments to DiMasi through Topazio in exchange for official acts, or involving payments to Vitale and/or McDonough in exchange for official acts, or involving both types of payments. You must all agree that the defendant participated in a scheme involving one type of payment, or the other, or both.

10

## Materiality of Falsehood

The second element that the government must prove beyond a reasonable doubt is that the scheme to defraud involved a material falsehood. Neder, 527 U.S. 1, 25 (1999); Hoeffner, 626 F.3d 857, 868 (5th Cir. 2010), cert. denied, 2011 WL 1322988 (May 16, 2011); Redzic, 627 F.3d 683, 689-90 (8th Cir. 2010), cert. denied, 2011 WL 901206 (Apr. 18, 2011); Weyhrauch, 548 F.3d 1237, 1247 n.8 (9th Cir. 2008), vacated in light of Skilling, 130 S. Ct. 2971, and remanded to the District Court, 623 F.3d 707; Harvey, 532 F.3d 326, 334 (4th Cir. 2008).

Information is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaker to whom it was addressed. See Neder, 527 U.S. at 16; Blastos, 258 F.3d 25, 29 (1st Cir. 2001); First Circuit Pattern Instruction 4.18:1341.

A material falsehood can be a false statement of material fact. However, in some circumstances, the nondisclosure of material information is also a material falsehood. Specifically, nondisclosure of material information is a material falsehood when the defendant was under a duty to disclose such information and, instead, concealed the information knowingly, intentionally, and with intent to defraud and deceive the public. Sawyer I, 85 F.3d at 732; Cassiere, 4 F.3d 1006, 1022-23 (1st Cir. 1993).

"A public official has an affirmative duty to disclose

11

material information to [his] public employer." Sawyer I, 85 F.3d
at 724; Silvano, 812 F.2d 754, 759 (1987); Woodward, 149 F.3d 46,
62 (1st Cir. 1998); Sawyer II, 239 F.3d at 40. Therefore, in this
case, DiMasi, as an official of the state government, had a duty to
disclose material information to his public employer. See Sawyer
II, 239 F.3d at 39; Woodward, 149 F.3d at 62; Sawyer I, 85 F.3d at
732; Silvano, 812 F.2d at 759.

Accordingly, you should decide whether the government has
proven that DiMasi was receiving payments from Cognos or Lally that
he knew were made in exchange for his official acts, or knew that
McDonough or Vitale were receiving payments DiMasi had caused to be
made, from Cognos or Lally, for his benefit, in return for his
official acts. If so, you must also decide whether the government
has also proven that information was concealed by DiMasi as part of
a scheme and, if it had been disclosed, would have been capable of
influencing the decisions of any or all of the officials who
participated in deciding matters that would benefit Cognos and/or
Lally. If the government proves this, DiMasi's concealment of this
information from those decisionmakers would be a material falsehood
if you also find that the concealment was done knowingly,
intentionally, and with intent to deceive. Neder, 527 U.S. at 25;
Cassiere, 4 F.3d at 1022-23; Silvano, 812 F.2d at 759.

12

Intent

The third element that the government must prove beyond a reasonable doubt is that the individual defendant you are considering participated in the scheme to defraud knowingly, willfully, and with a specific intent both to defraud the public of DiMasi's honest services and to deceive the public. Sawyer I, 85 F.3d at 729; Sawyer II, 239 F.3d at 41.

To act knowingly means to acts voluntarily and deliberately, and not by accident or mistake.

To act willfully means to do something with the specific intent to do something the law forbids; that is to say, with a bad purpose either to disobey or disregard the law.

In this case, to act with the intent to defraud means to act with intent to deprive the public of DiMasi's honest services by exchanging a payment for an official act. Sawyer I, 85 F.3d at 729. In other words, the defendant must have intended that a payment would be made to influence an official act and would be received with the intent to be influenced in an official act. Sawyer II, 239 F.3d at 41.

To act with intent to deceive the public in this case means to act with the intent to deprive the public of DiMasi's honest services by failing to disclose a material fact which DiMasi had a duty to disclose. Sawyer I, 85 F.3d at 732. As I explained, a public official has a duty to disclose material information to his

13

public employer.

As I told you before, in deciding all issues, you may consider both direct and circumstantial evidence. A person's state of mind often cannot be proved directly. Therefore, consideration of circumstantial evidence may be particularly important in deciding whether the government has proven beyond a reasonable doubt an alleged scheme to defraud the public of DiMasi's honest services and to deceive the public. A scheme to exchange payments for official acts, and an intent to deceive the public concerning any such scheme, need not be proven by direct evidence of an express agreement or statement of intent. Urciuoli II, 613 F.3d at 14-15, n.3 (quoting Kincaid-Chauncey, 556 F.3d at 943-47); Kemp, 500 F.3d 257, 284-85 (3rd Cir. 2007).

Rather, the required intent can be proven by facts established by circumstantial evidence and the reasonable inferences to be drawn from them. Such circumstantial evidence may include a person's own words and deeds, including any efforts to conceal material information.

However, the necessary intent must be proven in some fashion for you to find a defendant guilty of mail fraud or wire fraud. As I have stated, the government must not only prove that a particular defendant participated in a scheme to defraud, but also that he did so knowingly, willfully, and with the intent to defraud the public of DiMasi's honest services and to deceive the public. Even if you

14

find that a scheme to defraud existed, a defendant's participation in it would not be unlawful if he participated without the necessary intent.

As I said earlier, it is not unlawful for an elected official to practice law and to receive a payment that he genuinely believes is being made <u>only</u> for referring a client to another lawyer. It is also not unlawful for a person to receive a payment he genuinely believes was made <u>only</u> to compensate him for lobbying public officials or for providing strategic advice to clients seeking public contracts or business advice. In addition, in this case it would not be enough if the government proves only that a defendant genuinely believed that Cognos and/or Lally made the payments at issue only to cultivate a business or political relationship with DiMasi, or to express gratitude for something DiMasi had done. <u>Sawyer I</u>, 85 F.3d at 720-22, 725-26; <u>Sun-Diamond</u>, 526 U.S. at 404-05.

In other words, if a defendant knew of any of the payments at issue and had a sincere, good faith belief that they were being made only for one or more than one of these legitimate purposes, he would not be guilty of mail or wire fraud even if that belief was erroneous. A defendant does not have the burden to establish his good faith. The burden to prove both intent to defraud and to deceive the public, and therefore lack of good faith, as well as all of the other elements of the crimes charged, rests with the

government to prove beyond a reasonable doubt.

16

## Use of Mail or Wire

For counts 2-4, which charge the defendants with honest services mail fraud, the fourth element the government must prove beyond a reasonable doubt is that, on or about the date alleged in the indictment for each particular count, one of the participants in the scheme either received something in the mail or by private or commercial interstate carrier in furtherance of the scheme, or caused something to be mailed or sent by private or commercial interstate carrier in furtherance of the scheme. However, it mailing does not have to be essential to the scheme or be itself fraudulent. However, it must be made as part of an attempt to execute or accomplish the scheme. The defendant you are considering does not have to be personally responsible for the mailing, but the government must prove beyond a reasonable doubt that he knew, or could reasonably have foreseen, that use of the mail would follow in the course of the scheme. Sawyer II, 239 F.3d at 39-40; United States v. Morrow, 39 F.3d 1228, 1237 (1st Cir. 1994); First Circuit Pattern Instruction. 4.18: 1341, 1343.

For counts 5-8, which charge the defendants with honest services wire fraud, the fourth element the government must prove beyond a reasonable doubt is that, on or about the date alleged in the indictment for each particular count, one of the participants in the scheme transmitted or caused to be transmitted by interstate wire a communication in furtherance of the scheme. To transmit by

17

interstate wire communication means to send information across state lines by means of telephone lines or emails or electronic transfers of funds that pass between different states. The wire communication does not have to be essential to the scheme or be itself fraudulent. However, it must be made as part of an attempt to execute or accomplish the scheme. The defendant you are considering does not have to be personally responsible for the wire communication, but the government must prove beyond a reasonable doubt that he knew, or could reasonably have foreseen, that use of the interstate wires would follow in the course of the scheme.

## THEORIES OF LIABILITY

As I have explained, Counts 2 through 8 of the indictment charge DiMasi, McDonough, and Vitale with committing the crimes of honest services mail fraud and honest services wire fraud, which, as I said earlier, are two of the three goals of the conspiracy alleged in Count 1. There are three ways in which the government may prove a defendant guilty on each of those charges.

First, a defendant is guilty of a particular charge if the government proves beyond a reasonable doubt that he personally committed the mail or wire fraud as I just defined those crimes for you.

Second, the defendant is guilty of a particular charge if the government proves beyond a reasonable doubt that someone else committed the crime and also that the defendant you are considering aided and abetted that crime.

A person who aids and abets another to commit an offense is just as guilty of the offense as if he committed it himself.

Therefore, if you find that someone else committed a particular mail or wire fraud, then you must consider whether the defendant you are considering aided and abetted the commission of it.

To "aid and abet" means to intentionally help someone else commit a crime. To establish aiding and abetting, the government must prove beyond a reasonable doubt that: (1) someone committed

19

the charged crime and (2) the defendant you are considering knowingly, willfully, and with intent to defraud associated himself in some way with the crime and, with that state of mind, participated in it as he would in something he wished to bring about.

In this case, this means that the government must prove that the defendant you are considering knew that another person was committing the mail or wire fraud at issue and did something knowingly, willfully, and with intent to defraud to help him succeed in the commission of that crime.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its execution to be guilty of aiding and abetting. However, a general suspicion that an unlawful act may occur or that something criminal happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

There is a third way that a defendant may be found guilty of a particular mail or wire fraud charge. A defendant may be convicted of the fraud if you find him guilty of the conspiracy charged in Count 1 and you also find that it is proven beyond a reasonable doubt that another conspirator committed the charged mail or wire fraud pursuant to their conspiratorial agreement, at a time when the defendant was a member of the conspiracy, in an

20

effort to achieve a shared goal of their conspiracy, and that the fraud the other conspirator committed was one that the defendant should have reasonably foreseen might be committed as a result of his conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-48 (1946); O'Campo, 973 F.2d 1015, 10121 (1st Cir. 1992); Patriarca, 912 F. Supp. 596, 605 (D. Mass. 1995).

Once again, to convict a defendant of a mail or wire fraud charge, you must unanimously agree that it has been proven beyond a reasonable doubt that he either personally committed the crime, or that he aided and abetted the commission of that crime, or that he is responsible for it as a result of his membership in a proven conspiracy as charged in Count 1.

## Extortion

In Count 9, only DiMasi is charged with a violation of 18 U.S.C. §1951(a), which alleges extortion under color of official right. Count 9 charges: [Read Count 9]

In order to prove DiMasi guilty on Count 9, the government must prove each of the following elements beyond a reasonable doubt that:

First, DiMasi knowingly and willfully obtained money for himself, or for Vitale or McDonough, from Lally or Cognos, with their consent;

Second, DiMasi did so under color of official right; and

Third, DiMasi's conduct affected interstate commerce.

[Once again, to act knowingly means to act intentionally, not by accident or mistake, and to act willfully means to act with knowledge that your conduct is unlawful.]

In this case, the government must prove that DiMasi knowingly and willfully obtained money from Lally and/or Cognos, to which DiMasi was not entitled, for himself, or for Vitale or McDonough. With regard to any payments made to Vitale or McDonough, for the purpose of Count 9, the government has to prove that DiMasi caused the payments, but does not have to prove that they were for DiMasi's benefit. Green, 315 U.S. 415, 420 (1956); Vigil, 523 F.3d 1258, 1264 (10th Cir. 2008).

However, the government must prove that any such payment was

22

obtained "under color of official right," rather than for some legitimate purpose. This means that it must be proven that the payment was made because DiMasi was a legislator or Speaker of the House of Representatives, in return for his official acts, and DiMasi knew that the payment was in return for his official acts. Evans, 504 U.S. 255, 268 (1992); Cruz-Arroyo, 461 F.3d 69, 73-74 (1st Cir. 2006); Rivera-Rangel, 396 F.3d at 484. The term "official acts" has the meaning I explained earlier. The government does not have to prove that DiMasi did anything to induce any payment that he knew was being made in return for his official acts. Evans, 504 U.S. at 268; Cruz-Arroyo, 461 F.3d at 73-74. Nor does the government have to prove that DiMasi actually did anything in return for any such payment. Evans, 504 U.S. at 268. However, it has to be proven that DiMasi knew the payment was made in return for official acts. As with the earlier counts, in order to convict DiMasi of extortion under color of official right, you must unanimously agree that DiMasi obtained any such payments through Topazio, or obtained payments for Vitale and/or McDonough, or obtained both types of payments.

In addition, the government must prove that any payment DiMasi knew was being made in return for his official acts affected commerce between Massachusetts and another state or a foreign country. However, it is not necessary that the government prove that DiMasi knew or intended his actions would affect such

23

commerce. First Circuit Pattern Instruction 4.18:1951.

If the government fails to prove beyond a reasonable doubt any of the 3 elements of extortion under color of official right, you must find DiMasi not guilty on Count 9. If the government proves all 3 elements beyond a reasonable doubt, you will find him guilty on Count 9.