UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 09-10243-MLW |
| | ) | |
| RYAN HARRIS | ) | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION
IN LIMINE: Re: CHAT LOGS

Defendant Ryan Harris respectfully submits this Memorandum in support of his motion,

pursuant to Federal Rules of Evidence 403, 801, and 901 and his Constitutional Right to Due

Process, to exclude excerpts from and testimony about online chat conversations between

himself and other individuals as well as between other individuals.  This evidence is hearsay to

which no exception applies, irrelevant under Rule 403, and cannot be properly authenticated.

**A.     Hearsay**

The government intends to admit the logs of online one-on-one chat conversations

between Harris and three alleged co-conspirators (Isabella Lindquist, Craig Phillips, and Nathan

Hanshaw), between one alleged co-conspirator (Hanshaw) and an FBI source, and between

Harris and five individuals who have only been identified by screen name (Mr. T., Killswitch,

Xfactor, Shagy, and MooreR).  The government provides three theories for the admissibility of

these conversations: 1) to contextualize Harris's statements which are admissible as statements

by a party opponent; 2) as non-hearsay to show Harris's knowledge and intent rather than for the

truth of the matter; and 3) as co-conspirator statements.[1]  The chat transcripts are not admissible

based on any of these theories.

The government cites <u>United States v. Colon-Diaz</u>, 521 F.3d 29, 38 (1st Cir. 2008), for

the proposition that when one side of a conversation is admissible, the other side can be admitted

as non-hearsay to provide context for the admissible statements.  Statements admitted to provide

context to other statements are only admissible if they are introduced strictly "for context and not

for the truth of the matter asserted."  <u>United States v. Catano</u>, 65 F.3d 219, 225 (1st Cir. 1995).

Additionally, such statements are typically admitted because they do not give the jury any

information that is not contained in statements that are otherwise admissible.  <u>See</u> <u>Colon-Diaz</u>,

521 F.3d at 38 ([N]othing in the [statements admitted for context] exposed the jury to any

information not already contained in the Otero statement which, as determined above, was itself

admissible under the coconspirator exception under Rule 801(d)(2)(E).").

The proffered chat logs are not admissible to provide context because it is disingenuous

to suggest that such conversations are truly being offered solely to provide context and not for the

truth of the matter.  Looking through the proffered logs, it is clear that the majority of the

statements that support the government's case (i.e. statements about getting free or faster

internet) were made by individuals other than Harris.  In fact, Harris says very little in most of

these conversations.  It is not the others' statements that give context to Harris, but Harris's

---

[1] The first two rationales cannot support the introduction of transcripts of chats between
Hanshaw and the FBI source.  Harris was not a party to those conversations, so the statements
included in them cannot be admitted to contextualize his remarks.  Nor can private conversations
to which Harris was not a party and about which he did not aware be introduced to show his
knowledge and intent.  The conversations between Hanshaw and the FBI source are only
admissible if they satisfy the co-conspirator exception to the hearsay rule.

statements that contextualize broad pronouncements made by others.  Unlike in <u>Colon-Diaz</u>,

Harris's words alone would give the jury very little information; the bulk of the relevant

information is contained in the statements of others, most of whom will not testify.  The

government is, effectively, attempting to introduce the hearsay statements of others through

Harris's often non-committal responses under the guise that while Harris's responses are

introduced for the truth of the matter asserted, the statements that prompted those responses are

not.

      For similar reasons, these conversations cannot be used to show Harris's knowledge of

how the products were being used.  That argument is an attempt to admit, through the back door,

evidence that the government cannot introduce under the hearsay rules.  Portions of these chat

logs tend to show that Harris knew that TCNISO products <u>could</u> be used to get free or faster

internet service.  That proposition, however, is not the critical issue of proof that lies at the heart

of this case, and proof of that type of knowledge does not suffice to establish Harris's complicity

with the charged users.  Ample evidence, including Harris's book, will show that Harris knew

that TCNISO products <u>could</u> be used to obtain free or uncapped internet.  The critical issues in

this case is whether Harris had the requisite knowledge and intent to help a given user get free

internet from a given ISP.  Evidence that Harris knew something <u>could</u> happen is not evidence

that he knew that it <u>would</u> happen or that he intended to help other people make it happen.  <u>See</u>

<u>United States v. Pappathanasi</u>, 383 F.Supp.2d 289, 291-92 (D. Mass. 2005).  None of the

proffered chat logs tend to show that Harris knew any of the alleged users or knew what they

were doing with TCNISO products.

Nor can the chat logs be introduced under the co-conspirator exception to the hearsay rule. Fed. R. Evid. 801(d)(2)(E). This is a narrow exception that has been criticized by courts, including the First Circuit. United States v. Goldberg, 105 F.3d 770, 775 (1st Cir. 1997) ("Frankly, the underlying co-conspirator exception to the hearsay rule makes little sense as a matter of evidence policy. No special guarantee of reliability attends such statements, save to the extent that they resemble declarations against interest. The exception derives from agency law, an analogy that is useful in some contexts but (as the Advisory Committee noted) is 'at best a fiction' here. The most that can be said is that the co-conspirator exception to hearsay is of long standing and makes a difficult-to-detect crime easier to prove."). "To invoke the exception, a party who wants to introduce a particular statement must show by a preponderance of the evidence that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy." United States v. Sepulveda, 15 F.3d 1161, 1180 (1st Cir. 1993); United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977). "The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered . . . ." Fed. R. Evid. 801(d)(2)(E). This rule permits the trial judge to determine, before trial, whether or not a conspiracy existed. See Giles v. California, 554 U.S. 353, 374 (2008) ("A judge may determine the existence of a conspiracy in order to make incriminating statements of co-conspirators admissible against the defendant under Federal Rule of Evidence 801(d)(2)(E).").

The chat conversations between Harris and alleged co-conspirators (Lindquist, Phillips, and Handshaw) are not admissible under this exception because the government cannot show

4

that these statements were made during and in furtherance of a conspiracy.  This issue once again raises the scope of the conspiracy charged by the government.  The charged conspiracy is quite nebulous, it seems to encompass anyone who gets free or enhanced internet at any time and in any place so long as Harris's name can somehow be mentioned.  However, these conversations are not about the users named in the TCNISO forums, they are not about helping users to get free or faster internet, and they occurred years before any of the named users purchased anything from TCNISO.  Nor is there any independent evidence, apart from the content of these conversations, that these conversations were made in furtherance of a different conspiracy.  See Fed. R. Evid. 801(d)(2)(E) (requiring evidence of a conspiracy apart from the proffered statement).

  The chat conversations between Harris and the anonymous individuals (Mr. T, Killswitch, Xfactor, Shagy, and MooreR) should not be admitted because there is no proof of a conspiracy between these users and Harris.  These users exist solely as unidentified individuals who communicated with Harris online.  See Sepulveda, 15 F.3d at 1181 (finding that statements should not have been admitted under coconspirator hearsay exception where there was no evidence beyond the statements to show that the unidentified declarants were part of the charged conspiracy).  There is no indication that Harris, or any witness, ever met any of these individuals or has actual knowledge of who these individuals are.  For many, one of the attractions of the internet is the ability to be anonymous or to assume an identity of one's own choosing, and it is difficult to imagine how any of the witnesses could confirm the identity of these chat participants.  There is no evidence suggesting that these individuals bought or used TCNISO products, and apart from the content of the chats, there is no evidence that there was a conspiracy

between the declarants and Harris or that the statements were made in furtherance of that conspiracy.

Finally, the chat conversations between Nathan Hanshaw and the unnamed FBI source cannot be admitted under this exception.  Harris was not a party to these private conversations, he was not aware of these conversations, and they were not made in furtherance of any conspiracy with Harris.  The government offers these chat conversations as proof that Hanshaw used the internet using TCNISO products at the times charged in the wire fraud counts. However, the contents of the proffered chats are completely unrelated to the charged conspiracy and were not made in furtherance of any conspiracy with Harris.  The chats do not include discussion of Harris, TCNISO, obtaining free or faster internet, or cable modems.  There is simply no possible connection between these conversations and Harris, and the conversations must, therefore, be excluded as inadmissible hearsay.

### B.      Relevance

Harris argues that the chat conversations should be excluded because they are more prejudicial than probative and would confuse and mislead the jury.  See Fed. R. Evid. 403. Harris is charged with a nebulous conspiracy–joining with unspecified others by providing a product that enabled certain actions and hosting a forum that enabled certain conversations.  All of the proffered chats occurred long before any of the named users purchased anything from TCNISO, and the chats do not discuss or mention the alleged users and their personal attempts to obtain free internet.  This evidence is not probative of whether Harris had the knowledge and intent necessary to join the charged conduct, and shed no light on whether Harris intended to participate in the discrete wire frauds charged.  Whether users obtained or could obtain free or

faster internet access is not an issue in this trial; the issue is whether Harris committed the charged crimes by enabling the conduct of others.  These chat logs serve only to cause unfair prejudice, by implying to the jury that many people were stealing internet and that Harris was a "bad guy" by virtue of selling these products.  Because the chat logs shed no light on the relevant issues, they must be excluded under Rule 403.

### C.     Authentication Problems

The government obtained these chat logs from Phillips, and it intends to introduce these logs through him.  When Phillips left TCNISO, he allegedly copied files, including these logs of chat conversations, from Harris's computer.  When Phillips was arrested and charged, he gave these saved files to the government.

Apart from the hearsay issues discussed above, evidence is not admissible unless it can be authenticated as being that which the proponent asserts it to be.  Fed. R. Evid. 901.  The government claims that these chat logs are complete and accurate accounts of online conversations between Harris and other individuals.  However, the government has not proffered any witness who can authenticate these logs.  Phillips does not have knowledge of how the chat logs were saved on Harris's computer, and he does not know whether those logs were altered before he made his copy.  Nor is there any witness who can testify to the accuracy of those copies or to the fact that they have not been altered since they were copied.  Accordingly, the chat logs must be excluded under Rule 901.

**Conclusion**

For the foregoing reasons, Harris asks this Court to exclude all chat logs from evidence.

RYAN HARRIS
By his attorney,

/s/ Charles P. McGinty

Charles P. McGinty
 B.B.O. #333480
Federal Defender Office
51 Sleeper Street
Boston, MA  02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 3, 2012.

/s/ Charles P. McGinty

Charles P. McGinty