UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   CRIMINAL NO. 09-10243-MLW |
| | ) |
| | ) |
| RYAN HARRIS | ) |

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

Defendant Ryan Harris, pursuant to Fed.R.Crim.P. 30, submits the following proposed jury instructions.

Defendant reserves the right to modify and supplement these instructions as trial progresses.

> RYAN HARRIS
> By his attorney,
>
> /s/ Charles P. McGinty
>
> Charles P. McGinty
>   B.B.O. #333480
> Federal Defender Office
> 51 Sleeper Street
> Boston, MA  02210
> Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 3, 2012.

> /s/ Charles P. McGinty
>
> Charles P. McGinty

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 1

PRESUMPTION OF INNOCENCE

It is a cardinal principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his guilt is established beyond a reasonable doubt. The presumption is not a mere formality. It is a matter of the most important substance.

The presumption of innocence alone is sufficient to acquit the defendant unless the jurors are convinced beyond a reasonable doubt of his guilt after a careful and impartial consideration of all the evidence in the case. The defendant before you, Ryan Harris, has the benefit of that presumption throughout the trial, and you are not to convict him of a particular charge unless you are persuaded of his guilt of that charge beyond a reasonable doubt.

Adopted from First Circuit Pattern Jury Instruction 3.02; Vol. 1A, K. O'Malley, J. Grenig & W. Lee, Federal Jury Practice and Instructions, Sec. 12.10 (5th ed. 2000); Taylor v. Kentucky, 436 U.S. 478, 479 n.5 (1978).

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 2

REASONABLE DOUBT

The burden is upon the Government to prove beyond a reasonable doubt that a defendant is guilty of the charge made against him.

Proof beyond a reasonable doubt is a strict and heavy burden, but it does not mean that a defendant's guilt must be proved beyond all possible doubt.  It does require that the evidence exclude any reasonable doubt concerning a defendant's guilt.

A reasonable doubt may arise not only from the evidence produced but also from the lack of evidence produced by the government.  Reasonable doubt exists when, after weighing and considering all the evidence, using reason and commonsense, jurors cannot say that they have a settled conviction of the truth of the charge.

Of course, a defendant is never to be convicted on suspicion or guesswork.  If, for example, you view the evidence in the case as reasonably permitting either of two conclusions - one that a defendant is guilty as charged, the other that the defendant is not guilty–you will find the defendant is not guilty.

It is not sufficient for the Government to establish a probability, though a strong one. that an element of, or a fact necessary to prove, an offense charged is more likely to be true than not true.  That is not enough to meet the burden of proof beyond a reasonable doubt.  On the other

hand, there are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.

Concluding my instructions on the burden, then, I instruct you that what the Government must do to meet its heavy burden is to establish the truth of each part of each offense charged by proof hat convinces you and leaves you with no reasonable doubt, and therefore satisfies you that you can, consistently with your oath as jurors, base your verdict upon it.  If you find a particular charge against a defendant has been proven beyond a reasonable doubt, you will return a verdict of guilty on that charge.  If, on the other hand, you think there is a reasonable doubt about whether a defendant is guilty of a particular offense, you must give the defendant the benefit of the doubt and find the defendant not guilty of the offense.

Adopted from Court's Instructions in United States v. DiMasi; First Circuit Pattern Jury Instruction.

<u>DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 3</u>

<u>INDICTMENT IS NOT EVIDENCE</u>

Mr. Harris has been charged by way of an indictment.  You are not to draw any adverse inferences against Mr. Harris from the fact that he was indicted.  The indictment is simply the description of the charge against the defendant; it is not evidence of anything.  He is presumed innocent and may not be found guilty by you unless all of you – the trial jurors – unanimously find that the government has proven his guilt beyond a reasonable doubt.

<u>See</u> <u>Pattern Criminal Jury Instructions for District Courts</u>, 1.02; Vol. 1A, K.O'Malley, J.Grenig & W.Lee, <u>Federal Jury Practice and Instructions</u>, Sec. 13.04 (5th ed. 2000).

<u>DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 4</u>

<u>CAUTION AS TO COOPERATING AND IMMUNIZED WITNESSES</u>

You have heard the testimony of a number of witnesses who testified pursuant to plea agreements or immunity agreements with the government.

You are instructed that the government is entitled to enter into such agreements and present such witnesses. However, testimony from such witnesses should be examined by you with greater care than the testimony of an ordinary witness . You should scrutinize each closely because a witness hoping to get his sentence reduced or getting immunity, may have a motive to testify falsely against others, by making up stories or exaggerating what others did, because they want to help themselves.

As with all evidence, in deciding whether some or all of such testimony was truthful, you should consider, among other things, whether it was contradicted or corroborated by other evidence in the case.

As I said, you should scrutinize such testimony with great care and rely upon it with caution. You should give it such weight as you believe it deserves.

Adopted from Court's Instructions in <u>United States v. DiMasi</u>; First Circuit Instruction 2.07; <u>United States v. Simonelli</u>, 237 F.3d 19 (1st Cir. 2001).

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 5

### IMPEACHMENT OF WITNESS BY PRIOR CONVICTION

You have heard evidence that Nathan Hanshaw has been convicted of a crime.  You may consider that evidence, together with other pertinent evidence, in deciding how much weight to give to that witness's testimony.


Adopted from First Circuit Pattern Jury Instruction 2.04.

DEFENDANT'S PROPOSED INSTRUCTION NO. 6

SUBSTANTIAL ASSISTANCE

In connection with a witness' testimony, you have heard references to the Sentencing Guidelines and the concept of "Substantial Assistance."

I will now explain them to you solely so you can consider their meaning in judging the witness' credibility. As I told you before, you may not consider or discuss what the possible sentence for the defendant on trial might be if you return a verdict of guilty on any counts. Sentencing is the responsibility of the judge alone.  It is not permissible for jurors to consider or be affected by what the possible sentence might be.

Sentencing in federal court is governed by an advisory guideline system.  It begins with the judge considering a number of facts and calculating in months a Guideline range for the sentence.  That range is the starting point for deciding the most appropriate sentence based on many factors concerning the defendant, the nature of the crime, and other considerations.  The Guideline range is not presumed to be the reasonable range for the sentence.  The parties can, and do, argue for the sentence they view as most appropriate.

Judges are required to give a sentence that is sufficient but not more than necessary to serve the purposes of sentencing.  In a particular case, that sentence may be higher, lower, or within the Guideline range.

If the government decides that a defendant has provided substantial assistance to it in the investigation or prosecution of one or more other individuals, it may ask the judge to impose a sentence that is below the Guideline range and recommend a particular sentence.  The defendant

can argue for an even lower sentence.  Usually such a substantial assistance motion by the government results in a sentence below the Guideline range.

Ultimately, however, it is up to the judge to consider his assessment of the defendant's truthfulness and the value of his assistance to the government, among other things, in deciding the most appropriate sentence.

Adopted from Court's instructions in <u>United States v. DiMasi</u>.

DEFENDANT'S PROPOSED INSTRUCTION NO. 7

WITNESS CREDIBILITY

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe everything a witness says, only part of it, or none of it.

In deciding what to believe, you may consider a number of factors, including the following: (1) the witness's ability to see or hear or know the things the witness testifies to; (2) the quality of the witness's memory; (3) the witness's manner while testifying; (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice; (5) whether the witness had a past grievance with defendant; (6) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; and (7) how reasonable the witness's testimony is when considered in the light of other evidence which you believe.

Adopted from First Circuit Pattern Jury Instructions 1.06.

<u>DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 8</u>

<u>WEIGHING THE TESTIMONY OF AN EXPERT WITNESS</u>

You have heard testimony from witnesses who have been described as experts.  An expert witness has special knowledge or experience that allows the witness to give an opinion.

You may accept or reject such testimony.  In weighing the testimony, you should consider the factors that generally bear upon the credibility of a witness as well as the expert witness's education and experience, the soundness of the reasons given for the opinion and all other evidence in the case.

Remember that you alone decide how much of a witness's testimony to believe, and how much weight it should be given.

Adopted from First Circuit Pattern Jury Instructions 2.06

<u>DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 9</u>

<u>STIPULATIONS</u>

The evidence in this case includes facts to which the lawyers have agreed or stipulated.  A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact.  Since there is no disagreement, there is no need for evidence apart from the stipulation.  You must accept the stipulation as fact to be given whatever weight you choose.


Adopted from First Circuit Pattern Jury Instructions 2.01.

<u>DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 10</u>

<u>WHAT IS *NOT* A CRIME</u>

Before I instruct you on the elements of the offenses charged, it is critical to understand what is not a crime here.

Mr. Harris is not charged with selling computer modems, or with altering computer modems.  It is not a crime to modify or alter a computer modem, nor to sell such a modem, even altered modems that an individual could use to get free or enhanced internet access.  Proof that Mr. Harris made and sold altered modems does not suffice to establish guilt.[1]

---

[1] This instruction derives from <u>United States v. Falcone</u>, 311 U.S. 205 (1940) and <u>Direct Sales Co. v. United States</u>, 319 U.S. 703, 710-11 (1943). In <u>Direct Sales</u>, the Supreme Court distinguished the liability of a seller of "articles of free commerce" from that of a seller of restricted goods.  <u>Direct Sales</u>, 319 U.S. at 710. The jury must be made aware that the nature of the goods is relevant to its determination of whether Harris had the knowledge and intent necessary to join a conspiracy with TCNISO customers.  <u>Id.</u>  In those cases, the Supreme Court held that the restricted nature of a product could tend to show that the seller had the knowledge and intent necessary to join a conspiracy with buyers.  <u>Id.</u>  This holding, combined with the holding in <u>Falcone</u>, clearly indicates that such inferences regarding knowledge and intent cannot be drawn from the nature of an unrestricted product.

I further instruct you that a product's capability alone, that is, whether it can be used for an illegal purpose, cannot support a conviction.[2]   Proof that Harris knew that individuals used or could use altered modems to obtain free internet access does not, alone, establish Harris's guilt.[3]

A manufacturer or seller of a product that is legal to make and sell is not liable for the criminal use of that product by an end-user even if the seller knows of the use.[4]   Mere knowledge

_____

[2] Were this statement not true, manufacturers and distributers of common products, including guns, alcohol, chef's knives, and hammers, could and would face criminal charges based solely on the known capabilities of those products to cause harm.  However, even civil liability for such individuals is rare.  See, e.g., Perkins v. F.I.E. Corp., 762 F.2d 1250, 1265 n.43 (5th Cir. 1985) ("The marketing of a handgun is not dangerous in and of itself, and when injury occurs, it is not the direct result of the sale itself, but rather the result of actions taken by a third party.").  Allowing culpability to rest on capability alone would also have the effect of eliding important elements, including knowledge and intent.

[3] Numerous courts have recognized that product capability alone cannot support criminal liability for a seller.  In Direct Sales, the Supreme Court noted that "[a]ll articles of commerce may be put to illegal ends" and warned that "to establish the intent [to join a conspiracy], the evidence of knowledge must be clear, not equivocal," because "charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning what, in [Falcone], was called a dragnet to draw in all substantive crimes."  Direct Sales, 319 U.S. at 710-11.  As discussed in Harris's motion to dismiss, it has long been accepted law that product capability does not give rise to even civil liability for a seller based on the conduct of product users.  George A. Nation, Respondeat Manufacturer, 60 Baylor L. Rev. 155, 157-58 (2008) ("Usually the criminal use of a product is deemed to be a supervening, intervening event that eliminates any responsibility on the part of the manufacturer."); Oliver Wendell Holmes, Privilege, Malice, and Intent, 8 Harv. L. Rev. 1, 10 (1894) (stating that usually vicarious liability for a seller does not exist because "every one has a right to rely upon his fellow-men acting lawfully, and, therefore, is not answerable for himself acting upon the assumption that they will do so, however improbable it may be" (emphasis added)).  Nor is suspicion of criminal activity alone sufficient to support a fraud conviction.  See United States v. Loder, 23 F.3d 586, 591 (1st Cir. 1994) (in case where defendant's alleged role in mail fraud was helping to dismantle a car, court held that "Although he need not be aware of all the details of the mail fraud, a general suspicion on Loder's part that his participation in dismantling the Caprice was 'for some nefarious purpose' is not enough to make him guilty of aiding and abetting mail fraud.").

[4] "[O]ne does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally."  Direct Sales

of illegal use is not sufficient for conviction.  In other words, a seller can be indifferent to a

users' purpose, and that indifference does not establish guilt.[5]

Co. v. United States, 319 U.S. 703, 711 (1943).

[5] This instruction is drawn from the Supreme Court opinion in Direct Sales: "[O]ne does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally."  Additionally, in order to be secondarily liable for a crime, one must intend the end of that crime.  United States v. Peoni, 100 F.2d 401, 401-02 (2nd Cir. 1938) (holding that accessorial liability requires that the defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed."); see also United States v. Medina-Roman, 376 F.3d 1, 3 (1st Cir. 2004).  Here, the targeted, allegedly criminal primary conduct at the base of this indictment is obtaining free or faster internet access.  Accordingly, in order to be secondarily liable for someone obtaining free or faster internet access, Harris must have known that the user was planning that conduct and he must have intended to assist them in reaching that end.  See United States v. Urciuoli, 513 F.3d 290, 300 (1st Cir. 2008) (holding that in fraud cases, government must prove that defendant willfully participated "in [the] scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved" (internal quotation marks omitted)).

I instruct you that "develop[ing] ... software tools that users could use to steal (or "sniff")" MAC addresses do not constitute fraud.  MAC addresses or identifiers are not confidential.  Providing the capability to sniff or intercept such addresses is not a fraud on the cable company.

I instruct you that there is no law prohibiting the creation or use of devices, called "sniffers," which can be used to obtain data sent between computers.  There is no law prohibiting the use of a sniffer to harvest MAC addresses or configuration files, and there is no law prohibiting sharing these addresses or files with other individuals.[6]

I instruct you that "develop[ing] additional product features that would help users evade detection by ISPs, for example, by disabling the ISP's ability to 'probe' the cable modem to obtain information about it" is not of itself a fraud on the cable company.

I instruct you that uncapping a modem to obtain faster service than you have paid for is not illegal; at most, it may be a violation of the ISP's terms of service.[7]

---

[6] See, e.g., Motion to Dismiss Plaintiff's Consolidated Class Action Complaint, In re Google Inc. Street View Electronics Communications Litigation, No. 5:10-md-02184 JW at 3 (9th Cir. Mar. 21, 2011).  Companies including Google, Microsoft, and Apple use this information to help device users pinpoint their location. Id.; see also Leena Rao, Microsoft Taps Navizon to Power Mobile Geolocation, Washington Post, Mar. 2, 2010, available at http://www.washingtonpost.com/wp-dyn/content/article/2010/03/02/AR2010030201828.html. Discovery reveals that while investigating Hanshaw, the FBI used a program called Network Stumbler to detect wireless networks in a given area.  See Discovery, Bates No. Harris1411-12, Harris1517-18.  The FBI used this program on a normal laptop computer running a publicly available Windows operating system.  This program detected wireless networks and revealed the MAC addresses of the associated modems to the FBI agent running the program.  It appears that the FBI did not have a warrant authorizing the use of this program to reveal MAC addresses and was not otherwise concerned about the legality of this sniffing.

[7] Even the intentional breach of a terms of service agreement cannot be the basis for criminal liability.  See United States v. Drew, 259 F.R.D. 449, 466-67 (C.D. Cal. 2009) (holding that intentional violation of MySpace's terms of service–by misrepresenting the identify of the user–could not form basis for conviction under 18 U.S.C. § 1030(a)(2)(C)).

Proof that Harris knew that TCNISO modems could be used to obtain free internet is not sufficient to establish his guilt.  Even knowing that a given user might use a device or product to get free internet from a particular ISP is not sufficient to prove guilt.

<u>DEFENDANT'S PROPOSED INSTRUCTION NO. 10A</u>

<u>CORPORATIONS AND CONSPIRACY</u>

You have heard testimony that some of the alleged co-conspirators worked for the company that Mr. Harris founded.  The fact that someone worked for Harris is not proof that Harris was part of a conspiracy with that individual.  Agreeing to work with someone to create and sell a product that is legal to create and sell is not proof that those individuals agreed to join a conspiracy to commit wire fraud.  The government must prove, beyond a reasonable doubt, that Mr. Harris, himself, knew of and intended to join the charged conspiracy.

Additionally, the fact that someone was Mr. Harris's employee is not proof that Mr. Harris knew of, sanctioned, or is responsible for that individual's actions.

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 11

OPERATION OF A WEB FORUM

The operator of an internet forum is not responsible for the content of posts made to the forum by individuals who read and use the forum, and is not assumed to know the contents of those posts.[8]  The owner or host of a forum is legally immune from responsibility for material that is posted on the forum: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1); see also Universal Communication Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 415 (1st Cir. 2007) ("Congress has granted broad immunity to entities . . . that facilitate the speech of others on the Internet.").  Nor does a forum provider become liable for the speech of others if he knows that it conveys unlawful information: "notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech." Id. at 420.

---

[8] This instruction derives from 47 U.S.C. § 230(c)(1), which states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  See Universal Communication Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 415 (1st Cir. 2007) ("Congress has granted broad immunity to entities . . . that facilitate the speech of others on the Internet.").  Nor does Harris become liable for the speech of others if he knows that it conveys unlawful information: "notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech."  Id. at 420.  An instruction along these lines is critical, because the government seeks to string together a conspiracy involving all potential actors at all potential times against all victims using the content of the forum, protected speech for which Harris is not liable.

<u>DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 12</u>

<u>WIRE FRAUD</u>

Counts two through eleven charge Mr. Harris with violating the federal statute making wire fraud illegal.  For you to find Mr. Harris guilty of wire fraud, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, there was a scheme, as charged in the indictment, to defraud or to obtain money or property by means of false or fraudulent pretenses;

Second, that the scheme to defraud involved the misrepresentation or concealment of a material fact or matter, or that the object of the scheme was to obtain money or property by means of false or fraudulent pretenses, representations or promises;

Third, that Mr. Harris knowingly and willfully participated in this scheme with the intent to defraud; and

Fourth, that Mr. Harris caused an interstate wire communication to be used, on or about the date alleged, in furtherance of this scheme, or that its use was a necessary foreseeable part of the scheme.


Adopted from First Circuit Pattern Jury Instructions 4.18.1343.

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 13

## WIRE FRAUD–FIRST ELEMENT DEFINITIONS

A scheme includes any plan, pattern or course of action that involves concealment or

deceit.  It is not necessary that the government prove all of the details alleged in the indictment

concerning the precise nature and purpose of the scheme or that the material transmitted by wire

was itself false or fraudulent or that the alleged scheme actually succeeded in defrauding anyone

or that the use of wire communications facilities in interstate commerce was intended as the

specific or exclusive means of accomplishing the alleged fraud.

What must be proven beyond a reasonable doubt is that Mr. Harris knowingly devised

and intended to devise a scheme to defraud that was substantially the same as the one alleged in

the indictment.

I further instruct you that there are two types of schemes charged here: first, to sell a

device which "enabled" free, anonymous, or upgraded internet access, and, second, to use a

device which "enabled" free , anonymous or upgraded access.  This is reflected in the sequence

of the charges.  With respect to each alleged user, the government first charges the sale or

download of the item (see counts 2,3, 6, 8 and 10), and then charges the use of the item (see

counts 4,5,7,9 and 11).

First, with respect to the counts which allege the sale or download of the item (counts 2,3,

6, 8 and 10):

The indictment alleges that the modems and software sold by Harris's company

"enabled" users to do different things, specifically:

1.      "enabled computer users to obtain internet service without making the required payment;

2.      "enabled users to obtain faster, upgraded (or "uncapped") internet service without paying the premiums charged by the ISP.

3.      "enabled users to use, without authorization, configuration files that the ISP would otherwise only provide to a legitimate subscriber paying for premium access.  The user therefore received the type of faster internet service for which a legitimate user was paying a premium."

4.      "enabled users to disguise their cable modem by mimicking, or "cloning," the unique identifiers, including the MAC address, of the modem of a legitimate, paying internet subscriber.  The user thereby received internet service without paying for it."

5.      "enabled users to disguise their true online identities, which in turn allowed them to remain anonymous when engaged in online activities such as downloading infringing or pirated movies onto their computers."

In this context, "enabling" a user to do something means creating a potential in a product for a particular use.  I instruct you that "enabling" a user by selling a product with the potential for an illegal use is not a crime.  A product seller or supplier who does not communicate with users beyond the mere sale of the item is not liable for the conduct of those purchasers.[9]

---

[9] Making a seller liable based solely on shipping the product, without further communication, is tantamount to imposing liability based solely on product capability.  Without communication or some link beyond the existence of the product itself, there can be no meeting of the minds, no knowledge of the purchaser's plans, and no intent to further those plans.

In addition, I instruct you that "enabling" a person to disguise their identity to an internet service provider does not constitute fraud.  See United States v. Drew, 259 F.R.D. 449, 466-67 (C.D. Cal. 2009) (holding that intentional violation of MySpace's terms of service – by misrepresenting the identity of the user – could not form basis for conviction under 18 U.S.C. § 1030(a)(2)©).  An internet customer who otherwise pays his bill does not commit a fraud on the cable company by disguising his or her identity.  Many people seek anonymity on the internet, some of them political dissidents, and the mere fact that a product provides that capability does not make it the tool of a fraud.  Such an action may be a violation of the terms of service of a cable company, which is a private agreement with the cable company, but it is not a fraud on the company.

With regard to the counts which charge the use of the item (see counts 4,5,7,9 and 11), I instruct you that a product seller is not responsible for the end use by a product customer.  That is so even if he suspects or even knows of the likely use.

The term "defraud" means to deceive another in order to obtain money or property.  The term "false or fraudulent pretenses" means any false statements or assertions that were either known to be untrue when made or were made with reckless indifference to their truth and that were made with the intent to defraud.  The term includes actual, direct false statements as well as half-truths and the knowing concealment of facts.

The government alleges that the thing obtained as a result of this scheme was free or faster internet access or anonymity.  The government must prove that internet access and anonymity are "money or property."  If it does not do so, you cannot convict Mr. Harris of wire fraud.

Adopted from First Circuit Pattern Jury Instructions 4.18.1343; Court's Instructions in <u>United States v. DiMasi</u>; <u>United States v. Potter</u>, 463 F.3d 9, 16 (1st Cir. 2006).

<u>DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 14</u>

<u>WIRE FRAUD–SECOND ELEMENT DEFINITIONS</u>

The second element that the government must prove beyond a reasonable doubt is that the scheme to defraud involved a material falsehood.

A "material" fact or matter is one that has a natural tendency to influence or be capable of influencing the decision of the decisionmaker to whom it was addressed.

Adopted from Court's Instructions in <u>United States v. DiMasi</u>; First Circuit Pattern Jury Instructions 4.18.1343.

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 15

WIRE FRAUD–THIRD ELEMENT DEFINITIONS

The third element that the government must prove beyond a reasonable doubt is that Mr. Harris participated in the scheme to defraud knowingly, willfully, and with a specific intent to deceive and defraud the Internet Service Provider named in that count.

To act knowingly means to act voluntarily and deliberately, and not by accident or mistake.

To act willfully means to do something voluntarily and intentionally with the specific intent to do something the law forbids.  That is, to act with a bad purpose either to disobey or disregard the law.  The burden to prove intent, as with all other elements of the crime, rests with the government.

In this case, to act with the intent to defraud means to act with the intent to deprive the Internet Service Provider named in that count of money or property.

In other words, Mr. Harris must have intended, and had the specific purpose, that the person named in the count would use deceit to obtain money or property from the ISP named in the count.   For each count of wire fraud, the government must prove that Mr. Harris devised a scheme to defraud the ISP charged, and that in so doing he specifically intended to deprive that ISP of something of value or that he specifically intended to obtain something of value as a result of the scheme to defraud that ISP.  The government must prove, beyond a reasonable doubt, one of two things in connection with each wire fraud count: 1) that Mr. Harris deprived the named ISP of something of value through a scheme to defraud ISPs, and that the alleged communication was made or caused by Harris in service of, but not as a result of, this scheme; 2) that Mr. Harris

26

obtained something of value as a result of a scheme to defraud the named ISP, and that the

alleged communication was made or caused by Harris in service of, but not as a result of, this

scheme.

     As I told you before, in deciding all issues, you may consider both direct and

circumstantial evidence.  A person' state of mind often cannot be proved directly.  Therefore,

consideration of circumstantial evidence may be particularly important in deciding whether the

government has proven beyond a reasonable doubt an alleged scheme to defraud the ISP

mentioned in each charge of money or property.  A scheme need not be proven by direct

evidence of an express agreement or statement of intent.  Rather, the required intent can be

proven by facts established by circumstantial evidence and the reasonable inferences to be drawn

from them.  Such circumstantial evidence may include a person's own words and deeds.

     However, the necessary intent must be proven in some fashion for you to find a defendant

guilty of mail fraud or wire fraud.  As I have stated, the government must not only prove that Mr.

Harris participated in a scheme to defraud, but also that he did so knowingly, willfully, and with

the intent to deprive the charged ISP of money or property.  Even if you find that a scheme to

defraud existed, Mr. Harris's participation in it would not be unlawful if he participated without

the necessary intent.


Adopted from Court's Instructions in <u>United States v. DiMasi</u>; First Circuit Pattern Jury
Instructions 4.18.1343.

<u>DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 16</u>

<u>WIRE FRAUD–FOURTH ELEMENT DEFINITIONS</u>

The fourth element that the government must prove beyond a reasonable doubt is that, the use of the wire communications facilities in interstate commerce on or about the date alleged was closely related to that scheme because Mr. Harris either made or caused an interstate wire transfer to be made in an attempt to execute or carry out the scheme.  To "cause" an interstate wire transfer to be made is to do an act with knowledge that an interstate wire transfer will follow in the ordinary course of business or where such a call can reasonably be foreseen.  Mr. Harris does not have to be personally responsible for the transfer, but the government must prove beyond a reasonable doubt that he knew, or could reasonably have foreseen, that use of the interstate wires would follow in the course of the scheme.

"[U]se of the wires must be 'incident to an essential part of the scheme.'"[10]  That is, the wire transmission must be part of <u>this</u> scheme, and not some other, and must be integral to the scheme.  The government must prove beyond a reasonable that the wire transmission charged in connection with each count was done in furtherance of the scheme, that is, to help bring about the desired result.  The goal or purpose of a scheme is not part of the scheme.  Therefore, the government must prove beyond a reasonable doubt that the charged wire transactions were done in the hopes of reaching the desired result of the scheme; it is not enough for the government to prove that the charged wire transmission was, itself, a result of the scheme.

Adopted from Court's Instructions in <u>United States v. DiMasi</u>; First Circuit Jury Instructions 4.18.1343.

---

[10] United States v. Lopez, 71 F.3d 954, 961 (1st Cir. 1995) (quoting Pereira v. United States, 347 U.S. 1, 8 (1954)).

28

<u>DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 17</u>

<u>THEORIES OF LIABILITY–PRINCIPAL AND AIDING AND ABETTING</u>

As I have explained, Counts 2 through 11 of the indictment charge Mr. Harris with committing wire fraud.  There are two ways in which the government may prove the defendant guilty on each of those charges.

First, a defendant is guilty of a particular charge if the government proves beyond a reasonable doubt that the defendant personally committed the wire fraud charged in the particular count as I just defined that crime for you.

Second, the defendant is guilty of a particular charge if the government proves beyond a reasonable doubt that someone else committed the crime charged in the particular count as I defined and also that Mr. Harris aided and abetted that crime.

To "aid and abet" means intentionally to help someone else commit the charged crime. To establish aiding and abetting, the government must prove beyond a reasonable doubt: 1) that someone else committed the wire fraud charged in the particular count; and 2) that Mr. Harris knowingly, willfully, and with intent to defraud associated himself in some way with the charged crime and, with that state of mind, participated in it as he would in something he wished to bring about.

In this case, the government must first prove that the user named in the count committed wire fraud, that is, that each one devised a scheme to defraud (per the government, getting internet access without paying), that each user intended to obtain something of value or to deprive someone else of something of value (alleged to be unpaid access to the internet), and that each user made an interstate wire transmission as charged in the superseding indictment.  Then

29

the government must prove that Mr. Harris knew about each user's scheme and intention and that

he purposely joined in the venture of each user with the intent to help that user realize his own

wire fraud scheme.  Because each user allegedly had a scheme to defraud his or her own ISP, the

government must prove that Mr. Harris had the same specific intent to defraud each ISP.  Such

shared knowledge and intent cannot arise without some communication, or at least some

knowledge on the part of Mr. Harris regarding each user and his or her personal objectives.

The defendant need not perform the underlying criminal act, be present when it is

performed, or be aware of the details of its execution to be guilty of aiding and abetting.

However, a general suspicion that an unlawful act may occur or that something criminal

happening is not enough.  It is not enough to prove that Mr. Harris may have had some

knowledge that something underhanded was occurring; the government must prove that Mr.

Harris willfully participated "in [the] scheme with knowledge of its fraudulent nature and with

intent that these illicit objectives be achieved."  United States v. Urciuoli, 513 F.3d 290, 300 (1st

Cir. 2008) (internal quotation marks omitted).


Adopted from Court's Instructions in United States v. DiMasi; First Circuit Pattern Jury
Instructions 4.18.371(2)

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 18

CONSPIRACY

Count 1 charges Mr. Harris with conspiring to commit wire fraud.

For you to find a defendant guilty of conspiracy, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to commit the crime of wire fraud as I defined it for you;

Second, that Mr. Harris knowingly and willfully joined in that agreement to commit a particular crime, that he knew of and intended the specific criminal objective at the heart of the conspiracy and that he intended to agree and to commit the substantive offense; and

Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to achieve one of the illegal objects or goals of the conspiracy.

In this case, the substantive offense/criminal objective charged is wire fraud based on users' attempts to utilize TCNISO products to get free or faster internet access. Accordingly, in order to prove the charged conspiracy, the government must prove beyond a reasonable doubt that Mr. Harris agreed with product users to commit wire fraud through the users' attempts to get free internet and that he intended to commit wire fraud through their attempts to do so. As charged, the "particular" crime underlying this conspiracy occurred when each user either obtained a TCNISO product or used the product to get free internet. Therefore, the government must prove beyond a reasonable doubt that Harris knew that each user was going to use the

product to get free internet, and that he intended to join in each individual's efforts to obtain free internet access.

Adopted from First Circuit Pattern Jury Instructions 4.18.371(1); Court's Instructions in <u>United States v. DiMasi</u>; <u>United States v. Rivera-Rodriguez</u>, 617 F.3d 581, 596 (1st Cir. 2010)

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 19

CONSPIRACY–EXISTENCE

With respect to the first element - the existence of the agreement you should understand that a "conspiracy" is simply a spoken or unspoken agreement by two or more people to commit a crime, It is the agreement that is the essence of the crime and it does not matter whether it achieved any unlawful goal.  With regard to the existence of the conspiracy, what the evidence must show is that the members, in some way or manner, came to a mutual understanding to try to accomplish their common unlawful purpose, and that they did so knowing that the plan was unlawful and intending to carry it out,

However, the evidence to establish the existence of a conspiracy need not show that the conspirators entered into an express agreement or formal agreement, or even that they directly, by spoken or written words, stated between themselves what their object or purpose was, or the details of the scheme, or the means by which they would succeed.  Mere similarity of conduct among various persons, and the fact that they may have associated with each other, discussed illegal activity, or taken steps to further the conspiracy's purposes does not necessarily establish proof of the existence of a conspiracy. However, you may consider such factors. It is sufficient if an agreement is shown by conduct evidencing a silent understanding to share a purpose to violate the law.

You may consider all of the direct and circumstantial evidence in deciding whether a conspiracy has been proven. However, since a conspiracy is often secret, neither the existence of a conspiratorial agreement, nor a defendant's participation in it, must be proved by direct evidence.  Both may be proven by circumstantial evidence alone.

Adopted from Court's Instructions in <u>United States v. DiMasi</u>; First Circuit Pattern Jury Instructions 4.18.371(1).

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 20

CONSPIRACY–MEMBERSHIP

To achieve convict Mr. Harris on count 1 the government must also prove beyond a reasonable doubt that the Mr. Harris was a member of the conspiracy, meaning that he must have knowingly and willfully joined in the agreement with at least one other person named in paragraphs 2 through 7 of the indictment to commit at least one of the crimes alleged to be an object of the conspiracy.

As I use the terms throughout these instructions, to act knowingly means to acts voluntarily and intentionally, and not by accident or mistake.

To act willfully means to act voluntarily and purposefully with the specific intent to do something the law forbids; that is to say, with a bad purpose either to disobey or disregard the law.

To prove that Mr. Harris joined a conspiracy willfully, the government must prove beyond a reasonable doubt that the individual defendant both intended to agree with at least one other alleged conspirator to commit at least one of the charged crimes of wire fraud, and also intended that this crime actually be committed.

It is not sufficient for the government to prove that Mr. Harris  merely had knowledge of a conspiracy or merely associated with members of a conspiracy.  It is also not sufficient for the government to prove that a person merely acted in a way that happened to further some purpose of a conspiracy.  Rather, the government must prove that Mr. Harris intended to join the agreement and intended that the agreed-to crime be committed.

Mr. Harris's membership in a conspiracy must be proved by evidence of his own words and actions.  In deciding whether a defendant was a member of the conspiracy alleged in this case, you should consider the direct and circumstantial evidence of his own acts and statements.  Such evidence may include acts or statements of the other alleged co-conspirators only to the extent that they are evidence of the words and actions Mr. Harris.

The government does not have to prove that Mr. Harris knew about or agreed to all of the specific details of the crime.  The government does have to prove beyond a reasonable doubt that a particular defendant knew of and intended to agree to the essential features and general aims of the venture.  Because of the structure of the conspiracy charged by the government, namely that Mr. Harris participated in a conspiracy involving all users of his product, the government must prove that Mr. Harris knew about each alleged conspirator and that he intended to join in each conspirator's actions and to further their attempts to get free or enhanced internet access.  The government must prove that Harris communicated with the alleged product users and that he was aware of their objectives and intended to help them obtain free or enhanced internet access.

A defendant cannot be convicted of conspiracy on the basis of suspicion or surmise.  He cannot be convicted of conspiracy if it is only proved that he merely associated with someone committing a crime, or that he merely knew of illegal activity by other people, or that he was merely present when a crime was committed.  Nor can he be convicted of conspiracy if he merely took actions that happened to further the objectives of a conspiracy that he did not agree to join.  These are, however, relevant factors that you may consider in deciding the ultimate question, which is whether the government has proved beyond a reasonable doubt that Mr. Harris

knowingly and willfully joined an agreement with the individuals named in the indictment to

commit a crime alleged in the indictment and intended to commit that crime.

Adopted from Court's Instructions in <u>United States v. DiMasi</u>; First Circuit Pattern Jury
Instructions 4.18.371(1).

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 21

CONSPIRACY–OVERT ACT

The third element the government must prove beyond a reasonable doubt is that one of the conspirators committed an overt act.  An overt act is an act knowingly committed by one or more of the conspirators, during the period of the conspiracy, in an effort to accomplish a goal of the conspiracy.

The indictment alleges many overt acts.  Only one of those alleged overt acts has to be proved.

The government is not required to prove that Mr. Harris personally committed or knew about the overt act.  It is sufficient if the government proves one of the conspirators committed one overt act at some time during the period of the conspiracy.

The overt act may appear to be completely innocent and legal.  It does not itself have to be a crime.  However, to find this element proven, you must unanimously agree on which overt act or acts alleged in the indictment were committed.  As I said earlier, the government does not have to prove that the conspiracy succeeded or that the conspirators achieved their goal or goals.

Adapted from Court's Instructions in United States v. DiMasi.

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 22

CONSPIRACY–BUYER-SELLER RELATIONSHIP

"[A] buyer-seller relationship, simpliciter, is an insufficient predicate for finding that the buyer and seller are guilty as coconspirators." United States v. Santiago, 83 F.3d 20, 23-24 (1st Cir. 1996)(emphasis in original).  You cannot infer a conspiracy based on a one-time sale or multiple "casual" sales where there is no indication that the seller is committed to the buyer.  See e.g. United States v. Moran, 984 F.2d 1299, 1302-03 (1st Cir. 1993).

In order to prove that the alleged buyer-seller relationship was a conspiracy, the government must prove that Mr. Harris had "clear, not equivocal" knowledge of the conspiracy and intended to join it.  Direct Sales Co. v. United States, 319, U.S. 703, 711 (1943).  The "inference of such knowledge [of a conspiracy] cannot be drawn merely from knowledge the buyer will use the goods illegally."  Id. at 709; see also United States v. Ocampo, 964 F.2d 80, 82 (1st Cir. 1992) (finding that "a fair inference that defendant knew what was going on" does not "establish intent to conspire."); Pappathanasi, 383 F.Supp.2d at 291 ("The mere collateral effects of jointly agreed-to activity, even if generally foreseeable, are not necessarily an object of the conspiracy."); Goldberg, 105 F.3d at 774.  Nor does "the act of supplying itself" demonstrate "an agreement or concert of action between the buyer and the seller amounting to conspiracy." Direct Sales, 319 U.S. at 709.  To prove a conspiracy, the government must show that, "by the sale, [the seller] intends to further, promote, and cooperate in [the buyer's intended illegal use]." Id. at 711.  "[I]ndifference to the buyer's illegal purpose" is insufficient to prove a conspiracy. Id. at 712, n.8.

In this case, the government must prove that each alleged user planned to use TCNISO products to obtain free internet, that Mr. Harris knew this, and that Mr. Harris intended to help each user to obtain free internet from his ISP.  The government must prove, beyond a reasonable doubt, that Harris knew that *these* users intended to use TCNISO products to get free internet access from their ISPs and that Harris intended to help *these* individuals to get free internet access from their ISPs.

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 23

CONSPIRACY–SINGLE CONSPIRACY

The government must prove, beyond a reasonable doubt, the existence of a single conspiracy as charged in this case.  You cannot convict the defendant unless you find that he participated in a single conspiracy as charged.

A conspiracy is measured by the scope of the agreement underlying the conspiracy, and one conspiracy can include more than one substantive offense.  Braverman v. United States, 317 U.S. 49, 53-54 (1942).  "A single agreement to commit several crimes constitutes one conspiracy.  By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies."  United States v. Broce, 488 U.S. 563, 570-71 (1989).  The existence of a single conspiracy is decided based on the "totality of the circumstances," with a focus on the "existence of a common goal, evidence of interdependence among the participants, and the degree to which their roles overlap."  United States v. Fenton, 367 F.3d 14, 19 (1st Cir. 2004).

To establish a common goal, the government must prove an "overall objective to be achieved by multiple actions."  United States v. Chandler, 388 F.3d 796, 811 (11th Cir. 2004). This means that Harris must have had the same overall goal as product users; it is not sufficient for the government to show that Harris wanted to make money by selling the device and that users wanted to save money by using the device; those are not the same overall objective.  There can be no single conspiracy here unless the government proves, beyond a reasonable doubt, that the users all depended upon one another's existence and success in order to achieve their own ends.  Merely proving that some users communicated with one another using the TCNISO forum does not establish that the users were joined in a single conspiracy with Mr. Harris; the

government must prove, beyond a reasonable doubt, that all of these individuals knew of and shared the same ultimate goal.  If you find that each user decided to engage in the charged conduct of his or her own accord, without respect to other users or to Mr. Harris, you must find that the government has not proven a single conspiracy.

Additionally, the results of a conspiracy are not necessarily part of a conspiracy.  United States v. Doherty, 867 F.2d 47 (1st Cir. 1989).  "[M]ere collateral effects of jointly agreed-to activity, even if generally foreseeable, are not mechanically to be treated as an object of the conspiracy."  United States v. Goldberg, 105 F.3d 770, 774 (1st Cir. 1997).  The charged conspiracy includes two types of conduct: buying a device and using a device.  In order to show that these two actions are part of a single conspiracy, the government must prove that using the device is more than the result of a conspiracy to sell the device.  That is, the government must prove the "continuous co-operation of the conspirators" from the time of purchase through the time of use in order to establish a single conspiracy in this case.  Fiswick v. United States, 329 U.S. 211, 216 (1946).

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 24

UNANIMITY

Throughout this charge, I have told you that the government has alleged multiple theories. With respect to resolving all of these, you must make every decision unanimously.

The government has alleged at least 3 goals of the conspiracy: free, anonymous, or enhanced internet access.  The government does not have to prove that all three were objects of the conspiracy.  However, to convict the defendant, you must unanimously find that one of these objects was a goal of the conspiracy.  The government has also alleged multiple overt acts of the conspiracy.  To convict the defendant, you must unanimously find that one of these overt acts occurred.

The government has alleged multiple counts of wire fraud.  You must be unanimous with respect to the existence of each of these charges.  With respect to each count of wire fraud, the government has alleged multiple possible goals of the charged schemes: namely, free, anonymous, or enhanced internet access.  To convict the defendant of any count of wire fraud, you must unanimously find that each scheme had one of these objects as its goal.


Adopted from Court's Instructions in United States v. DiMasi

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 25

## VENUE

In order to convict Mr. Harris of any of the charges in this case, the government must prove, to a preponderance that venue is proper in the District of Massachusetts for each charge.

Generally, venue is proper in Massachusetts if the government proves that the charged crime occurred in Massachusetts. Venue for the conspiracy charge is proper in Massachusetts if the government proves that a co-conspirator committed an overt act in furtherance of the conspiracy in Massachusetts. Venue in Massachusetts is proper for a wire fraud count charging Mr. Harris as a principal if the government proves that Mr. Harris committed the charged act in Massachusetts. Venue in Massachusetts is proper for a wire fraud count charging Mr. Harris with aiding and abetting the conduct of another if the government proves that Mr. Harris or the charged principal committed the charged act in Massachusetts.

See United States v. Josleyn, 99 F.3d 1182, 1189-90 (1st Cir. 1996); United States v. Georgacarakos, 988 F.2d 1289, 1293-94 (1st Cir. 1993).