UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 09-10243-MLW |
| RYAN HARRIS | ) ) ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE re CHAT LOGS**

The government submits this memorandum in opposition to the defendant's motion in limine to exclude chat logs.

### I. Contextual Statements to Harris, Such as Questions or Incidental Comments, are Not Hearsay

As set forth in its Memorandum of Law In Support of Its Motions in Limine, in several instances, the government intends to introduce excerpts of chats between Harris and other speakers (specifically, Lindquist, Phillips, Mr.T, MooreR, and X-Factor), in which Harris has made substantive, content-laden statements, and, by contrast, the declarant either asked a question or made an incidental remark. In those instances, Harris's own statement is admissible as a party admission, and the "statement" of the declarant is admissible to provide context to Harris's admission.

In other instances, the government intends to introduce excerpts of chats where the declarant's statement itself is substantive. In those contexts, the government has relied on other exceptions to the hearsay rule.

1

## II. Statements To Harris That Users Are Stealing and Uncapping Are Relevant To Proving Harris's Knowledge and Intent

As set forth in its Memorandum of Law In Support of Its Motions in Limine, the government intends to introduce chat statements in which the declarant tells Harris that he is stealing or uncapping or that others are stealing and uncapping. The defendant moves to exclude these, arguing that statements that users were stealing or uncapping are irrelevant because they relate only to product "capability" (or what it "could" do, rather than "would" do), they were made earlier in time, and they were not by, or concerning, the four charged Massachusetts users. (See Def's Memo pp. 3, 6-7).

These arguments lack merit. First, the statements relate not to product capability but to actual use. The users' statements establish not what the users could possibly do with Harris's products; rather, they establish what the users in fact had done (or were attempting to do) with these products. This evidence of reports of actual product use is clearly relevant to establish what Harris knew about how his customers were using his products as well as that he intended to help them accomplish these uses.

Second, even assuming arguendo that the statements relate only to product capability, rather than actual use, they are relevant to establishing Harris's knowledge and intent. As the case law in the conspiracy-buyer-seller context makes clear, one factor a jury can use to infer the supplier's intent is the suspect nature of the product itself, or put another way, the product capability. If a product, by its nature, has essentially one use -- in this case, to help users steal and uncap -- that fact is something a jury can consider in inferring the seller's knowledge and intent to help his customers use his products for that use. See Direct Sales Co. v. United States, 319 U.S. 703, 710 (1943) (upholding conspiracy conviction of morphine seller, contrasting a supplier of toy pistols with a

seller of machine guns, reasoning that "all do not have inherently the same susceptibility to harmful and illegal use.  Nor, by the same token, do all embody the same capacity, from their very nature for giving the seller notice the buyer will use them unlawfully"); United States v. Grunsfeld, 558 F.2d 1231, 1236 (6th Cir. 1977) (upholding conspiracy conviction of chemist who supplied lab equipment, reasoning that "the materials which [defendant] obtained for the conspiracy were hard-to-get items which are often used in the production of illegal drugs").

      The defendant insists that evidence of product capability is "not the critical issue" and "does not suffice" alone to establish Harris's guilt.  But that is not a basis for excluding the evidence.  Evidence is still relevant even if it, alone, cannot establish a defendant's guilt.

      Third, statements made in 2005, even if they were not by, or about, the four Massachusetts users who form the basis of the wire fraud charges, are still relevant to show Harris's knowledge and intent.  The superseding indictment charges Harris with participating in a conspiracy that ranged from 2003-2009 and included Lindquist, Phillips, and other unknown co-conspirators.  The wire fraud counts charge Harris with committing wire fraud with Hanshaw in 2005 and then again in 2007 and with Genao, Madeira, and Larosa in 2008-09.  Evidence of how people were using Harris's products in 2005 clearly falls within the time frame and the nature of the conspiracy and fraud scheme charged in the superseding indictment.  Furthermore, evidence of a defendant's knowledge and intent earlier in time can tend to show his continued knowledge and intent later about how his products were being used.

The defendant's arguments here go to the weight, not the admissibility, of the evidence. He is free to argue to the jury that the statements should be given less weight because they occurred before several of the wire fraud counts.

### III.  The Probative Value of Statements to Harris Outweigh Any Prejudicial Effect

The defendant argues that the Court should exclude this evidence under Fed. R. Evid. 403. (Def's Memo p. 6-7). This argument is meritless. As set forth in the relevance section above (Section II), statements that other users were stealing and uncapping, even if those users are not the users named in the specific wire fraud charges, are highly probative to establishing Harris's knowledge and intent. Any prejudicial effect is far outweighed by the highly probative value of these statements.

### IV.  Statements to Harris Made by Phillips, Lindquist, Mr. T, and MooreR Fall Within the Co-Conspirator Exception and Are Not Hearsay

As set forth in the Government's Memorandum of Law In Support of Its Motions in Limine, the government intends to introduce statements made to Harris by Phillips, Lindquist, Mr. T, and MooreR. (Because we believe that the excerpts with Killswitch, X-Factor, and Shagy are admissible under different hearsay exceptions, we do not address them in this section. Nevertheless, if the Court disagrees with that analysis, we intend to establish that X-Factor is a co-conspirator, as described in more detail below). The defendant argues that the government cannot establish that the proffered statements were made during and in furtherance of a conspiracy. He argues that the conspiracy is too "nebulous" and that "apart from the content of the chats," there is no evidence of a conspiracy or that the statements were made in furtherance. He also complains that the

4

declarants are unidentified, that Harris never met them in person or knew their true identities.

These arguments lack merit.  As to establishing the existence of a conspiracy between the declarants and Harris, as set forth in the Government's Memorandum in Support of its Motions in Limine, there is ample evidence that Phillips (who was the Vice President and helped on the business side of the cable modem hacking operation) and Lindquist (who was the primary software developer for Harris's cable modem hacking products) were co-conspirators.  Likewise, there is sufficient evidence that Mr. T (who acted as a sales broker for Harris and to whom Harris gave "member" access) and MooreR (who helped Harris develop the packet sniffer and MAC changer code for Harris to incorporate into his cable modem hacking products), were co-conspirators.  Whether, at trial, the government ultimately proves a single hub-and-spokes conspiracy or multiple conspiracies between Harris and his cadre of insiders and quasi-insiders and their customers, either theory supports the admission of these co-conspirator statements.

The government is not relying "exclusively on" the declarants' statements to prove that they were co-conspirators; rather, the government intends to introduce "some extrinsic proof" to establish the conspiracy. United States v. Sepulveda, 15 F.3d 1161, 1182 (1st Cir. 1993).  For example, as to Phillips and Lindquist, the government intends to introduce their own testimony about their roles.  As to MooreR and Mr. T, the government intends to introduce Harris's statements to establish their roles. The government is not relying on Mr. T's and MooreR's portions of the chats; rather, it is relying on Harris's portions of the back-and-forth chat, where Harris himself discusses their roles as broker and coder, respectively, as "some extrinsic proof" of his conspiracy

with them.  As to X-Factor, in the event that the government ultimately needs to rely on the co-conspirator exception (rather than the adoptive admission exception) to get his statement admitted into evidence, Phillips will testify that X-Factor is a man named Paul Clark, who was the initial developer of TCNiSO's website and remained part of the company until at least 2005, when he attempted to negotiate a buy-out with Harris.

The defendant cites no authority for his contention that the government must prove that Harris met his co-conspirators in person or knew their actual identities.  Indeed, the law makes clear that co-conspirators do not need to meet, communicate with, or even know the name of, one another.  First Cir. Pattern Jury Instr. (Criminal) 4.03 (1998) (the government need not prove that the defendant "knew every other co-conspirator").  See also United States v. Mena-Robles, 4 F.3d 1026, 1033 (1st Cir. 1993).

The defendant argues that there is no "independent evidence, apart from the content of these conversations that these conversations were made in furtherance of a different conspiracy."  (Def's memo, p. 5).  This misstates the law.  The requirement to provide "some extrinsic proof" relates only to establishing the existence of the conspiracy.  It does not apply to establishing the "during" or "in furtherance of" prongs of the co-conspirator exception.  United States v. Aviles-Colon, 536 F.3d 1, 13 n. 10 (1st Cir. 2008) (holding that "we need not rely on extrinsic evidence when considering whether the government has met its burden of establishing that a statement was made during and in furtherance of the conspiracy. . . .  only the "first half of this two-part requirement demands the introduction of extrinsic evidence") (quotations omitted).

The defendant, restating many of its relevance arguments, also contends that the statements were not "in furtherance" of the conspiracy because they are not about the

named Massachusetts users, they are not about stealing or uncapping, and they occurred too early in time. The first and last arguments are addressed above in the relevance section. As to the second, as described below, many of the offered statements are, either directly or indirectly, about stealing service and uncapping.

Ultimately, the government will prove that each of the offered statements was made "in furtherance" of the conspiracy. In the Government's Memorandum of Law in Support of Its Motions in Limine, the government quotes each of the co-conspirator statements and discusses how it is in furtherance of the conspiracy. (Government's Memorandum pp. 6-21).

It bears noting that, even if these statements were not admissible for their truth as co-conspirator statements, they would nevertheless be admissible to show that the statements were made, that Harris heard (or read, in this case) them, and in turn to show their effect on the listener/reader. As discussed in the Government's Memorandum In Support of Its Motions In Limine, in each instance, the fact that Harris read these statements bears on his level of knowledge and his intent. To the extent that Harris's defense is, in part, that he did not know how other people were using his products, the fact that other people are at least saying that they are stealing service and uncapping is relevant to rebut this defense.

**V.   Chats Between Hanshaw and Source (Exhibits 11, 12)**

The only purpose for which the government intends to offer these exhibits is to establish, along with Hanshaw's testimony, that Hanshaw engaged in two interstate wire communications in January and December 2007. The government does not seek to introduce either exhibit for the truth of the statements in the chat log. In light of the

defendant's objection, the government has proposed a stipulation that would eliminate altogether the need to offer these exhibits.

### VI.     The Chat Logs Can Be Authenticated By Phillips and Lindquist

The defendant argues that the chat logs cannot be properly authenticated under Fed. R. Evid. 901.  This argument fails as well.  Phillips will testify that he made copies of the chat logs that Harris and he saved to their computer and that he provided a copy of these logs to FBI Agent Timothy Russell.  If needed, SA Russell will testify that the chat logs are true and correct copies of the logs that he received from Phillips.

The defendant suggests that this is insufficient because the logs "might" have been altered, although he has no factual support for this suggestion.  As with paper documents, the mere possibility of alteration is not sufficient to exclude electronic evidence.  Absent specific evidence of alteration, such possibilities go only to the evidence's weight, not its admissibility.  See United States v. Whitaker, 127 F.3d 595, 602 (7th Cir. 1997) (declining to reverse trial judge's admission of computer records based on speculation that co-defendant may have altered the records).  The District Court for the District of Columbia discussed this issue in the context of e-mail in United States v. Safavian, 435 F.Supp.2d 36, 41 (D.D.C. 2006):

> The *possibility* of alteration does not and cannot be the basis for excluding e-mails as unidentified or unauthenticated as a matter of course, any more than it can be the rationale for excluding paper documents (and copies of those documents). We live in an age of technology and computer use where e-mail communication now is a normal and frequent fact for the majority of this nation's population, and is of particular importance in the professional world. The defendant is free to raise this issue with the jury and put on evidence that e-mails are capable of being altered before they are passed on. Absent specific evidence showing alteration, however, the Court will not exclude any embedded e-mails because of the mere possibility that it can be done.

Id.

In any case, Phillips can testify that the logs of the chats that he had with Harris are unaltered, and Lindquist can do the same for her chats.

### VII.     Conclusion

For these reasons, the Court should deny Defendant's Motion in Limine re: Chat Logs.

> Respectfully submitted,
>
> CARMEN M. ORTIZ
> United States Attorney
>
> By:     */s/ Adam Bookbinder*
> Adam J. Bookbinder
> Assistant U.S. Attorney
> Mona Sedky
> DOJ Trial Attorney

### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

> */s/ Adam Bookbinder*

Dated: February 5, 2012