UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.  09-10243-MLW |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN HARRIS, | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE re: TESTIMONY**

The government asks the Court to deny the defendant's Motion in Limine re: Testimony Proposed in Government's Trial Brief because the testimony he seeks to exclude is relevant and admissible.

    **A.**    **Craig Phillips's Testimony**

        1.    *Harris's personal use of TCNiSO products*

The defendant asks the Court to exclude Craig Phillips's testimony that he used, and that he saw Harris use, TCNiSO's products to obtain free, uncapped internet access.  He asserts that this is "propensity" evidence that the Court should exclude under Fed. R. Evid. 404(b).  The defendant's argument fails, first because this testimony does not fall within the scope of Rule 404(b), and second, because, even if it did, it would be admissible under this rule.

"Federal Rule of Evidence 404(b) prohibits the admission of prior bad acts to establish an individual's character or propensity to commit a crime."  United States v. Landry, 631 F.3d 597, 601 (1st Cir. 2011).  Phillips's testimony about Harris's personal use of TCNiSO's products does not fall within this rule because it is not evidence of "prior bad acts."  Rather, this testimony is direct evidence of the conspiracy and fraud scheme charged in the superseding indictment.  The superseding indictment charges Harris with developing and selling products and services to help

users obtain internet service without paying. Superseding Indictment ¶1. Testimony that Harris was not just the developer and seller but also one of the thousands of users of these products is directly relevant to the charges in the indictment and therefore does not fall within Fed R. 404(b).

Additionally, "Rule 404(b) does permit . . . the admission of prior bad acts 'for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" Landry, 631 F.3d at 601(quoting Fed. R. Evid. 404(b)). Thus, even if the Court were to conclude that this testimony described prior bad acts, it would be admissible as the most relevant possible evidence of Harris's knowledge that his products were being used to steal service and uncap.

The defendant also argues that Phillips's testimony that Harris used his free, uncapped internet access to download music and movies "more quickly (and, impliedly, illegally) would serve only to show propensity." (Def. Motion at 2). This argument fails for two reasons. First, there is no implication that Harris's movie and music downloading was illegal; there are many ways to legally download movies and music. Second, this testimony is relevant to both knowledge and motive – the motive that Harris, as a user, had for wanting uncapped (fast) internet access, and his knowledge that this was a use of his products.

    2.    *Operation of TCNiSO*

The defendant asks the Court to exclude Phillips's testimony about the day-to-day operations of TCNiSO and about its products. He claims that this testimony is irrelevant because Phillips left TCNiSO in 2007, before three of the four Massachusetts users named in the indictment obtained their TCNiSO products. The superseding indictment, however, charges Harris with participating in a conspiracy that ranged from 2003-2009. The wire fraud counts charge Harris with committing wire

fraud with Hanshaw in 2005 and then again in 2007 and with Genao, Madeira, and Larosa in 2008-09. Evidence about the company's operations and its products during the time Phillips was involved (from approximately 2002 to 2007) clearly falls within the time frame and scope of the conspiracy and fraud scheme charged in the superseding indictment.

The defendant also questions whether Phillips has the "background necessary to explain TCNiSO products or how or why they were updated." (D. Memo at 3). But Phillips was vice president of the company and was a user of these products. On both grounds, he is qualified to testify about the company's software and hardware.

Finally, the defendant asserts that Phillips's testimony that Harris discussed his intent to get rich from TCNiSO is irrelevant and should be excluded under Rule 403. This testimony is relevant, however, to show Harris's motive to develop commercially-viable products that he could sell in large quantities, as he ultimately did. This financial motive is, in turn, relevant to show his participation in a scheme and conspiracy with the users. Direct Sales Co. v. United States, 319 U.S. 703, 713 (1943) (defendant's "stake in the venture" is relevant to whether he participated in buyer-seller conspiracy).

       3.    *Phillips's Testimony about his intent and his communications with Harris*

The defendant asks the Court to preclude Phillips from testifying that he knew that TCNiSO's products were designed to help users obtain free and uncapped internet access and that he intended to aid in this effort. But this testimony is relevant and admissible on several grounds. First, Phillips is identified in the indictment as a co-conspirator, and his knowledge and intent are therefore relevant to show that Harris agreed with at least one other person to commit the crime of wire fraud. And second, the government must establish that Phillips was a co-conspirator in order

3

for some of his chat log statements to be admissible under the co-conspirator exception to the hearsay rule. United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980), United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977).

To the extent that the defendant also expresses concern that the government will ask Phillips to testify about "Harris's feelings," that concern is misplaced, as the government will not do so. The government does, however, intend to ask Phillips about conversations he had with Harris in which Harris expressed his fear of getting caught and his dislike of the cable companies and about actions he observed Harris take, or that Harris asked Phillips to take, to hide Harris's involvement in the business. This evidence is admissible to show motive, knowledge, and intent.

### B.    Isabella Lindquist's Testimony

The defendant makes the same objections to Lindquist's testimony about TCNiSO's operations that he makes to Phillips's testimony on this subject. But as is discussed above, this testimony is relevant and admissible. To these objections, he adds the fact that Lindquist never met Harris in person. While true, this fact is irrelevant to the admissibility of testimony by the primary software developer for this internet-based company about the products she designed, her communications with Harris and the other co-conspirators, and her experience working remotely for this company.

### C.    Massachusetts Users

The defendant objects to any testimony by the Massachusetts users about the TCNiSO forums. What the government intends to elicit from these witnesses is that they used the forums to obtain MAC addresses and configuration files that they used, in conjunction with the TCNiSO products, to obtain free, uncapped internet access. This testimony is relevant to prove specific

allegations in the indictment and is therefore admissible.  (Indictment ¶¶ 37, 45, 50, 54).

### D. Motorola and Charter Employees

The defendant objects to Motorola employee Christopher Kohler testifying that he received numerous complaints from ISPs about TCNiSO's products and Charter Communications employee Benjamin Brodfuehrer testifying about the financial injury TCNiSO's products caused to Charter.  In light of these objections, the government will not elicit this testimony.

### E. Law Enforcement Agents

The defendant notes here that he has objected to the introduction of the forum posts and testimony about them.  The government is responding to this objection in its Opposition to Defendant's Motion in Limine re Posts.

He also objects to IRS Special Agent Jason Ryan's testimony about how much revenue TCNiSO generated and how much of that revenue went to Harris, Phillips and Lindquist.  As the cases about buyer-seller conspiracies note, however, testimony about sales volume, profitability, and other market conditions is relevant to the inquiry into whether the seller participated in a conspiracy with the buyers.  See Direct Sales Co., 319 U.S. at 713 (defendant's "stake in the venture" is relevant to whether he participated in buyer-seller conspiracy); United States v. Chamley, 376 F.2d 57, 60 (7th Cir. 1967) (defendant's "financial interest in the sales consummated" helped support the inference that he had participated in the charged conspiracy).  In this case, the evidence Harris had more than 10,000 customers and generated more than $1 million in revenue over the course of six years is inconsistent with any argument that Harris intended to sell his products as diagnostic or educational tools.  Furthermore, the fact that Harris kept far more money for himself than he paid to either Phillips or Lindquist is relevant to establish his control over the company and its products

and services.

    **E.    Conclusion**

For these reasons, the court should deny the defendants Motion in Limine re Testimony.

                      Respectfully submitted,

                      CARMEN M. ORTIZ
                      Acting United States Attorney

By:    */s/ Adam Bookbinder*
                      Adam J. Bookbinder
                      Assistant U.S. Attorney
                      Mona Sedky
                      Department of Justice Trial Attorney

                      CERTIFICATE OF SERVICE

    I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                      */s/ Adam J. Bookbinder*

Dated: February 5, 2012