UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 09-10243-MLW |
| | ) | |
| | ) | |
| RYAN HARRIS | ) | |

**DEFENDANT'S OPPOSITION TO**
**GOVERNMENT'S MOTIONS IN LIMINE**

Defendant Ryan Harris respectfully submits this Opposition to the Government's

Memorandum in Support of Motions in Limine.[1]

The government states that it "intends to offer approximately 25 excerpts of 'chat logs,'

or transcripts of online chats between Harris and another declarant." But it adds that it "do[es]

not address excerpts that contain only his statements (along with a merely incidental response by

the declarant)." Government's Memorandum in Support of Motions in Limine at 4-5. Instead it

addresses "only the chat excerpts containing substantive statements by other declarants." Id.

Thus, defendant is at a disadvantage here, and in this Opposition can only address the statements

identified in the motion in limine.

Two additional observations seem appropriate:

---

[1] In this opposition, Harris limits himself solely to discussion of the excerpts that the government included in its motion in limine. Harris continues to object to all of the exhibits highlighted in his motions in limine. Additionally, where the government has indicated that it would be willing to redact the proffered exhibits to focus on relevant portions, Harris insists that they do so as irrelevant evidence is inadmissable and could only confuse the jury. Fed. R. Evid. 403. Harris has included an appendix to this opposition summarizing his objections to each statement offered by the government in its memorandum.

1.   The government continues to maintain that forum postings are not offered for their truth and that the other statements at issue need not be offered for their truth.[2]  If so, there is no evidentiary glue for their claim of a monolithic conspiracy and count 1 (conspiracy to commit wire fraud) of necessity collapses; and

2.   The government argues that "whether each user was a part of a separate conspiracy with Harris or each was part of a single hub-and-spokes conspiracy is of no moment in determining the statements' admissibility."  Gvt's Memorandum in Support of Motion in Limine at 3.[3]  This statement, offered to delay a pretrial <u>Petrozziello</u> ruling, gives Freudian voice to the larger point, that there was no unified conspiracy linking all end users.  The government has alleged a nebulous and all-consuming hub and spokes conspiracy, yet when it suits its purposes, it readily admits that it is possible that no such conspiracy existed.

From these two observations, one might reasonably infer the government's strategy here: the

government doubts the legal buoyancy of count 1, but hopes to defer the <u>Petrozziello</u> ruling so

that wide-ranging proof can be offered, in the nature of forum posts and anonymous chats, so as

---

[2] In its latest Memorandum, the government reasserts that the following third-party statements are not offered for their truth: posts about MAC/Configuration trading on the forums; user posts about how to avoid detection and blocking by cable companies; posts from users who state that they are planning to steal internet access or uncap or that they have successfully done so; a "private message" about dangers from uncapping; a "private message" about stealth mode; and Mr.T's statements about his criminal prosecution.  <u>See also</u> Pretrial Brief at 27 ("[T]hese posts are not being offered for the truth of the matters asserted and are therefore not hearsay . . . .").  Additionally, the government suggests that any of the statements discussed in its memorandum could be introduced as non-hearsay not offered for its truth because the statements are not assertions, are verbal acts, or are being introduced solely to show Harris's knowledge.  For example, the government states directly that it is not offering for the truth of the matter Lindquist's speculations that a certain shipping address might belong to law enforcement, that the TCNISO website might have been shut down because of a court order, or her laughter about a disclaimer.

[3] This statement is repeated in the just-filed Government's Opposition to Defendant's Motion in Limine re Chat Logs (Docket #104): "Whether, at trial, the government ultimately proves a single hub-and-spokes conspiracy or multiple conspiracies between Harris and his cadre of insiders and quasi-insiders and their customers, either theory supports the admission of these co-conspirator statements."

to salvage convictions on the substantive charges.  The government ignores <u>Pappathanasi</u> and its plain warning about the folly of attempting to cleanse a poisoned trial record.

### A.   Not Offered for the Truth

The major way in which the government attempts to avoid a <u>Petrozziello</u> ruling is by asserting that each statement discussed in its memorandum can be admitted as non-hearsay not offered for its truth.  None of these arguments succeed; the statements discussed in the government's memorandum are clearly hearsay that can only be admissible if they are found, after a <u>Petrozziello</u> ruling, to be co-conspirator statements under Rule 801(d)(2)(E).

### 1.   Offered for Context

The government assert that statements made by someone speaking to Harris can be introduced as non-hearsay because they are introduced to give context to Harris's statements, not for their truth.[4]

Statements admitted to provide context to other statements are only admissible if they are introduced strictly "for context and not for the truth of the matter asserted."  <u>United States v. Catano</u>, 65 F.3d 219, 225 (1st Cir. 1995).  A statement cannot be introduced to provide context if the content of that statement matters.  The First Circuit has explained: "Statements that provide 'context' only if they are true . . . are still considered hearsay."  <u>United States v. DeCologero</u>, 530 F.3d 36, 59 (1st Cir. 2008).  That is, if the jury cannot usefully apply a given statement to the facts without assuming that the statement is true, that statement is hearsay offered for the truth of

---

[4] Following the ordering used by the government in its memorandum, the government maintains that the statements made by Phillips in chat conversations III.D, III.F, III.G, and III.H with Harris are admissible to provide context.  Same for Lindquist's statements in chat conversations III.C abd III.E, Mr. T's statements in chat conversation IV.C, and MooreR's statements in chat conversations V.B and V.C.

the matter.[5]  In a case in which the government attempted to introduce recorded statements made

by an alleged co-conspirator (Lama) to an FBI agent, the D.C. Circuit explained:

> As to using the recordings to establish context, the Government seems to be
> saying that all out-of-court statements offered for context do not constitute
> hearsay.  However, that a statement provides context to other evidence does not
> mean that the statement is not hearsay.  All relevant evidence provides context to
> the events underlying the charged crime.  The question is whether the statement is
> offered for its truth.  Here, the Government introduced Lama's statement that
> Agent Bryant and Lama should refer to drugs as clothes as evidence of the fact
> that Lama used clothing terminology to refer to drugs in other conversations.  The
> statement is not probative of that fact unless the Government offered the statement
> for the truth of its content.  The jury, using the statement, could infer that Lama
> and his co-conspirators referred to drugs as clothes only from the fact that Lama
> and Bryant referred to drugs as clothes – that is, through the statement's content.
> The statement thus was hearsay, and its admission was erroneous.

United States v. Stover, 329 F.3d 859, 870 (D.C. Cir. 2003).

DeCologero and Stover highlight the curious position the government has taken in this

case.  The government must prove that Harris knew of and intended to conspire with or aid and

abet certain TCNISO product users to get free or enhanced internet access.  In order to do so, the

government offers statements made to Harris claiming or implying that the declarant, none of

whom are the charged users, had gotten free or faster internet access.  Yet, the government states,

it does not introduce these statements for their truth.  General relevance aside, if these statements,

not made by the charged users, are *not* true, and the declarants were *not* getting free or faster

---

[5] One way to test the government's assertion that the statements are not being offered for
the truth of the matter would be to consider whether the government would be attempting to
introduce those statements if their content was the opposite.  Would, for example, the
government be attempting to introduce a statement by Phillips that he would never try to get free
service, or a forum post discussing how a TCNISO modem makes regular, paid internet service
better because the user can enjoy the satisfaction of understanding how the modem actually
works.

internet access, these statements do not tend to show that Harris knew of and intended to help

discrete product users to achieve that goal, and are, therefore, being offered for their truth.

Further, statements admitted for context are typically allowed because they do not give

the jury any information that is not contained in statements that are otherwise admissible.  United

States v. Colon-Diaz, 521 F.3d 29, 38 (1st Cir. 2008) ("[N]othing in the [statements admitted for

context] exposed the jury to any information not already contained in the Otero statement which,

as determined above, was itself admissible under the coconspirator exception under Rule

801(d)(2)(E).").

As the government notes, its memorandum addresses excerpts in which someone other

than Harris made a substantive statement.  In these excerpts, Harris says very little (sometimes

nothing at all), and it is not the others' statements that give context to Harris, but Harris's

statements that contextualize broad pronouncements made by others.  Unlike in Colon-Diaz,

Harris's words alone would give the jury very little information; the bulk of the relevant

information is contained in the statements of others, most of whom will not testify.  Indeed, it is

interesting to read just Harris's portion of these conversations.  The government is, effectively,

attempting to introduce the hearsay statements of others through Harris's often non-committal

responses under the guise that while Harris's responses are introduced for the truth of the matter

asserted, the statements that prompted those responses are not.

2.    Offered to Show Knowledge of/Effect on Harris

A similar problem arises when one considers the government's assertion that some of the

statements are proffered to show Harris's knowledge that people were using TCNISO products to

get free or faster service and that legal problems could result.[6]  If those statements were not true,

then Harris could not have known that people were using TCNISO products to get free or faster

service.  Again, the government seeks to introduce these statements to prove that because these

anonymous declarants were getting free service, the named users were also getting free service,

and Harris knew and intended to help them do so.  Putting aside relevance arguments, this logic

only succeeds if you assume that the anonymous declarants were telling the truth and were

getting free or faster internet access as they claimed.  Additionally, if the anonymous forum

declarants were not telling the truth and did not get free internet access and did not have MAC

addresses to trade, the government' case crumbles.  If the forum content was largely braggadocio

or make-believe, it cannot possibly serve to link all users in a conspiracy to obtain free internet as

alleged.  Because all of the proffered statements are relevant *only if* they are true,[7] it is patent that

the statements are offered for their truth and that they must, therefore, be excluded as hearsay.

Additionally, even if some of these statements tend to show that Harris knew that

TCNISO products <u>could</u> be used to get free or faster internet service, that truth of that proposition

does not lie at the heart of this case.  Proof of that type of knowledge does not suffice to establish

Harris's complicity with the charged users.  Ample evidence, including Harris's book, will show

---

[6] In its memorandum, the government claims that the following statements could be
introduced as non-hearsay not offered for their truth because they show Harris's knowledge:
conversations III.B, III.C, and III.H with Phillips; conversations III.D, III.E, and III.G with
Lindquist; conversation IV.B with Mr. T; the "personal messages" discussed in VII; and the
forum posts discussed in VIII.

[7] As explained in his motions in limine, Harris continues to assert that these statements
are not relevant even assuming that they are true.  Proof that Harris knew that someone used his
products to get free or faster internet access does not tend to show that he knew that the users
named in the indictment intended to do so or that he intended to help those users in their efforts.

that Harris knew that TCNISO products could be used to obtain free or uncapped internet.  The

critical issue in this case is whether Harris had the requisite knowledge and intent to help a given

user get free internet from a given ISP.  Evidence that Harris knew something could happen is

not evidence that he knew that it would happen or, more, that he intended to help other people

make it happen.  See United States v. Pappathanasi, 383 F.Supp.2d 289, 291-92 (D. Mass. 2005)

["To prove this charge, the government must prove that a particular defendant had both an intent

to agree with specific Dunkin' Donuts franchisees and an intent to assist the franchisees' efforts to

defraud the Internal Revenue Service."] .  None of the proffered chat logs tend to show that

Harris knew any of the alleged users or knew what they were doing with TCNISO products, or

that he intended to assist their specific efforts.

　　　　3.　　　Verbal Acts

　　　　Since the date of its issuance, the Petrozziello decision has governed admissibility of co-

conspirator statements.  As the government would have it, this was all needless fuss on the part

of courts and counsel: none recognized that the doctrine of verbal act made this all pointless, that

statements made by co-conspirators are simply "verbal acts."

　　　　Of course, this is preposterous, as DeCologero (530 F.3d at 38) makes clear, and even the

cases cited by the government do not so hold.  Instead, these cases were simply applying the

basic evidence rule that statements that are not admitted for their truth are not hearsay and do not

need to fit a hearsay exception to be admissible.  See United States v. Faulkner, 439 F.3d 1221,

1225-27 (10th Cir. 2006); United States v Bellomo, 176F.3d 580, 586-87 (2nd Cir. 1999); see

also United States v. Murphy, 193 F.3d 1, 4-5 (1st Cir. 1999) ('In this circuit, a predicate to the

admission of hearsay evidence under the co-conspirator exception is a finding by the district

judge that a conspiracy existed of which the defendant was a member, and that the statement was made in furtherance of that conspiracy." (emphasis added) (citing <u>Petrozziello</u>)).

However, as explained above, it is clear that the government is introducing each of the statements discussed in its memorandum for their truth.  If the statements were not true, they would not support the government's case, and the government seeks to admit them because if they are true, they tend to support its theory.  Additionally, the government has remained entirely elusive about <u>which</u> specific conspiracy a statement furthered (e.g., saying , "whether each user was a part of a separate conspiracy with Harris or each was part of a single hub-and-spokes conspiracy is of no moment in determining the statements' admissibility"), so it is difficult to take seriously the claim that a particular statement is the verbal act of the charged conspiracy.

None of the statements that the government highlights as verbal acts are admissible under that theory.[8]  Verbal acts "'are limited to statements that have independent legal significance, such as contractual offers or inter vivos gifts.'"  <u>DeCologero</u>, 530 F.3d at 59 (quoting <u>Stover</u>, 329 F.3d at 870).  Examples of verbal acts include "the 'I accept' that shows that an agreement has been formed," <u>Murphy</u>, 193 F.3d at 5, and "the utterances involved in making a contract, to which the law attaches independent significance."  <u>United States v. Guerrero</u>, 114 F.3d 332, 340 (1st Cir. 1997) (internal quotations omitted).  A verbal act is language that creates a legal duty or obligation that is introduced solely to prove the existence of that legal duty.  For example, if a disputed issue in a case was whether two individuals had a contract, a conversation in which the

---

[8] In its memorandum, the government claims that the following statements could be introduced as verbal acts: conversations III.D and III.F with Phillips; conversation III.C with Lindquist; conversation IV.B with Mr. T; the "personal messages" discussed in VII; and the forum posts discussed in VIII.

contract was formed, could be introduced to show its existence.  The conversation about contract formation could not, however, be introduced for any other purpose.  Another example is a wedding vow.  The fact that the phrase "I promise to love and serve you for all my years" was uttered could be admitted to show that two parties had gotten married, but it could not be introduced to show that when the woman said it she was telling the truth and intended to love her husband forever.

None of the statements proffered by the government are admissible as verbal acts.  None carried legal significance; none involved contract formation; and none could have formed the basis for one conversant enforcing a legal duty against the other.  None is being offered to show the existence of a legal duty or obligation.  It is entirely irrelevant to the case at hand whether any of these declarants formed contracts or other enforceable agreements with Harris.  Instead, as with all of its other arguments that these statements are not hearsay, the government is attempting to avoid the inevitable conclusion that it wishes to introduce each of the proffered statements for the truth of the matter and that a <u>Petrozziello</u> ruling is required.

4.  <u>Rules 403 and 404</u>

The government neglects to explain how its evidentiary offerings satisfy Rules 403 and 404.

For example, the government proposes to introduce statements about Phillips's use of a stolen MAC address (Ex. 5, p. 1), Phillips's use of an uncapped modem for higher speed (Ex. 5, p. 5), Harris's request for information about Phillips's modem (Ex. 5, p.6), Phillips's inability to get on line and Harris's attempt to help (Ex. 5, p. 16).  All relate to possible bad acts of Phillips either with Harris's knowledge or assistance.  Each is barred under Rules 403 and 404(b), as

9

prejudicial and not probative, as jurors may infer that Harris may help users as he may have

helped Phillips.  This is the impermissible inference under United States v. Varoudakis, 233 F.3d

113, 120 (1st Cir. 2000).  In Varoudakis, the First Circuit held that evidence that the defendant

had committed a prior arson was inadmissable because it was offered to show propensity–that

because the defendant had committed a prior arson because of financial difficulties, it was "more

likely that he committed the [charged] arson in response to financial stress."  Id.

The government similarly seeks to introduce statements of Isabella Lindquist, actually

soliloquies of Ms. Lindquist, where she blathers about how getting "banned" is "good publicity"

(banned by whom, one might ask), or about a "disclaimer" about not using a device for

"malicious purpose, hehehehehe."  In neither instance does Harris reply, prompting the

government to argue in the latter instance that his non-response is an adoptive admission,

presumably under Rule 801(d)(2)(B), although silence is not meaningful unless "the nature of the

statement is such that it normally would induce the party to respond."  The government has cited

no cases or authority that makes silence during a chat legally meaningful.

The government also seeks to introduce chat conversations between Nathan Hanshaw and

an FBI source that occurred during the investigation of Hanshaw.  Harris objects to the

introduction of these conversations as there is no evidence that either of these individuals,

particularly the unknown FBI source, participated in a conspiracy with Harris, and these are

inadmissible under Rules 403 and 404.

Additionally, statements from unidentified persons ("Mr. T", "MooreR," and "X-Factor")

are similarly excludable.  There is no evidence outside of the content of the chat conversations

that these unidentified individuals participated in a conspiracy with Harris and other users to

obtain free internet, and their chats too are excludable under Rules 403 and 404.

### B.     Co-Conspirator Hearsay

The government argues that certain statements meet the requirements for co-conspirator

hearsay under Rule 801(d)(2)(E).

Rule 801(d)(2)(E) is a narrow exception that has been criticized by courts, including the

First Circuit.  United States v. Goldberg, 105 F.3d 770, 775 (1st Cir. 1997) ("Frankly, the

underlying co-conspirator exception to the hearsay rule makes little sense as a matter of evidence

policy.  No special guarantee of reliability attends such statements, save to the extent that they

resemble declarations against interest.  The exception derives from agency law, an analogy that is

useful in some contexts but (as the Advisory Committee noted) is 'at best a fiction' here.  The

most that can be said is that the co-conspirator exception to hearsay is of long standing and

makes a difficult-to-detect crime easier to prove.").  "To invoke the exception, a party who wants

to introduce a particular statement must show by a preponderance of the evidence that a

conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered

the statement during and in furtherance of the conspiracy."  United States v. Sepulveda, 15 F.3d

1161, 1180 (1st Cir. 1993); United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977).  "The

contents of the statement shall be considered but are not alone sufficient to establish . . . the

existence of the conspiracy and the participation therein of the declarant and the party against

whom the statement is offered . . . ."  Fed. R. Evid. 801(d)(2)(E).

Rule 803(d)(2)(E) permits the trial judge to determine, before trial, whether or not a

conspiracy existed.  See Giles v. California, 554 U.S. 353, 374 (2008) ("A judge may determine

the existence of a conspiracy in order to make incriminating statements of co-conspirators admissible against the defendant under Federal Rule of Evidence 801(d)(2)(E).").  The government urges this Court to conserve judicial resources by waiting until the close of the evidence to make a Petrozziello ruling.  However, deferring this ruling could result in an unnecessary trial, which would certainly not be in the interest of judicial economy.

A significant problem is that the government declines to state which conspiracy the particular statement serves.  Is it the broad-ranging conspiracy count purporting to link Harris with the universe of end-users?[9]  Or is it the lesser conspiracy with particular end-user?  The government deflects the inquiry, repeatedly stating that "[w]hether, at trial, the government ultimately proves a single hub-and-spokes conspiracy or multiple conspiracies between Harris and his cadre of insiders and quasi-insiders and their customers, either theory supports the admission of these co-conspirator statements." See, e.g., Gvt's Opposition to Defendant's Motion in Limine re Chat Logs, at 5.

Yet the government offers chats and posts, purporting to link the alleged customer conduct into a single rimmed hub-and-spoke conspiracy.  These materials must be evaluated in the context of that conspiracy, as they are inadmissible as to any lesser conspiracy.  Certainly, chats and posts not demonstrably connected to the charged users' purchases are inadmissible on any alleged conspiracy with them.  As this Court recognized in Pappathanasi, the government's charging decisions dictate the evidentiary rulings the Court must make, and where, as here, the

---

[9] Under the government's theory, Harris is liable for the unlawful conduct of all end-users, presumably forever.

government intends to prove a specific conspiracy with the hearsay statements of others,

Petrozziello and relevance determinations are necessary.  Pappathanasi, 383 F.Supp.2d at 297.

   With respect to hearsay statements made by individuals who will not testify at trial, Mr.

T., Killswitch, Xfactor, Shagy, MooreR, the individuals who allegedly sent Harris private

messages,[10] and the individuals who posted on the forums, the government has not introduced

any evidence, apart from the statements of these individuals, to show that these individuals were

in a conspiracy with Harris.  In fact, the government does not even know who these individuals

are.  The government's memorandum asserts that it does not have to prove or provide the names

of these declarants because a conspirator does not need to know all of his or her co-conspirators.

This argument misses the point.  Harris does not argue that a conspirator must know the name of

every co-conspirator, but that the government must prove to this Court that each declarant was

part of a conspiracy with Harris.  The government cannot prove that anonymous, unknown

individuals were part of a conspiracy with Harris such that their statements should be accepted as

reliable evidence.  The government has not cited any cases in which a court found that a

statement by an anonymous or unknown individual was admissible as a co-conspirator statement.

   The First Circuit considered an analogous situation in United States v. Sepulveda, 15

F.3d 1161, 1181-82.  In Sepulveda, a case involving cocaine distribution, the Court considered

the admissibility of two statements as co-conspirator hearsay.  Id.  One of the statements was

---

   [10] These messages, discussed in section VII of the government's memorandum, are some of the new exhibits that the government sent to counsel on February 2, 2012.  The government has not yet told counsel the source of these messages, how they were sent, whether it knows/believes that Harris read these messages, what other messages were present, or whether Harris responded.  Counsel lacks adequate information to make further contest of the admissibility of these statements.

testimony from a police officer that when he answered the phone at the defendant's apartment

and pretended to be a resident of the apartment, the caller asked if he had "pick[ed] up the stuff."

Id at 1181.  The second statement was an individual who testified that he sometimes drove

people to the defendant's house and that those individuals told him they were going to the

defendant's house because "they wanted to buy some drugs."  Id.  The court held that "because

the government developed no independent evidence of who [the caller] or [passengers] might

have been, or what their status might have bene vis-a-vis the charged conspiracy, the statements

were improperly admitted under the coconspirator exception to the hearsay rule."  Id. at 1182.

Perhaps the government does not need to prove that one conspirator knows the names of all other

conspirators, but it certainly needs to present this Court with evidence apart from the proffered

statements of who the declarants were and how they were involved in a conspiracy with Harris.

The government suggests in its memorandum that it will use Harris's own side of the

conversation to prove that the individuals who had chat conversations with Harris were part of a

conspiracy with him.  Even assuming that one side of a conversation constitutes evidence

independent of the other side of the conversation, Harris's comments to these individuals do not

establish that he was in a conspiracy with them.  Instead, a review of these conversations reveals

that Harris spoke very little in chat conversations.  Reading solely Harris's side of the

conversation does not, in any instance, provide proof that the chat participant was in a conspiracy

with Harris.

Nor has the government sufficiently shown that any of the proffered statements were

made during and in furtherance of the conspiracy.  In its memorandum, the government asserts

that the statements were made in furtherance of the conspiracy, but it does so without confronting

one of the major flaws in its case.  The charged conspiracy is nebulous, it seems to encompass

anyone who gets free or enhanced internet at any time and in any place so long as Harris's name

can somehow be mentioned.  However, none of the proffered statements are not about or by the

users named in the indictment, they are not about helping these users to get free or faster internet,

and the proffered statements were made years before any of the named users purchased anything

from TCNISO.  The memorandum discusses one forum post from 2007, but the rest of the

statements are from 2005.  The private messages are not dated.  Nor is there any independent

evidence, apart from the content of these conversations, that these conversations were made in

furtherance of a conspiracy.  See Fed. R. Evid. 801(d)(2)(E) (requiring evidence of a conspiracy

apart from the proffered statement).

 The government simply has not offered a clear statement of what conspiracy existed

between Harris and the declarants, most of whom are anonymous and will remain so.  It has not

explained whether they were part of the charged conspiracy or some other conspiracy.  It has not

stated whether the conspiracy was one to get free internet, faster internet, or anonymity.  This

lack of definition raises the problem of offense continuity:  "A conspiracy does not continue

indefinitely simply because the fruits of the conspiratorial objective continue into the future."

United States v. Colon-Munoz, 192 F.3d 210, 228 (1st Cir. 1999).  The government has

combined sale and use in its conspiracy charge, and it conflates them again here.  Knowing the

scope of the alleged conspiracy between the declarants and Harris is vital to determining whether

each proffered statement was made in furtherance of the conspiracy.  Yet the government has not

even provided a sense of when the posts were written with relation to any purchase made by the

posters from TCNISO.  In fact, the government has stated that it does not matter what the

conspiracy between Harris and the declarants looked like, stating: "whether each user was a part

of a separate conspiracy with Harris or each was a part of a single hub-and-spokes conspiracy is

of no moment in determining the statements' admissibility."  Gvt's Memorandum at 3.  Not only

is the scope of the conspiracy critical to determining the admissibility of these statements,

whether multiple, discrete buyer-seller relationships can be linked into a single mega-conspiracy

is the determinative issue of Count 1.

### C.  Heeding the Lessons of Pappathanasi

The superseding indictment alleges that Harris "enabled" by the sale and distribution of

products several possible uses by end-users, including (a) theft of service, (b) an increased level

of service, and ( c) anonymity.[11]  One pauses on the word "enabled": is "enabling" or making

possible a crime itself  a crime?  The choice of words in an indictment matters.  In Pappathanasi:

> the original indictment ... alleged that West Lynn Creamery had a sham rebate program
> that Dunkin' Donuts franchisees 'could' use to evade taxes. After the November 2004

---

[11]The indictment alleges that the modems and software sold by Harris's company "enabled" users to do different things, specifically:  1. "enabled computer users to obtain internet service without making the required payment; 2. "enabled users to obtain faster, upgraded (or "uncapped") internet service without paying the premiums charged by the ISP. 3. "enabled users to use, without authorization, configuration files that the ISP would otherwise only provide to a legitimate subscriber paying for premium access. The user therefore received the type of faster internet service for which a legitimate user was paying a premium."  4. "enabled users to disguise their cable modem by mimicking, or "cloning," the unique identifiers, including the MAC address, of the modem of a legitimate, paying internet subscriber. The user thereby received internet service without paying for it."  5. "enabled users to disguise their true online identities, which in turn allowed them to remain anonymous when engaged in online activities such as downloading infringing or pirated movies onto their computers."  As defendant has argued elsewhere, several are plainly legal uses.  Among these possible uses, "enabling" a person to disguise their identity to an internet service provider does not constitute fraud. See United States v. Drew, 259 F.R.D. 449, 466-67 (C.D. Cal. 2009) (holding that intentional violation of MySpace's terms of service – by misrepresenting the identity of the user – could not form basis for conviction under 18 U.S.C. § 1030(a)(2)( c).  Similarly, obtaining faster service, consistent with promised terms of service with the ISP, is not illegal.

> hearings on the motion to dismiss, the government realized that it would be insufficient to prove only that the defendants knew that the rebate program "could" be used by Dunkin' Donuts franchisees to evade taxes, rather than that it "would" be used to evade taxes. See Goldberg, 105 F.3d at 774. Therefore, the government obtained the Superseding Indictment that substituted the word "would" for the word "could" in paragraph 9. Nevertheless, the original misconception regarding what is required to prove a Klein conspiracy may have contributed to the government's problems in this trial.

Id. at 292.  Just as the government's "misconception" in Pappathanasi contributed to its

evidentiary difficulties, so does the government's misconception here that "enabling" conduct by

third parties can support a prosecution.  The fallout from the government's "misconception" in

Pappathanasi is instructive:

> Because a single conspiracy was alleged, the court allowed testimony from about five groups of Dunkin' Donut franchisees. The evidence is insufficient, however, to establish a single conspiracy under Kotteakos and its progeny. Rather, the evidence, at best, relates to a possible hub, WLC, with independent spokes, each of the Dunkin' Donuts franchisees who evaded taxes. This would be, at best, multiple conspiracies, the hub and spoke without the rim....

> If Pappathanasi had been charged only with conspiring with Foundas, the court would not have permitted any evidence by the other Dunkin' Donuts franchisees. The issue would have required a Federal Rules of Evidence 404(b) and 403 analysis. The testimony of the other franchisees who did not claim to have had any conversations about the rebate program with Pappathanasi would not have been relevant to his intent, because he did not discuss rebates or taxes with them. If the court had been persuaded that there was some special probative value that would permit the admission of their testimony under Rule 404 (b), it would have found Rule 403 to have operated to exclude this evidence because the risk of unfair prejudice to both Pappathanasi and Scangas would have substantially outweighed its probative value.

Id. at 296-97.

As the government races headlong here to introduce bad acts of co-conspirators, forum

posts by unknown persons, and the like, mostly for "context" and as "verbal acts," and as it

declines to say what conspiracy each statement might further, and ignores obvious Rule 403 and

404(b) concerns, Pappathanasi is warning aplenty where this all is headed.

## APPENDIX TO DEFENDANT'S OPPOSITION TO
## GOVERNMENT'S MOTIONS IN LIMINE

In this appendix, Harris follows the format used in the government's memorandum in support of its motions in limine and attempts to offer a summary of the government's theory of admissibility for each proffered statement as well as his grounds for objecting to those statements.  These arguments are described in detail in the accompanying memorandum.

### III.   PHILLIPS'S STATEMENTS IN CHATS WITH HARRIS

### B.      Ex. 5, p.1 [that Phillips himself used MAC address]

Government Theories of Admissibility: Co-Conspirator Hearsay Exception; Relevant to Show Knowledge (Not Truth).

Defense Objections: personal conduct by Phillips not during and in furtherance of a conspiracy, offered for the truth (thus, inadmissible), irrelevant, and violative of Rules 403 and 404.

### C.      Ex. 5, p.5 [that Phillips used an uncapped modem for higher speed service]

Government Theories of Admissibility: Co-Conspirator Hearsay Exception; Relevant to Show Knowledge (Not Truth).

Defense Objections: personal conduct by Phillips not during and in furtherance of a conspiracy, offered for the truth (thus, inadmissible), irrelevant, and violative of Rules 403 and 404.

### D.      Ex. 5, p.6 [Harris requesting information about Phillips's uncapped modem]

Government Theories of Admissibility: Admissible to Give Context (Not Truth); Admissible as Verbal Acts (Not Truth) Co-Conspirator Hearsay Exception.

Defense Objections: not during and in furtherance of a conspiracy, not a verbal act; not relevant; violative of Rules 403 and 404.

**E.      Ex. 5, p.7-8 [Purchase and sale price of TCNiSO modems]**

Government Theories of Admissibility: Co-Conspirator Hearsay Exception.

Defense Objections: <u>Petrozziello</u> Standard Not Met; Not Relevant; Rule 403.

**F.      Ex. 5, p.13 [Selling Sigma licenses]**

At issue: Phillips' statement that "they want to sell these to steal service we have to show them how to steal service too."   Government Theories of Admissibility: Question is not a Statement; Co-Conspirator Hearsay Exception; Admissible as Verbal Acts (Not Truth).

Defense Objections: <u>Petrozziello</u> Standard Not Met; Offered for Truth of the Matter; Statements Have no Independent Legal Significance and Are Not Verbal Acts; Not Relevant; Rule 403 and 404.

**G.      Ex. 5, p.14-15 [TCNiSO's Incorporation Papers]**

Government Theories of Admissibility: Co-Conspirator Hearsay Exception; Admissible to Give Context (Not Truth).

Defense Objections: <u>Petrozziello</u> Standard Not Met; Offered for Truth of the Matter; Not Relevant.

**H.      Ex. 5, p.16 [Phillips cannot get on-line; Harris activates user on forums]**

Government Theories of Admissibility: Co-Conspirator Hearsay Exception; Admissible to Show Knowledge (Not Truth); Admissible to Give Context (Not Truth).

Defense Objections: <u>Petrozziello</u> Standard Not Met; Offered for Truth of the Matter; Not Relevant; Conversation Difficult to Understand; Rules 403 and 404.

### III.     LINDQUIST'S STATEMENTS IN CHATS WITH HARRIS

### B.     Ex. 6, p.1 [Lindquist statement about getting banned]

Government Theories of Admissibility: Co-Conspirator Hearsay Exception.

Defense Objections: <u>Petrozziello</u> Standard Not Met; Not Relevant; Conversation Difficult

to Understand; Rule 403 and 404.

### C.     Ex. 6, p.1 [Lindquist declarations about incorporation and money]

Government Theories of Admissibility: Admissible to Give Context (Not Truth);

Admissible as Verbal Acts (Not Truth); Co-Conspirator Hearsay Exception.

Defense Objections: <u>Petrozziello</u> Standard Not Met; Offered for Truth of the Matter;

Statements Have no Independent Legal Significance and Are Not Verbal Acts; Not Relevant;

Conversation Difficult to Understand; Rule 403 and 404.

### D.     Ex. 6, p.3 [Lindquist declarations about investigations]

Government Theories of Admissibility: Co-Conspirator Hearsay Exception; Admissible

to Show Knowledge (Not Truth).

Defense Objections: <u>Petrozziello</u> Standard Not Met; Offered for Truth of the Matter; Not

Relevant; apparently a joke by Lindquist; Rule 403 and 404.

### E.     Ex. 6, p.5 [Lindquist declarations about website blocking]

Government Theories of Admissibility: Admissible to Give Context (Not Truth);

Admissible to Show Knowledge (Not Truth); Co-Conspirator Hearsay Exception.

Defense Objections: Offered for Truth of the Matter; <u>Petrozziello</u> Standard Not Met; Not

Relevant; Contains Prejudicial Information; Rules 403 and 404.

### G.     Ex. 6, p.6 [Lindquist declarations about laughable disclaimer]

Government Theories of Admissibility: Adoptive Admission (no caselaw support offered); Co-Conspirator Hearsay Exception; Admissible to Show Knowledge (Not Truth).

Defense Objections: Not a Conversation; No Evidence Harris Read; Petrozziello Standard Not Met; Offered for Truth of the Matter; Not Relevant; Subject of Statement Unknown; Rules 403 and 404.

## IV.     "MR. T's" DECLARATIONS IN CHATS WITH HARRIS

### A.     "Mr. T" Was Harris's Co-Conspirator

Government Theories of Admissibility: Harris's Portion of Conversation Shows Conspiratorial Relationship with "Mr. T."

Defense Objections: Petrozziello Standard Not Met; Harris's Portion of Conversation Does Not Provide Independent Evidence of Conspiracy and, When Read in Isolation is Not Evidence of Conspiratorial Relationship, Rules 403 and 404.

### B.     Ex. 17, p.1, 5 [Mr. T statements about his criminal prosecution]

Government Theories of Admissibility: Co-Conspirator Hearsay Exception; Admissible to Show Knowledge (Not Truth).

Defense Objections: Petrozziello Standard Not Met; Offered for Truth of the Matter; Not Relevant; Criminal Case Discussed was Canadian; Rules 403 and 404.

### C.     Ex. 17, p.4 [Mr. T declarations about product efficacy]

Government Theories of Admissibility: Admissible to Give Context (Not Truth); Co-Conspirator Hearsay Exception.

Defense Objections: Offered for Truth of the Matter; Petrozziello Standard Not Met;; Not Relevant; Subject of Statement Unknown; Rules 403 and 404.

### D.      Ex. 17, p.4-5 [Mr. T declarations about theft of service]

Government Theories of Admissibility: Question is Not a Statement; Adoptive

Admission; Co-Conspirator Hearsay Exception.

Defense Objections: Offered for Truth of the Matter; Single Word Response is Not

Adoption of Statement; Petrozziello Standard Not Met; Not Relevant; Rules 403 and 404.

## V.      MOORER DECLARATIONS IN CHATS WITH HARRIS

### A.      MooreR Was Harris's Co-Conspirator

Government Theories of Admissibility: Harris's Portion of Conversation Shows

Conspiratorial Relationship with "Mr. T."

Defense Objections: Petrozziello Standard Not Met; Harris's Portion of Conversation

Does Not Provide Independent Evidence of Conspiracy and, When Read in Isolation is Not

Evidence of Conspiratorial Relationship; Rules 403 and 404.

### B.      Ex. 21, p.1 [MooreR declarations about sniffer and MAC changer]

Government Theories of Admissibility: Admissible to Give Context (Not Truth); Co-

Conspirator Hearsay Exception.

Defense Objections: Offered for Truth of the Matter; Petrozziello Standard Not Met;; Not

Relevant; Rules 403 and 404.

### C.      Ex. 21, p.1 [MooreR declarations about sniffer and MAC changer]

Government Theories of Admissibility: Admissible to Give Context (Not Truth); Co-

Conspirator Hearsay Exception.

Defense Objections: Offered for Truth of the Matter; Petrozziello Standard Not Met;; Not

Relevant; Rules 403 and 404.

## VI.    X-FACTOR STATEMENTS IN CHATS WITH HARRIS

### A.    Ex. 19, p.2-3 [X-Factor description of Harris's hacking business]

Government Theories of Admissibility: Adoptive Admission; Co-Conspirator Hearsay

Exception.

Defense Objections: Offered for Truth of the Matter; Lack of Direct Response to Slight

Made During Argument is Not an Admission; Petrozziello Standard Not Met; Not Relevant;

Rules 403 and 404.

## VII.    PRIVATE MESSAGES FROM CUSTOMERS TO HARRIS

### A.    Ex. 28, p.1 [PM about dangers from uncapping]

Government Theories of Admissibility: Admissible to Show Knowledge (Not Truth).

Defense Objections: Offered for Truth of the Matter; Petrozziello Standard Not Met; Not

Relevant; Undated Communication; No Indication Harris Saw; Statements Regarding Dangers of

Uncapping in Foreign Country (Colombia); Rules 403 and 404.

### B.    Ex. 28, p.4 [PM about stealth mode]

Government Theories of Admissibility: Question Not a Statement; Admissible to Show

Knowledge (Not Truth).

Defense Objections: Offered for Truth of the Matter; Majority of Message is Statement;

Petrozziello Standard Not Met; Not Relevant; Undated Communication; No Indication Harris

Saw; Declarant's Message and Meaning Unclear; Rules 403 and 404.

## VIII.    FORUM POSTS BY PRODUCT PURCHASERS/MEMBERS

### A.    Ex. 22, p.7-12 [Posts about MAC/Config Trading]

Government Theories of Admissibility: Admissible as Verbal Acts (Not Truth); Admissible to Show Knowledge (Truth).

Defense Objections: Offered for Truth of the Matter; Statements Have no Independent Legal Significance and Are Not Verbal Acts; <u>Petrozziello</u> Standard Not Met; Not Relevant; Rules 403 and 404.

### B.    Ex. 23, p.4 [Posts about Blocking and Detection]

Government Theories of Admissibility: Admissible to Show Knowledge (Truth); Co-Conspirator Hearsay Exception.

Defense Objections: Offered for Truth of the Matter; <u>Petrozziello</u> Standard Not Met; Not Relevant; Rules 403 and 404.

### C.    Ex. 24, p.6, 11, 15, 19, 23 [Posts about Theft of Service and Uncapping]

Government Theories of Admissibility: Admissible to Show Knowledge (Truth); Co-Conspirator Hearsay Exception.

Defense Objections: Offered for Truth of the Matter; <u>Petrozziello</u> Standard Not Met; Not Relevant; Rules 403 and 404.

### IX.    TESTIMONY BY TCNISO INSIDERS

Government Theories of Admissibility: Co-Conspirator Hearsay Exception; Admissible to Show Knowledge (Not Truth).

Defense Objections: <u>Petrozziello</u> Standard Not Met; Offered for Truth of the Matter; Not Relevant; Rules 403 and 404.

RYAN HARRIS
By his attorney,

/s/ Charles P. McGinty

Charles P. McGinty
 B.B.O. #333480
Federal Defender Office
51 Sleeper Street
Boston, MA  02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 6, 2012.

/s/ Charles P. McGinty

Charles P. McGinty