UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 09-10243-MLW |
| | ) | |
| | ) | |
| RYAN HARRIS | ) | |

### DEFENDANT'S OBJECTIONS TO TESTIMONY
### BY S/A JASON RYAN AND TO EXHIBIT 25

Defendant, Ryan Harris, moves this Court, pursuant to F.R.E. 403, 901 and Rule 404(b), to exclude Exhibit 25 as well as any testimony from IRS Special Agent Jason Ryan regarding Harris's alleged personal profits from TCNISO or regarding his banking activity in Hong Kong.

In its trial brief, the government stated that SA Ryan would testify

> about TCNiSO's financial records. He will describe TCNiSO's gross revenues, the total number of purchasers, how much money Harris paid to Lindquist and Phillips, and how much Harris kept for his own personal use. SA Ryan will also testify about the types of customer information in TCNiSO's GoDaddy and PayPal records. He will testify that, for each purchase, these records reveal the date of purchase, and the name, screen name, and address of each purchaser.

Gvt Trial Brief, dkt. #77, at 12. The government further indicated that it would introduce GoDaddy records reflecting purchases by the named alleged users through SA Ryan. Id. The government sought a stipulation from Harris regarding the GoDaddy records (and defendant declined). Id. The government submitted Exhibit 25 as a summary chart regarding TCNISO finances that it would introduce through SA Ryan. Harris understood Exhibit 25 to set the parameters of Ryan's testimony. A copy of Exhibit 25 is attached.

Harris timely objected to Exhibit 25 as irrelevant and under Rule 403, and he renews this objection in this motion. He has already stipulated to the general scope of TCNISO's revenues;

any additional information about the number of users and about the "total retained by Harris for personal use (2005-2009)" is irrelevant and prejudicial.  Moreover, the government claims that the records associate purchaser names with screen names, which the defendant disputes.  Finally, the government resolved not to call a GoDaddy records keeper.

In addition, the government today informed counsel that it intends to elicit from SA Ryan testimony that Harris transferred money to and withdrew money from banks in Hong Kong.  The government asserts that these transactions are relevant to support the statement in Harris's book regarding his "clandestine" residence in Hong Kong.  Harris did not previously understand that SA Ryan would testify in this manner, and he objects to the introduction of any such testimony under Rule 403 as well as Rule 404(b).

### A. Relevance

The government intends to elicit testimony from SA Ryan regarding the finances of TCNISO.  The summary chart contained in Exhibit 25 suggests that SA Ryan will testify regarding the total revenue of TCNISO between 2005 and 2009, as well as the number of customers during that time, the total payments to Phillips and Lindquist during that time, culminating in his estimation of the amount of money Harris retained for personal use during that time.

This testimony, as well as the supporting exhibit, are not relevant and should be excluded under Rule 403.  Initially, the amount of revenue that TCNISO made or the amount of revenue that Harris kept, are not relevant to any issue in this case.  Nonetheless, Harris stipulated to Exhibit 30, a PayPal account summary showing revenues of $772,099, which established a significant revenue sum and which assured the government that Harris would not argue at trial

that he was operating a non-profit. Moreover, there has been undisputed testimony that Phillips and Lindquist received little to no salary in exchange for their services to TCNISO. There has been testimony, and Harris has acknowledged in a stipulation, that he was a principal in TCNISO and that he controlled the money earned by the company. Any further testimony regarding company finances is unnecessary. Yet the government wished to offer through Ryan an estimate of the number of customers as well as net profits to Harris "for personal use," as if that offers any probative light here. Both numbers are gleaned from GoDaddy records which would be highly contested if this were a tax case (and, indeed, the government prepared them for that purpose), and the calculations and methodology only introduce needless fact development in the present case.

     Moreover, Harris has just been informed that the Agent's analysis conflated TCNISO's revenues with alleged revenues from alleged Ebay activities by Harris. For example, SA Ryan's report regarding his investigation of TCNISO stated that the revenue he considered came from purchases made by customers on the TCNISO website as well as from sales that Harris made of unknown items on eBay. A corrective report provided by the government today indicates that SA Ryan did <u>not</u> consider eBay revenues in making the calculations that will be discussed in this case. These seemingly contradictory pieces of information make it difficult to determine whether the figures presented by Exhibit 25 are even accurate from the government's perspective. Eleventh hour corrections on financial summaries leave no time for the defense to respond.

     In any event, Exhibit 25 and testimony supporting it are not relevant to any disputed issue, confuse matters considerably, threaten a lengthening of the trial, and should be excluded under Rule 403.

### B. Authentication

The bulk of the records of customer purchases in this case were stored by GoDaddy, the web host for TCNISO.net. The government asked Harris to stipulate to the authenticity of records kept by GoDaddy, including customer records. Harris declined, and the government has since indicated that it does not plan to call a records custodian from GoDaddy. Exhibit 25 contains a figure stating how many customers TCNISO had between 2005 and 2009. Counsel presumes that this figure is based on GoDaddy records. Because Harris has not stipulated to the authenticity of these records, neither the records nor summaries of them can be introduced without testimony by a GoDaddy records keeper. To the extent that the revenue figures produced by SA Ryan are based on information contained in GoDaddy records, his calculations should be excluded under Rule 901.

### C. Testimony Regarding Hong Kong

As stated above, the government told counsel today that it plans to elicit testimony from SA Ryan that Harris had a bank account in Hong Kong and that he transferred money to and withdrew money from this account. Harris objects to this testimony under Rule 403 and Rule 404(b).

The government argues that this testimony supports the assertion in Harris's book that he has a "clandestine" residence in Hong Kong. However, there is undisputed evidence that Harris's wife, a legal permanent resident of the United States, is from Hong Kong. Harris and his wife were married in Hong Kong (as Phillips testified), and they own property in Hong Kong as well as in Oregon. They travel, often together, between the two locations, and they have bank accounts in both places. Indeed, Harris disclosed his Hong Kong residence and foreign bank

accounts when he purchased in 2008 his current residence in Oregon.

Moreover, the location of Harris's bank accounts and withdrawals does not tend to make any disputed issue at trial more or less likely. This evidence is not appropriate consciousness of guilt evidence. "[E]vidence of a defendant's flight and attempts to conceal or falsify identity may be presented at trial as probative of a guilty mind if there is an adequate factual predicate creating an inference of guilt of the crime charged." United States v. Tracy, 989 F.2d 1279, 1285 (1st Cir. 1993). Such a factual predicate does not exist here. Concealment of monies might conceivably be consciousness of guilt evidence in a tax evasion case; but here there was no concealment as he fully disclosed the activity in his Oregon property financing. Nor did the government initially even seek a consciousness of guilt instruction, suggesting that the inspiration to use this evidence, and to hint at shady dealings, is a recent development.

Additionally, this use of a foreign bank account is 404(b) evidence: it is introduced in the hopes that the jury will draw the conclusion that Harris was doing something illicit by transferring the money and that because he was transferring the money, he must be guilty of the charged crimes. This is the impermissible inference that Rule 404(b) serves to prevent. The government did not provide notice that it was intending to introduce this evidence under 404(b), and even had notice been provided, this evidence is offered solely to show conformity with bad character, and should be excluded under Rule 404(b).

### D.     Conclusion

For the foregoing reasons, this Court should exclude Exhibit 25 and preclude SA Ryan from testifying regarding TCNISO's financial and purchaser records.

RYAN HARRIS

By his attorney,

/s/ Charles P. McGinty

Charles P. McGinty
 B.B.O. #333480
Federal Defender Office
51 Sleeper Street
Boston, MA  02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 26, 2012.

/s/ Charles P. McGinty

Charles P. McGinty