UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 09-10243-MLW |
| | ) | |
| RYAN HARRIS | ) | |

DEFENDANT'S POST-TRIAL MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING
THE VERDICT AND FOR A NEW TRIAL

Defendant, Ryan Harris, respectfully submits this Memorandum in support of his motion

for entry of a judgment of acquittal notwithstanding the verdict on the seven counts of conviction

returned by the jury on March 1, 2012, pursuant to Federal Rule of Criminal Procedure 29(c)(1),

or, in the alternative, for a new trial under Rule 33.  As grounds for this motion, Harris states that

the evidence, taken in the light most compatible with the verdict, is insufficient to permit a

rational jury to find Harris guilty beyond a reasonable doubt and that the interests of justice

require a new trial.

I.      THE EVIDENCE DOES NOT SUPPORT A VERDICT THAT HARRIS
        PARTICIPATED IN A SCHEME TO DEFRAUD WITH NATHAN
        HANSHAW, JOSE LAROSA, OR WILLIAM MADEIRA.

On March 1, 2012, the jury entered a verdict of guilty on seven counts of wire fraud and a

verdict of not guilty on the remaining count of wire fraud.  Taken in the light most compatible

with the verdict, the prosecution presented insufficient evidence to permit a rational jury to find

Harris guilty of these charges beyond a reasonable doubt.

### A.     Legal Standard

This Court recently set out the legal standard for analyzing a post-verdict Rule 29 motion:

> Rule 29(c)(2) provides that, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."  The court must "scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt."  In making this sufficiency inquiry, the court must consider the direct and circumstantial evidence, as well as all plausible inferences drawn from it.  This includes all of the evidence submitted to the jury regardless of whether it was properly admitted.

> In deciding a Rule 29 motion, the court may not "weigh the evidence or make any credibility judgments."  Rather, credibility issues must be resolved in favor of the verdict.

> The court must decide if the evidence is sufficient to permit a rational jury to find each essential element to have been proven beyond a reasonable doubt. However, the government does not have to rule out every hypothesis "congenial to a finding of innocence."

> Moreover, the government is not bound by all of the evidence that it presents.  However, if the government introduces evidence contrary to the inferences it wants the jury to draw, it must introduce other direct or circumstantial evidence to relieve itself of the effect flowing from the evidence introduced.

United States v. DiMasi, 810 F.Supp.2d 347, 351-52 (D.Mass. 2011) (internal citations omitted)

(quoting United States v. Merlino, 592 F.3d 22, 29 (1st Cir.2010); United States v. Valle, 72 F.3d

210, 216 (1st Cir.1995)).

### B.     Background Law and Jury Instructions

"To prove wire fraud the government must show: 1) a scheme to defraud by means of

false pretenses, 2) the defendant's knowing and willful participation in the scheme with the intent

to defraud, and 3) the use of interstate wire communications in furtherance of the scheme."

United States v. Cassiere, 4 F.3d 1006, 1011 (1st Cir. 1993).  The falsehood upon which the

scheme is based must be material, that is it must have "a natural tendency to influence, or [is] capable of influencing the decisionmaking body to which it was addressed." Neder v. United States, 527 U.S. 1, 16, 25 (1999) (internal quotation marks omitted).

This Court instructed the jury as follows:

To prove that the defendant committed a wire fraud charge in this case the government must prove the following things beyond a reasonable doubt. First, there was a scheme substantially as charged in the indictment to defraud or obtain something of value from internet service providers by means of false or fraudulent pretenses. Second, that the defendant knowingly and willfully participated in the scheme with an intent to defraud. And third, on or about the dates alleged, the defendant transmitted or caused to be transmitted an interstate wire communication for the purpose of furthering the scheme.

If the government fails to prove any of these elements beyond a reasonable doubt, you must find the defendant not guilty on the count you are considering. If the government proves all of these elements beyond a reasonable doubt with regard to a particular count, you must find the defendant guilty of that charge.

As I said, the first thing that the government must prove beyond a reasonable doubt is that the defendant participated in a scheme to defraud that involved material false or fraudulent pretenses. A scheme is a plan or a course of conduct. The term "defraud" means to deprive somebody of something of value by means of deception or cheating. A scheme to defraud ordinarily includes a desire to bring about some gain or benefit for oneself or some other person or a desire to cause some loss to somebody else. The term "false or fraudulent pretenses" means any intentional material false representation or omission, including material direct false representations and the deliberate concealment of material facts. A fact is material if it has a natural tendency to influence or is capable of influencing whoever or whatever is making a particular decision.

In essence, in this case the government must, among other things, prove beyond a reasonable doubt the existence of a scheme to deprive internet service providers of payment for internet service based on intentional material false representations or omissions relating to a particular device concerning whether that device was authorized to receive such service. While the government must prove that the scheme alleged in the indictment existed, it does not have to prove that it succeeded.

3

The next thing that the government must prove beyond a reasonable doubt is that the defendant participated in the alleged scheme knowingly and willfully and with intent to defraud. The government does not have to prove that the defendant originated the alleged scheme, it only has to prove that he participated in it with the required knowledge and intent to defraud. To act knowingly means to act intentionally and not by accident or mistake. To act willfully means to intentionally do something known to be unlawful. An intent to defraud means to act knowingly and with specific intent to deceive and for the purpose of causing some financial loss or to obtain money for the defendant or someone else or for both of these purposes.

It would not be enough to prove wire fraud for the government to prove only that Harris sold one or more products that he knew would be used to commit a crime. However, the nature of any product sold and any knowledge that Harris had as to how it would be used are evidence that you can consider, along with all the other evidence, in deciding whether the government has proven any or all of the wire fraud charges in this case.

Now, it may be hard to get into somebody's head, so intent or knowledge need not be proven by direct evidence. Rather circumstantial evidence, as well as direct evidence, may be important in determining the defendant's state of mind. In determining what the defendant knew or intended at a particular time you may consider any statements made or anything done or not done by the defendant and all the other facts and circumstances proven by the evidence.

You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or deliberately not done. It's entirely up to you, however, to decide what facts were proven by the direct and circumstantial evidence.

The last thing that the government must prove beyond a reasonable doubt is that on or about the date alleged in the indictment, for the count you are considering, the defendant transmitted or caused to be transmitted an interstate wire communication in furtherance of the alleged scheme. The use of the internet to send a message, such as an e-mail or a communication to a website, may be a wire communication.

An interstate wire communication is a wire communication from one state to another. The wire communication does not have to be essential to the scheme or itself be fraudulent. However, it must be made as part of an attempt to execute the scheme or accomplish one of its goals. To prove that the defendant caused a particular interstate wire communication to occur, the government does not have to prove that he sent the wire communication himself. It would be sufficient if the

government proved beyond a reasonable doubt that he knew that the use of interstate wires would follow in the course of the scheme or that it was reasonably foreseeable that the interstate wires would be used as a result of his actions. It is the use of the interstate wires generally rather than the specific wire transmission that is charged that must be proved to have been reasonably foreseeable as a result of the scheme.

Therefore, if it is proven that Harris participated in the alleged scheme and did something relating to it which he knew or should have reasonably foreseen would result in interstate wire transmissions being used in an effort to execute the scheme or accomplish one of its goals, you may find the use of the interstate wire communication element to be proved.

Tr. 2/29/12 at 20-25. In response to a jury request to hear the wire fraud instructions again when it began deliberating on March 1, 2012, the Court repeated substantially the same instructions.

Given this explanation of the law, there was not sufficient evidence for a rational jury to find Harris guilty of any of the charges.

### C.      Issues Common to the Counts

#### 1.      *Sale Alone Not Enough*

This Court instructed the jury that :

It would not be enough to prove wire fraud for the government to prove only that Harris sold one or more products that he knew would be used to commit a crime. However, the nature of any product sold and any knowledge that Harris had as to how it would be used are evidence that you can consider, along with all the other evidence, in deciding whether the government has proven any or all of the wire fraud charges in this case.

Per this instruction, proof of sale alone, even coupled with the knowledge that a given user would use a given product illegally, is not enough. Nor is the nature of the product alone sufficient to establish culpability. The instruction states that the nature of the product, along with Harris's knowledge of the product's capabilities or of purchasers' intentions are, at most, evidence of the

required elements.  There must be evidence, apart from the nature of the product and the fact that Harris sold the product, to establish each of the elements of wire fraud.

At trial, the government focused on three main actions to prove that Harris committed wire fraud: he made products that were capable of obtaining free internet access (in the government's view that was the sole capability of these products); he made a product that was capable of "sniffing" MAC addresses; and he used these products himself.  The government argued that the jury could infer from these facts that Harris devised a scheme to defraud, had the intent to defraud, and participated in that scheme with users he did not know.

However, as the trial testimony revealed, Harris's products had multiple uses, including to obtain anonymous internet access, to change the packet size, to unblock ports, to remove filters, to ensure that one's internet access was consistent with what one was paying for, and by "geeks" who just wanted to know and understand how modems work.  Harris did not know and could not have known in what fashion purchasers might use his products.  His own use of the product is similarly not sufficient to prove that he created a scheme to defraud of the breadth alleged here, or that he intended to defraud on the grand scale charged.

The government did not present evidence, apart from the nature of the product, sufficient to establish Harris's guilt.

### 2.	*No Proof of Willful Conduct*

As the Court explained, in order to obtain a conviction for wire fraud, the prosecution had to prove that Harris acted willfully, that is he "intentionally [did] something known to be unlawful."  The government did not present sufficient evidence for a rational jury to conclude that Harris acted willfully.  The prosecution introduced evidence that Harris and other TCNISO

employees worried that the cable companies might sue TCNISO and Harris for their assets.

Harris also warned customers that use of these products to obtain free or faster internet could

result in being banned by an ISP.  However, there was no evidence that Harris knew that making

and selling these products, even given the known illicit uses, was <u>criminal</u>.  This prosecution is

novel, and at the time that TCNISO existed, there was no legal or statutory precedent that would

have indicated to Harris that his conduct fell within the ambit of the federal wire fraud statute.[1]

The government did not present any evidence that Harris acted willfully, with knowledge that his

actions were illegal.

3.      *No Proof of Participation*

Throughout its instruction, the Court stated that the government had to prove that Harris

"participated" in the alleged scheme to defraud, including that he "participated in a scheme to

defraud that involved material false or fraudulent pretenses."  The instructions used the word

"participated" five times.  The Supreme Court has noted that "to participate" means "'To have

a share in common with others; to partake; share, as in a debate." <u>Pennsylvania Dep't of</u>

<u>Corrections v. Yeskey</u>, 524 U.S. 206, 211 (1998) (quoting Webster's New International

Dictionary 1782 (2d ed. 1949)).  The Court's instructions, therefore, imply that the government

had to prove that Harris was joining with others to create and/or execute the alleged scheme.

Since the alleged scheme depended on the actions of product users, there had to be evidence that

Harris joined with the users as part of the scheme to defraud.  Harris's guilt or innocence, then,

hinged on the actions of the alleged users.

_____

[1] The novelty of this prosecution raises serious Constitutional concerns, including issues
of vagueness, that is discussed in a separate memorandum accompanying the defendant's
renewed motion to dismiss.

The necessity of a link between seller and user was evident in this Court's statement that, had the jury not acquitted Harris on count 8, the Court might have granted a motion for judgment of acquittal on that count. Count 8 was doomed since Madeira had made no misrepresentation. But, similarly, there is no evidence that Medeira intended to make a misrepresentation when he purchased the firmware, a purchase charged in count 7. And, as to all counts, there was no evidence that Harris knew what any purchaser intended. Harris did not know any of these users, did not communicate with them, and did not know what, if anything, they were doing with the TCNISO products they obtained. Further, as to Hanshaw, it is difficult to see how Harris "participated" in a scheme with someone he disliked and who stole his products or with someone who did not use the products in accordance with the alleged scheme.

### D.      Counts 1, 2, 3, and 4–Nathan Hanshaw

Counts 1, 2, 3, and 4 charge Harris with wire fraud based on the conduct of Nathan Hanshaw. The Superseding Indictment alleges that Hanshaw acquired two different products from TCNISO, and that he used these products to obtain free internet service from Charter. As the counts were given to the jury, Count 1 alleges wired fraud based on Hanshaw's download of a TCNISO product in 2005, Count 2 alleges wire fraud based on Hanshaw's download of a TCNISO product in 2007, Count 3 alleges wire fraud based on Hanshaw's use of a TCNISO product and a cloned MAC address to obtain free internet from Charter on January 15, 2007, and Count 4 alleges wire fraud based on Hanshaw's use of a TCNISO product and a cloned MAC address to obtain free internet from Charter on December 5, 2007.

### 1.   *Hanshaw's Testimony*

Hanshaw, who testified pursuant to a plea agreement, stated that the first TCNISO product he got was Sigma 1.3, which he downloaded for free.  He also obtained OneStepZup, CoaxThief, and Dfile Thief.  He testified that he got Sigma X when Chris Watts, a TCNISO coder, gave him the key that he needed to download this program without paying.  He also obtained the source code for all versions of Sigma, "among other things," from Isabella Lindquist.  He testified that by talking to Lindquist and Watts, he got software to which he otherwise would not have had access.  Hanshaw stated that he learned how to use this software through tutorials on the website and that he posted on the forums to help other TCNISO members.  However, there is no record of any posts by Hanshaw on the forum.  See DiMasi, 810 F.Supp.2d at 351-52 ("Moreover, the government is not bound by all of the evidence that it presents.  However, if the government introduces evidence contrary to the inferences it wants the jury to draw, it must introduce other direct or circumstantial evidence to relieve itself of the effect flowing from the evidence introduced.").  He got MAC addresses by trading on the forums, in a chat room, or by scanning other nodes from his home computer.  He stated that he received free, uncapped internet access from Charter from 2004 or 2005 until May 1, 2008.

Hanshaw testified that he talked to Phillips every day, and that Phillips gave him access to the members area of the website without making Phillips pay.  He also talked to Lindquist and Watts quite a few times.  Lindquist testified that Hanshaw and Harris had an adversarial relationship, with Hanshaw hacking into Harris's computer.  Hanshaw said that he only talked to Harris once or twice, that Harris did not let him become a forum moderator, and that Harris once offered Hanshaw a reward if he figured how to put software on a modem without opening the

modem.  He acknowledged that he was banned from the TCNISO forums repeatedly and that

Harris did not like him.  He sometimes got internet access by wardriving and using WiFi.  He

also received modified modems from MaxFraud, a website not associated with TCNISO or

Harris.  He had contact with other individuals who sold modified modems and Sigma-like

products, including Chris Dixon and Fercsa.

Hanshaw described two chat conversations he had from Worcester with an individual in

Washington in January and December 2007.  He also described, in detail, the crimes he had

participated in on the internet, including swatting, carding, the use of botnets, and other hacking

crimes.  He talked about being a social engineer.  Hanshaw stated that he had pled guilty and

served his time, that he was now in jail due to a probation violation, but that he did not expect

anything from the government in exchange for his testimony.

     2.    *Analysis*

    a.  <u>Harris did not participate in a scheme with Hanshaw</u>

The Court instructed the jury that it must find that Harris "participated" in a scheme to

defraud, in counts 1 through 4, with Mr. Hanshaw.  But the evidence indicated otherwise.

Hanshaw acknowledged that Harris did not like and did not want to be involved with Hanshaw in

any way.  Phillips testified that Harris repeatedly told him not to talk to Hanshaw because

Hanshaw was an "idiot."  Hanshaw testified that he was repeatedly banned from the forums, and

no posts from him remain on the forum.  The sole recorded conversation between Harris and

Hanshaw supports the evidence indicating that Harris did not want anything to do with Hanshaw:

in that conversation Harris tells Hanshaw that he does not know who he is and declines to make

him a moderator of the TCNISO forums.

In no meaningful sense can one say that Harris participated with Hanshaw, as in "'to have a share in common with others; to partake; share..." <u>Yeskey</u>, 524 U.S. at 211.  He is akin to the thief who breaks into another's home to appropriate the tools of a scheme for his own purposes. He used his social engineering skills to trick TCNISO developers into relinquishing the raw code for products, inferentially to permit Hanshaw to clone or exploit TCNISO's products to the detriment of Harris.  Alleged co-conspirators acting at cross purposes are not conspirators at law. Presumably, the same logic would apply to "schemers" acting at cross purposes.

Further, there was ample evidence that TCNISO products could be used for multiple purposes, such that the jury cannot conclude that Harris knew how any given customer would use his products from the mere fact of their purchase.  There was simply no evidence that Harris intended to help, cooperate, or participate in a scheme with Hanshaw in any way.

   b.  <u>Harris Did Not Sell to Hanshaw</u>

The Court instructed the jury that "It would not be enough to prove wire fraud for the government to prove only that Harris sold one or more products that he knew would be used to commit a crime."  Consistent with this instruction, a sale is required.[2]  Further, the requirement of a sale makes abundant sense: TCNISO existed to make a profit and there was evidence that Harris was upset with persons who stole or pirated his firmware.  Only a purchaser would advance TCNISO's business, and only a purchaser would in any real sense "participate" in an alleged scheme.

_____

   [2] <u>See</u> <u>United States v. D'Amico</u>, 496 F.3d 95, 102 (1st Cir. 2007) (a jury instruction, if not objected to by the government, is the law of the case and "supplies the standard by which we measure the sufficiency of the evidence.")

Hanshaw testified that he did not buy any products from TCNISO. He also testified that he never received a modem (modified or otherwise) from TCNISO. He obtained software and code from TCNISO for free. He testified that he should not have had access to some of these materials, but that he obtained access through relationships with TCNISO employees.

      c. <u>Hanshaw Did Not Use a "Particular Device"</u>

The Court also instructed the jury that government must prove "intentional material false representations or omissions relating to a <u>particular device</u> concerning whether <u>that</u> device was authorized to receive such service." This instruction required the jury to find that each user had a "particular device" from TCNISO and that this device was the one purchased and used on the alleged dates.

There was insufficient evidence that Hanshaw used a particular TCNISO device to obtain free or faster internet to sustain a conviction. Hanshaw testified that he did not obtain any modems from TCNISO, only software. Nor was there sufficient evidence that whatever device Hanshaw did obtain and use was connected to TCNISO in any way. Any software Hanshaw obtained would have had to have been loaded onto a modem in order to obtain free or faster internet. Hanshaw did not testify about the process of loading the software onto a modem. Instead, he testified that he obtained modified modems and versions of software like that offered by TCNISO from other sources. There was no testimony that Hanshaw's internet service was cut off or that no one in his family was paying for internet service. There was no testimony establishing that Charter was the sole internet provider in the area or that Hanshaw knew that his house was serviced by Charter.

### d. Wire transactions were not foreseeable

The government did not present sufficient evidence to establish that the wire transmissions made by Hanshaw were foreseeable to Harris or that they were in furtherance of a scheme in which Harris participated. Hanshaw never purchased a TCNISO product, and he usually received these products from developers, other than Harris, who granted him access that he otherwise would not have had. Harris could not have foreseen that someone would gain this unauthorized access and obtain his products in this manner. Harris did not benefit in any way from Hanshaw's access to or use of TCNISO products. Nor was Hanshaw furthering the alleged scheme when he accessed the internet. As the chat conversations between Hanshaw and the individual in Washington indicate, Hanshaw was furthering his own scheme, of which Harris had no knowledge, when he accessed the internet.

This Court instructed the jury that it was not sufficient to convict if it found that Harris sold "products that he knew would be used to commit a crime." Tr. 2/29/12 at 23. This statement encapsulates the furthest extent of what the government proved, and the jury failed to follow the court's instructions that proof that Harris sold products that he knew would be used to commit a crime was insufficient to convict him of wire fraud.

### e. Venue was improper

For similar reasons, venue for these counts is not appropriate in Massachusetts. There was no evidence connecting Harris to Massachusetts. Neither Harris nor any TCNISO employees lived in or had been to Massachusetts. They did not advertise in or specifically target a market in Massachusetts. There was no testimony indicating how many products TCNISO sold to Massachusetts or whether Harris specifically knew that any had been shipped here. Nor can

13

Hanshaw and his actions link Harris to Massachusetts.  Harris did not know Hanshaw, could not foresee Hanshaw's actions, and cannot be hauled into Massachusetts based on these unknown actions.  If venue is proper in this case, then presumably any manufacturer or distributer of any allegedly criminal product can be brought to court in any district for the conduct of any product user, even one entirely unknown to the manufacturer or distributer.

Because the government did not present sufficient evidence to permit a rational jury to return a guilty verdict, this Court should grant a judgment of acquittal as to Counts 1, 2, 3, and 4.

### E.      Counts 5 and 6–Jose LaRosa

Counts 5 and 6 charge Harris with wire fraud based on the conduct of Jose LaRosa.  The Superseding Indictment alleges that LaRosa acquired products from TCNISO, and that he used these products and a cloned MAC address to obtain free internet service from Comcast.  Count 5 alleges wired fraud based on LaRosa's purchase of a TCNISO product in June 2008, and Count 6 alleges wire fraud based on LaRosa's use of a TCNISO product and a cloned MAC address to obtain free internet from Comcast in July 2008.  Given the jury instructions, the government did not provide sufficient evidence to support the jury's verdict of guilty on these counts.

#### 1.      LaRosa's Testimony

LaRosa, who testified pursuant to a grant of immunity, stated that he bought multiple products from TCNISO.  He first visited the TCNISO website using his neighbor's Comcast WiFi connection, and purchased a modem in 2008.  He tried to sniff MAC addresses from his own house, but he found that the numbers did not work.  He went to his friend's house in another town, and used a sniffer to obtain MAC addresses there.  He found that those numbers worked to obtain free internet at his house.  He used the products for a year or two.  He had to change the

MAC address every few months, and when he needed to change it, he used another address from the list he obtained at his friend's house.  He made other purchases, some of which were for himself, some of which he sold to a friend.  Once he exchanged emails with someone at TCNISO regarding some modems that were not working.  The emails from TCNISO resolved his problem.

2.    *Analysis*

There was no evidence presented to show that Harris knowingly and willfully "participated" in a scheme with LaRosa.  Harris did not know or communicate with LaRosa. There was ample evidence that TCNISO products could be used for multiple purposes, such that the jury cannot conclude that Harris knew how any given customer would use his products from the mere fact of their purchase.  There was simply no evidence that Harris intended to help or cooperate or participate in a scheme with LaRosa in any way.

The government did not present sufficient evidence for a rational jury to conclude that Harris acted willfully, that is that he did something intentionally knowing that it was unlawful. As discussed above, there was evidence that Harris and other TCNISO employees worried that the cable companies might come after TCNISO and its assets and that Harris warned customers that use of these products to obtain free or faster internet could result in being banned by an ISP. However, there was no evidence that Harris knew that making and selling a multi-purpose product, even one with known illicit uses, was <u>illegal</u>.  This prosecution is novel, and at the time that TCNISO existed, there were no cases that would have indicated to Harris that his conduct fell within the ambit of the federal wire fraud statute.  The government did not present any evidence that Harris acted willfully, with knowledge that his actions were illegal.

There was insufficient evidence that LaRosa used TCNISO products to obtain free or faster internet to sustain a conviction.  LaRosa testified that he used a modem from TCNISO to obtain free internet access from Comcast.  However, there was also testimony that a TCNISO modem would not help you get free access if the physical cable to your house was not connected, as it would not be in the case of a non-subscriber.  LaRosa did not describe any wires to his house, did not state that his house had ever been connected to any ISPs network, and no testimony explained how it was that there was a live cable wire running to the house of a complete non-subscriber.  Nor did LaRosa  provide any basis for his belief that his neighbor had Comcast service.  There was no testimony that the area in which he lived was serviced exclusively by Comcast.  There was no evidence at all suggesting that LaRosa obtained a thing of value from Comcast as charged in the Superseding Indictment.

The government did not present sufficient evidence to establish that the wire transmissions made by LaRosa were foreseeable to Harris or that they were in furtherance of a scheme in which Harris participated.  Harris did not know that LaRosa purchased anything from TCNISO and did not know what, if anything LaRosa intended to do with the products.  Nor was LaRosa furthering the alleged scheme when he accessed the internet.  Particularly, as to Count 6, the government did not introduce any evidence suggesting that LaRosa used the TCNISO products in July 2008.  LaRosa testified that he used the products for a year or two, but he did not testify about how frequently he went on the internet, and he did not express a belief that he had used the products to access the internet any time that month.  Nor did he testify that he used the products, as opposed to his neighbor's WiFi connection or not using the internet at all,

continuously throughout that time.  There is no other evidence tending to show that he did use those products in July 2008.

This Court instructed the jury that it was not sufficient to convict if it found that Harris sold "products that he knew would be used to commit a crime."  Tr. 2/29/12 at 23.  This statement encapsulates the furthest extent of what the government proved, and the jury failed to follow the court's instructions that proof that Harris sold products that he knew would be used to commit a crime was insufficient to convict him of wire fraud.

For similar reasons, venue for these counts is not appropriate in Massachusetts.  There was no evidence connecting Harris to Massachusetts.  Neither Harris nor any TCNISO employees lived in or had been to Massachusetts.  They did not advertise in or specifically target a market in Massachusetts.  There was no testimony indicating how many products TCNISO sold to Massachusetts or whether Harris specifically knew that any had been shipped here.  Nor can LaRosa and his actions link Harris to Massachusetts.  Harris did not know LaRosa, could not foresee LaRosa's actions, and cannot be hauled into Massachusetts based on these unknown actions.  If venue is proper in this case, then presumably any manufacturer or distributer of any allegedly criminal product can be brought to court in any district for the conduct of any product user, even one entirely unknown to the manufacturer or distributer.

Because the government did not present sufficient evidence to support the jury verdict, this Court should grant a judgment of acquittal as to Counts 5 and 6.

### F.  Count 7–William Madeira

Count 7 charged Harris with wire fraud based on the conduct of William Madeira.  The Superseding Indictment alleges that Madeira acquired products from TCNISO, and that he used

these products and a cloned MAC address to obtain free internet service from Comcast.  Count 7 alleges wired fraud based on Madeira's purchase of a TCNISO product in June 2009.

       *1.*     *Madeira's Testimony*

Madeira, who testified pursuant to a grant of immunity, stated that he visited TCNISO.net in the summer of 2009 and purchased a cable modem.  He testified that at the time he bought the modem he was a paid Comcast subscriber receiving 7 or 8 Mbps, but wanted to increase his speed.  He stated that the modem did not work when he first plugged it in, but after he ran the software he downloaded on the modem, he found that the modem worked.  Madeira did not change the MAC address or configuration file on this modem at any time.  He testified that he used the TCNISO modem at the same time as the modem he had received from Comcast.  He had both modems attached to a router which was connected to his laptop.  He did not tell Comcast that he had a second modem.  Madeira testified that each of his modems received 8 Mbps, for a total of 16 Mbps and that he did not pay more.  He said that the modem worked for about 1.5 months.

       *2.*     *Analysis*

The Court instructed the jury that it must find that Harris "participated" in a scheme to defraud.  Counts 7 and 8 hinge on Hanshaw's conduct.  As evidenced by the jury's verdict on count 8 (and this Court's statement that it might have granted a motion for judgment of acquittal on that count had the jury not acquitted Harris), Harris's guilt hinged on the conduct of a third party.  Even though the conspiracy charge did not go to the jury and the jury did not receive aiding and abetting instructions, the format of the charges in the Superseding Indictment maintains a link between Harris and the alleged users.  It became clear at trial that Harris did not

know Madeira, did not communicate with him, and did not know what, if anything, he was doing with TCNISO products.

There was no evidence presented to show that Harris knowingly and willfully "participated" in a scheme with Madeira. Harris did not know or communicate with Madeira.. There was ample evidence that TCNISO products could be used for multiple purposes, such that the jury cannot conclude that Harris knew how any given customer would use his products from the mere fact of their purchase. There was simply no evidence that Harris intended to help or cooperate or participate in a scheme with Madeira in any way.

The government did not present sufficient evidence for a rational jury to conclude that Harris acted willfully, that is that he did something intentionally knowing that it was unlawful. As discussed above, there was evidence that Harris and other TCNISO employees worried that the cable companies might come after TCNISO and its assets and that Harris warned customers that use of these products to obtain free or faster internet could result in being banned by an ISP. However, there was no evidence that Harris knew that making and selling a multi-purpose product, even one with known illicit uses, was <u>illegal</u>. This prosecution is novel, and at the time that TCNISO existed, there were no cases that would have indicated to Harris that his conduct fell within the ambit of the federal wire fraud statute. The government did not present any evidence that Harris acted willfully, with knowledge that his actions were illegal.

There was insufficient evidence that Madeira used TCNISO products to obtain free or faster internet to sustain a conviction. Madeira did not change the MAC address or configuration file on the TCNISO modem he received, all he did was plug a modem in to a cable. The government charged that Madeira accessed the internet by using a cloned MAC address, and that

allegation was contradicted by the testimony.  Madeira did not attempt to clone his modem or a

MAC address or otherwise make it appear as a subscriber's modem.  Madeira provided no

support for his assertion that he was subscribed to Comcast rather than an ISP or that he was

receiving a certain rate of service.  He testified regarding his normal speeds, but he did not testify

about what speed Comcast promised him when he signed up for service.  Nor did his testimony

support the inference that Comcast would not have permitted him to connect two modems to a

router to provide internet access for a single computer.  No evidence explained how he knew

what speed of access each modem was receiving given that both modems were connected to the

same computer.  There was no evidence that he exceeded his service contract with Comcast or

that he obtained a thing of value from Comcast as charged in the Superseding Indictment.

The government did not present sufficient evidence to establish that the wire

transmissions made by Madeira were foreseeable to Harris or that they were in furtherance of a

scheme in which Madeira participated.  Harris did not know Madeira and did not know what, if

anything, he was planning to do with his TCNISO products.  Nor did Madeira further Harris's

scheme when he accessed the internet.

This Court instructed the jury that it was not sufficient to convict if it found that Harris

sold "products that he knew would be used to commit a crime."  Tr. 2/29/12 at 23.  This

statement encapsulates the furthest extent of what the government proved, and the jury failed to

follow the court's instructions that proof that Harris sold products that he knew would be used to

commit a crime was insufficient to convict him of wire fraud.

For similar reasons, venue for these counts is not appropriate in Massachusetts.  There

was no evidence connecting Harris to Massachusetts.  Neither Harris nor any TCNISO

employees lived in or had been to Massachusetts.  They did not advertise in or specifically target

a market in Massachusetts.  There was no testimony indicating how many products TCNISO sold

to Massachusetts or whether Harris specifically knew that any had been shipped here.  Nor can

Madeira and his actions link Harris to Massachusetts.  Harris did not know Madeira, could not

foresee Madeira's actions, and cannot be hauled into Massachusetts based on these unknown

actions.  If venue is proper in this case, then presumably any manufacturer or distributer of any

allegedly criminal product can be brought to court in any district for the conduct of any product

user, even one entirely unknown to the manufacturer or distributer.

Because the government did not present sufficient evidence to permit a rational jury to

return a guilty verdict, this Court should grant a judgment of acquittal as to Count 7.

II.     THE INTEREST OF JUSTICE REQUIRES A NEW TRIAL

**A.     Legal Standard**

Rule 33(a) permits the Court to "vacate any judgment and grant a new trial if the interest

of justice so requires."  Fed. R. Crim. P. 33(a).  As this Court explained in DiMasi, "Rule 33

provides a means to rectify only a result that the court, on reflection, regards as seriously

erroneous."  810 F.Supp.2d at 350.  In deciding a Rule 33 motion, "the court may weigh the

evidence, evaluate the credibility of the witnesses, and order a new trial if the evidence

predominates heavily against the verdicts and allowing them to stand would result in a

miscarriage of justice."  Id.

Errors in the prosecution's opening and closing arguments, as well as the erroneous

admission of evidence of Harris's own, uncharged conduct, necessitate the grant of a new trial.

**B.     Prosecution's Opening**

In its opening statement, the prosecution referred repeatedly and at great length to the content of the TCNISO forum.  The opening referred to the forum as a "black market" for MAC addresses and stated that the forum was a critical part of the alleged scheme.  Counsel objected to these statements throughout the prosecution's opening, and made a motion for mistrial at the end of the opening statement.  The Court denied this motion.  Harris also renewed this motion for a mistrial when the Court granted a judgment of acquittal as to the conspiracy charge.  This motion was also denied.

This Court erred in denying Harris's motion for a mistrial based on the prosecutor's statements about the web forum.  The prosecution initially offered evidence relating to the forum to prove that Harris was linked in a single conspiracy with all product users.  The prosecution offered testimony about the forums as well as content from the forums.  Ultimately, very little evidence related to the forums was admitted at trial.  Phillips testified that he sometimes used the forum to obtain MAC addresses, as did Hanshaw, but both admitted that there were other ways to get MAC addresses.  Lindquist testified that she used the forums very infrequently and she usually learned of their content through Harris.  Neither LaRosa nor Madeira ever used the forums.  Only one post from the forum, that Harris himself made, was introduced at trial.  Yet the jury was offered the claim that a "black market" existed, and that Harris was responsible for it.  Because no evidence supported the claim, a mistrial should have been granted.

None of the evidence regarding the web forum was relevant to the wire fraud charges, and mistrial should have been granted when the conspiracy charge was dismissed.  Testimony and

statements regarding the forum were prejudicial and of no probative value once the jury no
longer had to consider the conspiracy charge.

###    C.    Prosecution's Closing

In both its closing argument and its rebuttal closing, the prosecution repeatedly engaged
in improper, burden shifting argument.  The content of the government's closing argument can
violate a defendant's right to due process under the Fifth and Fourteenth Amendments.  *See*
*Darden v. Wainwright*, 477 U.S. 168, 180-82 (1986); *see also Kirwan v. Spencer*, 631 F.3d 582,
588-89 (1st Cir. 2011).  One way in which a prosecutor can violate a defendant's rights during
closing argument is by "manipulat[ing] or misstat[ing] the evidence."  *Darden*, 477 U.S. at 181-
82; *see also Kirwan*, 631 F.3d at 589.   Burden-shifting argument can also violate the defendant's
rights: "'a prosecutor may cross the line [into impermissibility] by arguing to the jury that the
defendant is obligated to present evidence of his innocence.'" United States v. Glover, 558 F.3d
71, 77 (1st Cir. 2009) (quoting United States v. Diaz-Diaz, 433 F.3d 128, 135 (1st Cir 2005)).
"When commenting on the plausibility of a defense theory, the government's focus must be on
the evidence itself and what the evidence shows or does not show, rather than on the defendant
and what he or she has shown or failed to show."  Glover, 558 F.3d at 78.

In its closing and its rebuttal, the prosecutors repeatedly stated that there had been no
evidence presented showing that people used TCNISO products for any purpose other than to
obtain free or faster internet.  This assertion is, first and foremost, a misstatement of the
evidence.  In addition to ample testimony about the possible uses of TCNISO products from
Agent Russell as well as the Motorola and Charter employees, Hanshaw testified that he used
TCNISO products "mainly" to gain anonymity, and Lindquist testified that she experimented

with the products for the fun of learning how the modems worked.  Additionally, these statements are improper burden shifting and imply that Harris was required to present evidence to support his theory of defense.  Harris had a constitutional right not to present evidence, and the prosecutor may not comment on his silence or suggest that he was required to or should have presented evidence to the jury.

Counsel objected to the burden shifting argument and to the misstatement when it was repeated in the prosecutor's rebuttal argument.  The Court gave a curative instruction in an effort to mitigate the harm, but this instruction was not sufficient to negate the impact of the repeated references to the lack of evidence that TCNISO products had and were used for multiple purposes.  The purpose and function of the TCNISO products was the critical issue at trial.  The government argued that Harris had the intent to defraud because he developed products with the sole purpose of defrauding.  The defense countered that because the products had many purposes, their development and sale did not evince an overarching intent to defraud all ISPs by Harris.  Given the centrality of this issue, a curative instruction was not sufficient to remedy the prosecutors' repeated misstatements and improper argument that Harris had not presented evidence that he was obligated to present.

**D.    Admission of Harris's Own Conduct**

Over Harris's repeated objection, the Court permitted the admission of testimony that Harris used TCNISO products to obtain free or faster internet.  This evidence should have been excluded under Rules 403 and 404(b).

Evidence must be excluded under Rule 404(b) if "[i]t involves an inference of propensity as 'a necessary link in the inferential chain.'"  United States v. Varoudakis, 233 F.3d 113, 120

(1st Cir. 2000).  In <u>Varoudakis</u>, the First Circuit held that evidence that the defendant had committed a prior arson was inadmissable because it was offered to show propensity–that because the defendant had committed a prior arson to relieve financial difficulties, it was "more likely that he committed the [charged] arson in response to financial stress."  <u>Id.</u>  Especially once the conspiracy charge was dismissed, the proffered evidence regarding Harris's use of TCNISO products serves the same purpose; it would cause the jury to infer that because Harris intended to get and got free or enhanced internet access using TCNISO products, he intended for others to obtain the same benefit using the same products.  Rule 404(b) prohibits the use of prior bad acts to show propensity in this way.

The government has not charged Harris with his own use of TCNISO products, and this evidence is not relevant.  This evidence served only to show propensity.  Ample evidence, including Harris's book, showed that Harris knew that TCNISO products could be used to obtain free or uncapped internet.  Evidence that Harris knew something could happen is not evidence that he knew that it would happen or that he intended to help other people make it happen.  <u>See</u> <u>Pappathanasi</u>, 383 F.Supp.2d at 291-92 (D. Mass. 2005).  Nor does evidence that Harris used a product in a certain way indicate that he intended to develop an all-consuming "scheme" that would make him criminally liable for the conduct of anyone whoever bought and used his products in that way.  This evidence was highly prejudicial without being probative, and it should have been excluded under Rules 403 and 404(b).

III.    CONCLUSION

For the foregoing reasons, this Court should grant a judgment of acquittal as to all counts,

or, in the alternative, grant a new trial.

<div style="margin-left: 50%;">

RYAN HARRIS
By his attorney,

/s/ Charles P. McGinty

Charles P. McGinty
 B.B.O. #333480
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

</div>

<center>CERTIFICATE OF SERVICE</center>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 15, 2012.

<div style="margin-left: 50%;">

/s/ Charles P. McGinty

Charles P. McGinty

</div>