UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 09-10243-MLW |
| | ) | |
| RYAN HARRIS | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
RENEWED MOTION TO DISMISS AND FOR
ACQUITTAL ON GROUNDS OF UNCONSTITUTIONAL VAGUENESS**

After his conviction of seven counts of wire fraud, defendant Ryan Harris, in his second motion for post-trial relief, argues that the wire fraud statute is unconstitutionally vague and asks this Court for a judgment of acquittal. He made this argument both before and during the trial, and after much briefing and argument, the Court ultimately rejected it. For the reasons set forth below, the Court should again deny the defendant's motion.

Harris fails to cite for support any case in which a court has found the wire fraud statute, 18 U.S.C. § 1343, to be void for vagueness. Because there is no basis for such a finding here, the Court should deny motion.

The Supreme Court has set out the standard for determining whether a statute is void for vagueness:

> A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no

1

more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340 (1952) (footnotes omitted).

Courts have consistently held that wire fraud, because of its specific intent requirement, is not unconstitutionally void for vagueness.  See, e.g., United States v. Conner, 752 F.2d 566 (11th Cir. 1985).  There, the Court reasoned:

> Wire fraud is a "specific intent" crime . . . .  A statute meets the standard of certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.  The case of Colautti v. Franklin, 439 U.S. 379, 395 (1979), states that "This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." "The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." Screws v. United States, 325 U.S. 91, 102 (1945). There is no merit in the claim of unconstitutionality." Id. at 574.

See also United States v. Louderman, 576 F.2d 1383, 1388 (9th Cir. 1978) (same).

Here, contrary to Harris' assertion, this is not a "case of first impression," and there is nothing novel about the wire fraud charges involved here.  Harris was convicted of participating in a scheme to defraud the ISPs, depriving them of subscriber revenues, by masquerading as legitimate, paying subscribers.  In essence, in Harris's scheme, by using modified modems with stolen MAC addresses that belonged to paying subscribers, he and his customers made material misrepresentations to the ISPs about their identity and, correspondingly, their right to access the ISPs' networks.  This in turn deprived the ISPs of subscriber revenues.

The wire fraud statute makes it clear that it is illegal to make material misrepresentations (here, about the users' identity, status as a paid subscriber and rights to access the network) to others (here, ISPs) to deprive them of their property (here, subscriber fees that would otherwise be owed by the illegal users). Accordingly, Harris was on notice that his conduct was illegal, and the Court should reject his argument to the contrary.

Furthermore, there have been numerous other wire fraud prosecutions involving sellers of analogous "theft of service"-type devices. In the 1990s, there were a number prosecutions of individuals who designed and sold modified satellite t.v. and cable t.v. "descramblers" or "converters." These devices enabled (1) satellite t.v. viewers to decrypt and view premium channel broadcasts without authorization from (and payment to) the broadcasters, and (2) cable t.v. viewers to intercept and receive t.v. programs without authorization from (and payment to) the cable companies.

For example, in United States v. Manzer, 69 F.3d 222 (8th Cir. 1995), the defendant manufactured and distributed modified satellite t.v. "descramblers," sold "cloned" chips containing unit addresses from authorized units, and sold "cloning packages" with the information and unit addresses needed to clone additional counterfeit chips. Id., 69 F.3d at 225-226. Manzer was convicted of, *inter alia*, wire fraud and mail fraud, and his conviction was affirmed on appeal. Id. Likewise, in United States v. Coyle, 943 F.2d 424 (4th Cir. 1991), the defendant manufactured and distributed cable t.v. "converters" or "descramblers" that enabled cable t.v. customers to receive additional channels without paying the required fees to the cable companies. Coyle, 943 F.2d at 425. Coyle also sold a "Cable TV Data Blocker," which hindered the cable companies

from discovering the unauthorized use of the descrambler.  Id.  Coyle was convicted of mail fraud, and his conviction was affirmed on appeal.  Id.

Even before the descrambler cases, in the 1970s, there were wire fraud prosecutions of individuals who designed and sold "blue boxes" that enabled telephone users to by-pass the telephone companies' electronic circuitry and make telephone calls without paying the required fees.  See United States v. Patterson, 528 F.2d 1037 (5th Cir. 1979).  See also Lawlor, James, "Federal Criminal Prosecutions under Wire Fraud Statute for Use of 'Blue Box' or Similar Device Permitting User to Make Long-Distance Telephone Calls Not Reflected on Company's Billing Records," 34 A.L.R. Fed. 278 (West 2009) (citing a list of circuit court published decisions involving § 1343 charges).

Here, Harris's cable modem hacking operation is strikingly similar to the sale of satellite t.v. descramblers involved in Manzer, and it falls even more squarely within the wire and mail fraud statutes than the cable descrambler and blue box operations at issue in Coyle and Patterson.  Those latter two cases involved devices that essentially allowed users to remain silent and "unidentified" to the providers, whereas Harris's cable modem hacking products incorporated affirmative misrepresentations to the providers.  As established at trial, Harris's products incorporated the use of stolen MAC addresses that belonged to legitimate, paying subscribers, thereby allowing users to misrepresent their identities to the ISPs.[1]  Likewise, the modified satellite t.v. descramblers at issue in

---

[1] Indeed, in the wake of Neder v. United Sates, 527 U.S. 1 (1999), which held that the wire and mail fraud statutes implicitly require a material misrepresentation, some courts have held that the use or distribution of cable t.v. converter/descrambler devices do not involve material misrepresentations.  See, e.g., United States v. Gee, 226 F.3d 885 (7th Cir. 2000) (reversing conviction of seller of cable t.v. descramblers).  Notably, in Gee, unlike here, the government had earlier specifically acknowledged that it did not base its fraud charges on any misrepresentation or omission.  Id. at fn. 3.

Manzer allowed users to clone authorized "unit addresses" and therefore pose as authorized users to the satellite broadcasters.

Harris's attempt to distinguish these descrambler and blue box cases is unavailing. He claims that "those cases involved single-use, plug-in devices . . . quite unlike the multi-purpose tools sold by TCNiSO." (Def's Memo, p. 4, fn.2).  But this misstates the evidence presented at trial.  The evidence clearly established that Harris's self-styled "cable modem hacking" products, replete with the packet-sniffer he dubbed "CoaxThief," and its anti-probing feature he dubbed "stealth mode," were single-use products designed to steal internet service.  The jury clearly rejected Harris's argument, which he put forth throughout his opening statement, closing argument, and in his cross examinations.

Indeed, the defendant in Manzer raised this very same argument.  Like Harris argues here, Manzer "essentially argues that he could just as easily have intended to sell the technology for nonfraudulent testing or educational purposes." Id. at 226.  The Eighth Circuit rejected this contention and affirmed his conviction.  The Court held that "[t]he type of technology sold, the volume of sales, the nature of his clientele, the level of secrecy employed, and the fact that his operation directly modified [descrambling devices] to intercept decrypted broadcast signals all support the reasonable inference that Manzer acted with intent to defraud." Id. at 227 (citations omitted).

The defendant's reliance on United States v. Czubinski, 106 F.3d 1069, 1079 (1st Cir. 1997) is misplaced.  That case involved a sufficiency of the evidence challenge, not an assertion that the wire fraud statute was void for vagueness.  Furthermore, the facts have no application here.  The defendant in that case was an IRS employee who browsed

5

and viewed private taxpayer information contained on IRS computers. The court reversed Czubinski's conviction, holding that "it was not proven that he intended to deprive the IRS of their property interest through either disclosure or use of that information." Id. at 1074. Here, by contrast, there was ample evidence presented at trial that Harris, through his cable modem hacking scheme, intended to deprive the ISPs of subscriber revenues and network access.

      For all of the above reasons, the Court should deny the defendant's motion.

                              Respectfully submitted,

                              CARMEN M. ORTIZ
                              United States Attorney

By:   */s/ Adam Bookbinder*
        Adam J. Bookbinder
        Assistant U.S. Attorney
        Mona Sedky
        DOJ Trial Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                              */s/ Adam Bookbinder*

Dated: March 23, 2012