UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 09-10243-MLW |
| | ) | |
| RYAN HARRIS, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                                                                    June 26, 2012

I. SUMMARY

Defendant Ryan Harris was convicted on March 1, 2012 of seven counts of wire fraud based on his participation in a scheme to sell hardware and software that enabled users to obtain free and higher speed internet access by misrepresenting themselves as paying subscribers to cable internet service providers. He has filed a motion to dismiss and for judgment of acquittal on the ground that the wire fraud statute is unconstitutionally vague as applied to the facts of this case. Among other things, the defendant characterizes the application of the wire fraud statute to his conduct as unprecedented and far reaching. For the reasons discussed below, the defendant's motion is not meritorious. It is, therefore, being denied.

II. PROCEDURAL HISTORY

Harris was charged in 2009 with conspiracy to commit computer fraud and wire fraud, aiding and abetting computer fraud, and aiding and abetting wire fraud. The indictment alleged that the defendant, who used the code name DerEngel, was the founder, owner,

president, and a software developer for TCNISO, Inc., a California company whose primary business was to develop, distribute, and sell cable modem hacking products. These products allegedly enabled users to obtain internet service without paying for it by mimicking the unique identifiers, including the "MAC addresses," that are used by the internet service providers to identify legitimate, paying subscribers. The indictment further alleged that Harris and TCNISO provided online instructional materials and user forums that assisted customers in using their products to obtain free, high-speed internet service.

On January 24, 2011, Harris filed a motion to dismiss the indictment on the ground that venue in Massachusetts was improper or, in the alternative, to transfer the case to the Eastern District of California. The government filed a Superseding Indictment on May 18, 2011, charging conspiracy to commit wire fraud and multiple counts of wire fraud. Each wire fraud count was based on a separate wire transmission in which an individual user in Massachusetts allegedly accessed the internet, either with the use of one or more of the defendant's products or for the purpose of purchasing or downloading those products. The conspiracy count alleged that Harris conspired to commit wire fraud with other individuals who were involved in TCNISO's operations, and with individuals who purchased TCNISO products and used them in Massachusetts.

2

The defendant again moved to dismiss the Superseding Indictment for improper venue or, in the alternative, to transfer the case. In addition, the defendant asserted that the indictment should be dismissed on the ground that the wire fraud statute was unconstitutionally vague as applied to the facts of this case.

On December 13, 2011, the court denied the motion to dismiss for improper venue, finding the complaint sufficient to allege venue in Massachusetts. The court noted, however, that venue would have to be proven by the government at trial by a preponderance of the evidence. See United States v. Lanoue, 137 F.3d 656, 661 (1st Cir. 1998). The court declined to transfer the case to the Eastern District of California. In addition, the court considered the argument that the wire fraud statute was unconstitutionally vague, but found that this contention would need to be decided in the context of the evidence presented at trial. See United States v. Reed, 114 F.3d 1067, 1070 (10th Cir. 1997). Accordingly, the court denied without prejudice the request to find the applicable statutes void on the ground of vagueness.

As trial approached in February, 2012, the court made many evidentiary rulings. Among other things, the court excluded certain statements made during online chats or on online TCNISO web forums, under Federal Rule of Evidence 403, because the potential for unfair prejudice substantially outweighed their probative value, or on other grounds. However, the court permitted the

3

government to introduce testimony about the defendant's own use of modified cable modems in order to obtain high speed internet service without paying for it as intrinsic evidence of the alleged scheme and of defendant's intent to defraud.

At trial, the government presented testimony of Craig Phillips and Isabella Lindquist, both of whom worked with the defendant and TCNISO, about the company's operations and products, and the defendant's actions, knowledge, and stated intentions.   The government also presented testimony of an FBI special agent and witnesses from Motorola and Charter Communication about the manner in which cable modem internet service is provided and the operation of TCNISO's products.  Finally, the government provided testimony of three individuals in Massachusetts who had used TCNISO products in order to obtain free internet service, or faster internet service, without paying for it.

Following the trial, the defendant moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The court allowed the motion as to the charge of conspiracy to commit wire fraud, finding that, although there was sufficient evidence that Harris was involved in a conspiracy with Phillips and Lindquist, there was insufficient evidence that Harris had conspired with the Massachusetts users of TCNISO products. Accordingly, there were no overt acts in Massachusetts during the period of the proven conspiracy, and venue for the conspiracy

4

charge was improper in Massachusetts.

Eight substantive counts of wire fraud were submitted to the jury. The court instructed the jury as to the requirements for finding that Harris had committed wire fraud as a principal, and did not instruct on liability as an aider and abettor or co-conspirator. On March 1, 2012, the jury found Harris guilty on seven counts of wire fraud and not guilty on one count of wire fraud.

After the verdict, the defendant filed a timely motion for judgment of acquittal notwithstanding the verdict and for a new trial. That motion is addressed in a separate order. The defendant also renewed his motion to dismiss the case on the ground that the wire fraud statute is unconstitutionally vague as applied to facts of this case.

III. DISCUSSION

"To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" Skilling v. United States, 130 S. Ct. 2896, 2927-28 (2010) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). "Many statutes will have some inherent vagueness, for in most English words and phrases there lurk uncertainties. But a statute is unconstitutionally vague only if it prohibits an act in terms so

5

uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application." United States v. Councilman, 418 F.3d 67, 84 (1st Cir. 2005) (internal quotations and citations omitted). Therefore, "[t]he Due Process Clause of the Fifth Amendment requires that a criminal statute be found unconstitutionally vague if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by [the] statute." United States v. Maquardo, 149 F.3d 36, 41 (1st Cir. 1998) (internal quotations omitted). As the Supreme Court has explained:

There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Second, as a sort of junior version of the vagueness doctrine, the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.

United States v. Lanier, 520 U.S. 259, 266-67 (1997) (internal quotations and citations omitted).

"[O]utside the First Amendment context, a party has standing to raise a vagueness challenge only insofar as the statute is vague

6

as applied to his or her specific conduct." United States v. Pungitore, 910 F.2d 1084, 1104 (3d Cir. 1990); see United States v. Hill, 167 F.3d 1055, 1064 (6th Cir.1999); see also New York v. Ferber, 458 U.S. 747, 767-68 (1982) ("The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court."). A vagueness challenge not implicating the First Amendment is, therefore, "limited by the framework of the specific facts in the record of the case." Maquardo, 149 F.3d at 42; see also Reed, 114 F.3d at 1070 ("A vagueness challenge [not implicating the First Amendment] cannot be aimed at the statute on its face but must be limited to the application of the statute to the particular conduct charged."). As indicated earlier, because the void for vagueness doctrine must be applied to the facts of this case, the court found defendant's motion to dismiss the indictment before trial on the ground of unconstitutional vagueness to be premature. See Reed, 114 F.3d at 1070.

The defendant now presents several arguments in an effort to demonstrate that the wire fraud statute is unconstitutionally vague as applied to this case. Characterizing the case as one of first impression, he asserts that if the wire fraud statute can be applied to punish his sale of cable modem hacking products, then it can also be applied to make criminal the conduct of other companies

that create products which are readily susceptible to illegal use and known to be used unlawfully by many of their users. The defendant also contends that because the wire fraud statute does not expressly prohibit the specific conduct that he engaged in, and because of the novelty of this case and the government's failure to prosecute certain other companies whose conduct the defendant analogizes to his own, he did not have fair notice of the criminality of his conduct. Citing tort cases, the defendant asserts, in effect, that because the manufacturer of a product that is put to a harmful or illegal use is not ordinarily civilly liable for the consequences of that use, sellers of products are not on notice of any potential for criminal liability arising from a third party's use of a product. The defendant argues that this lack of notice is corroborated by the evidence in the case, which he contends indicated that Harris's concern about his actions was focused on the potential for civil, rather than criminal, liability. The defendant's arguments, however, are unpersuasive.

The wire fraud statute provides in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. §1343. In addition, although the plain language of the

8

statute does not so state, the Supreme Court has held that materiality of a falsehood is an element of mail and wire fraud, because the settled meaning of the term "fraud" at common law required misrepresentation or concealment of a material fact. See Neder v. United Sates, 527 U.S. 1, 20-25 (1999).

Contrary to the defendant's assertions, this case represents a straightforward application of the wire fraud statute. As the First Circuit explained in the analogous context of mail fraud long before the events at issue in this case, the statute's "scope is broad. It covers deceptive schemes to deprive victims of a wide variety of tangible and intangible property interests . . . ." United States v. Rosen, 130 F.3d 5, 9 (1st Cir. 1997). The plain language of the statute put the defendant on notice that he could be subjected to criminal punishment for devising a scheme to defraud internet service providers, or to obtain money or property from internet service providers by means of false or fraudulent representations, if the scheme involved interstate wire transmissions. In addition, many times before the defendant engaged in the conduct proven in this case, courts applied the mail and wire fraud statutes to punish schemes to defraud companies or other entities of revenue. See, e.g., United States v. Loney, 959 F.2d 1332, 1336 (5th Cir. 1992) (defendant who participated in scheme to add bogus mileage to American Airlines frequent flier accounts and issue award coupons based on that mileage participated

9

in scheme "designed to defraud American of its lawful revenues, which is actionable under the statute"); United States v. Paccione, 949 F.2d 1183, 1194-95 (2d Cir. 1991) (sustaining mail fraud conviction of defendants who ran unlawful dumping operation because it was a scheme to defraud the City and State of revenue from licensing and dumping fees to be derived from disposal at City-owned landfill).

Some such cases applied the wire fraud statute to the distribution and use of devices that enabled users to obtain television or long-distance telephone service without paying for it. See, e.g., Brandon v. United States, 382 F.2d 607, 608, 610 (10th Cir. 1967) (scheme to defraud telephone company of revenue for the use of long distance telephone service and facilities); United States v. Norris, 833 F. Supp. 1392, 1395-97 (N.D. Ind. 1993), aff'd, 34 F.3d 530 (7th Cir. 1994) (scheme to defraud cable television companies of revenue by selling equipment that allowed individuals to receive premium channels without paying required fee). For example, the Eighth Circuit in United States v. Manzer affirmed the convictions for wire fraud and mail fraud of a defendant who operated a business whose products enabled users to obtain premium television channels without paying for them. 69 F.3d 222, 225 (8th Cir. 1995). In a manner similar to defendant's conduct in this case, Manzer sold cloned chips which contained the "unit addresses" of paying subscribers, and by doing so mimicked

10

the unique identifier which was programmed into the broadcasters'
satellite transmissions in order to ensure that only authorized
addresses would be able to decrypt broadcast signals.   Id. at 225-
26.   Individual customers and satellite dealers were able to obtain
premium channels without paying for them by replacing the original
chip in the device used to descramble satellite transmissions with
the cloned chip containing the unit address of an authorized user.
Id. at 226.   Manzer also sold "cloning packages" that allowed the
cloning of additional counterfeit chips.   Id.   The court rejected
Manzer's argument that there was insufficient evidence of his
intent to defraud, stating that "[t]he type of technology sold, the
volume of sales, the nature of his clientele, the level of secrecy
employed, and the fact that his operation directly modified
[devices] to intercept decrypted broadcast signals all support the
reasonable inference that Manzer acted with intent to defraud."
Id. at 227.

    In the instant case, the court instructed the jury that a
conviction for wire fraud requires proof that the defendant
participated in the alleged scheme knowingly, willfully, and with
intent to defraud.   See United States v. Vazquez-Botet, 532 F.3d
37, 63 (1st Cir. 2008).   Accordingly, in convicting the defendant,
the jury had to find that the defendant acted deliberately, with
intent to defraud the internet service providers, and knew that his
scheme was unlawful – findings that were amply supported by the

11

evidence.    These requirements provide further support for the conclusion that the wire fraud statute is not unconstitutionally vague as applied in this case.   See Skilling, 130 S. Ct. at 2933 (wire fraud statute's mens rea requirement "further blunts any notice concern"); Colautti v. Franklin, 439 U.S. 379, 395 (1979) ("This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea."); United States v. Lampley, 573 F.2d 783, 787 (3d Cir. 1978) (telephone harassment statute's specific intent requirement rendered vagueness attack unconvincing).

IV. ORDER

In view of the foregoing, the Defendant's Renewed Motion to Dismiss and for Judgment of Acquittal, on the Grounds of Unconstitutional Vagueness (Docket No. 149) is hereby DENIED.

UNITED STATES DISTRICT JUDGE

12