1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                                No. 1:09-cr-10243-MLW

4

5      UNITED STATES OF AMERICA

6

7      vs.

8

9      RYAN HARRIS

10

11                          * * * * * * * * *

12

13                        For Hearing Before:
                          Chief Judge Mark L. Wolf

14

15                         Contempt Hearing

16

17                    United States District Court
                      District of Massachusetts (Boston.)
                      One Courthouse Way
18                    Boston, Massachusetts 02210
                      Tuesday, February 1, 2012

19

20                          * * * * * * * *

21

22            REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
23                 United States District Court
            One Courthouse Way, Room 5200, Boston, MA 02210
24                    bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3    ADAM J. BOOKBINDER, ESQ.
          United States Attorney's Office
 4        John Joseph Moakley Federal Courthouse
          One Courthouse Way, Suite 9200
 5        Boston, Massachusetts 02210
          (617) 748-3112
 6        E-mail: Adam.bookbinder@usdoj.gov
     and
 7    MONA SEDKY, ESQ.
          U.S. Department of Justice
 8        601 D. Street, N.W.
          Washington, D.C. 20530
 9        (202) 353-4304
          Email: Mona.sedky@usdoj.gov
10        For the United States of America

11

12    CHARLES P. McGINTY, ESQ.
          Federal Public Defender Office
13        District of Massachusetts
          51 Sleeper Street, 5th Floor
14        Boston, Massachusetts 02210
          (617) 223-8080
15        E-mail: Charles_mcginty@fd.org
          For the defendant
16

17

18

19

20

21

22

23

24

25
```

1              P R O C E E D I N G S

2              (Begins, 4:00 p.m.)

3              THE CLERK:  Criminal Matter 09-10243, the

4    United States of America versus Ryan Harris.  The Court

5    is in session.  You may now be seated.

6              THE COURT:  Good afternoon.  Would counsel

7    please identify themselves for the Court and for the

8    record.

9              MR. BOOKBINDER:  Good afternoon, your Honor.

10   Adam Bookbinder and Mona Sedky for the United States.

11             MR. McGINTY:  Your Honor, for Mr. Harris,

12   Charles McGinty, from the Federal Defender's Office, and

13   with me is Miriam Conrad.

14             THE COURT:  Mr. Harris, as I understand, is on

15   the telephone, correct?

16             THE DEFENDANT:  Yes, sir, your Honor.

17             (Pause.)

18             THE COURT:  I'd like to try to assure that we

19   share an accurate and complete understanding of the

20   history of events that brings us here today.

21             On December 13, 2011, I conducted a lengthy

22   hearing.  I denied the defendant's motion to dismiss.  I

23   scheduled the trial of this case for February 21, 2012,

24   which was actually two weeks later than it had been

25   previously scheduled.  In addition, I discussed with the

1    parties a number of novel and challenging issues

2    regarding the law concerning conspiracy, wire fraud, and

3    aiding and abetting, as those concepts apply to this

4    case, which raises a number of novel and challenging

5    issues.  I discussed the issues the parties had

6    recognized and I identified and discussed issues that I

7    had discerned.  I cited cases for the parties that I

8    thought were relevant and said I would, eventually, the

9    next day, I did provide them with lengthy jury

10   instructions that I had given last year in **United States**

11   **vs. DiMasi**.  I set a schedule for pretrial submissions

12   and put aside at least two mornings to conduct hearings

13   on the issues that I expect will come into sharper focus

14   in the briefing that I ordered.

15        On December 14, 2011, I issued a written order

16   memorializing what was stated on December 13, orally.

17   Among other things I ordered the parties to file, by

18   January 13, 2012, motions in limine with supporting

19   memos, proposed jury instructions, trial briefs that

20   address the major issues I had identified and other

21   disputes relating to the jury instructions, disputes

22   that should have been identified because I had ordered

23   the parties to confer before making their submissions.

24        I established January 25 as the date for responses

25   to their motions in limine.  I scheduled hearings on

February 7th and 8th, 2012 to address the foreseeable --
or at least foreseen, anticipated motions in limine and
the legal issues that would be necessary to make
evidentiary rulings at trial -- that would have to be
resolved for me to make rulings at trial and instruct
the jury.

Yesterday, January 31, 2012, as I intended to
begin working in anticipation of the hearing scheduled
for next week, I found that the government had made
submissions on January 13th, although it raises issues
in its trial brief that should have been raised in
motions in limine with more meaningful briefing.  There
are no memos in support of the evidentiary issues.  I
also found that defendant's counsel, Charles McGinty,
had made no submissions in response to the December 14
order nor had he requested any extension of time to do
so.

I therefore issued an order on January 31
directing Assistant Federal Public Defender McGinty and
Federal Public Defender Miriam Conrad to appear today to
seek to show cause why I should not institute civil
and/or criminal contempt proceedings against Mr. McGinty
for his failure to obey the December 14, 2011 order.

Mr. McGinty yesterday moved for an extension of
time to make the previously-ordered filings.  I did not

1    allow that motion.  I did endorse it noting that any

2    issue of civil contempt would be moot if all the

3    submissions that I previously ordered were made by the

4    time of this hearing, 4:00 on February 1, and stating

5    that the issue of possible criminal intent would, in any

6    event, remain.

7         On the evening of January 31, Mr. McGinty filed a

8    trial brief and voir dire questions.  The trial brief

9    includes many matters toward the end which are

10   essentially motions in limine, they are not -- while

11   occasional cases are cited for some of the points, there

12   are no supporting memos as required by Local Rule 7.1

13   and by the express terms of the pretrial order in this

14   case.  Those evidentiary issues are issues that the

15   government's been deprived of for two weeks roughly that

16   I intended the government would have to respond.

17        As I noted in the January 31, 2012 order, I've

18   encountered similar problems with Mr. McGinty before.

19   As I recall, I expressly warned Mr. McGinty that future

20   problems of this sort could result in sanctions,

21   including contempt.  I also had Ms. Conrad into court to

22   express concerns about, I believe, Mr. McGinty and also

23   other assistant federal public defenders failing to meet

24   deadlines, which I don't interpret generally or in this

25   case as any expression of disrespect to the Court

1   personally, but is something that is deeply injurious to

2   the Court's ability to properly control its calendar and

3   prepare to decide an important matter.  And Mr. McGinty

4   and Ms. Conrad should feel encouraged to confirm whether

5   my memory of our prior colloquies is correct.  But in

6   this particular case, the failure to make timely and

7   complete filings is threatening, if not injuring, my

8   ability to make properly-informed judgments on

9   challenging issues in an usual case.

10       I have not instituted civil or criminal contempt

11  proceedings, but if there are going to be criminal

12  contempt proceedings or civil contempt proceedings,

13  they'll be pursuant to formal notice and an opportunity

14  to be heard.  If there are criminal contempt

15  proceedings, it's a criminal case and based on what I

16  know, I don't imagine the sanction will be more than 6

17  months in prison or jail or custody, so it would be a

18  bench trial, and Mr. McGinty would have all of the

19  rights of any criminal defendant.

20       I ordered Ms. Conrad to be here because it's the

21  Federal Public Defender's Office appointed to represent

22  Mr. Harris in this case and it's Federal Public

23  Defender's responsibility to assure that Court orders

24  are obeyed.

25       I state what I hope will be obvious, but it might

1    not be clear to Mr. Harris, that he's not going to be

2    punished in any way because of his counsel's failure to

3    obey orders.  What I'm actually concerned about is the

4    fact that I haven't, in a timely way, been given by the

5    defendant any of the information that is required to be

6    submitted by January 13 and I still haven't got all of

7    it.  And my goal, in part, is to make sure that

8    Mr. Harris is very effectively represented and he's not

9    going to be prejudiced by me or anybody else because

10   I've unfortunately had to deal with this issue

11   concerning his counsel.

12        So I'd like to give Mr. McGinty and Ms. Conrad an

13   opportunity to address this as I decide the immediate

14   issues of whether to institute civil and/or criminal

15   contempt proceedings.

16            MR. McGINTY:  Your Honor, um, this Court

17   entered an order, the order was quite clear, I failed to

18   meet the requirements of the order.  I did not do it

19   deliberately.  Nonetheless, um, I have responsibilities

20   to meet and I didn't meet them.

21            THE COURT:  Well, what do you mean you didn't

22   do it deliberately?

23            MR. McGINTY:  Pardon?

24            THE COURT:  I'm not sure what you mean when

25   you say you didn't do it --

1          MR. McGINTY:  I intended no affront to the

2    Court and I certainly understood the gravity of the

3    issues here and did not intend to do anything which

4    would diminish the opportunity to address these issues

5    and address them appropriately.

6          I have been preparing a second case which took me

7    out of the United States between January 4th and January

8    20th.  I failed in my calendaring of the

9    responsibilities in this case.  I spoke to Mr. Harris

10   last night and I told him that the Court had entered an

11   order which reflected on both my diligence and my

12   commitment to the case, that order is a significant

13   judgment on the quality of work that I've done, and

14   Mr. Harris ought to be mindful of that in listening to

15   what transpires at this hearing and making a judgment

16   about whether I serve his interests properly.  I do not

17   recall --

18          THE COURT:  Well -- I'm sorry.

19          MR. McGINTY:  I do not recall, and I say this

20   having searched my memory, I do not recall an instance

21   where the Court addressed me on the subject of contempt

22   or my failure to file or my failure to address an issue

23   properly.  I say that having searched my memory.  I

24   have, um, attempted in this court, perhaps more than in

25   some other courts, but I have attempted in this court to

1    attend to responsibilities that have been assigned to me

2    and do it in proper fashion.

3            THE COURT:  And just to be careful.  This is

4    why I invited you to either confirm or correct my

5    memory.  It's conceivable that I've confused something

6    that we've had -- that I had with one of your colleagues

7    with you.  I think -- and I must say that I've been

8    doing many other things today, too, and I put that order

9    out very quickly yesterday.  I had to because we have

10   hearings next week and my schedule is very busy.  We're

11   going to use all the time I've set aside for the

12   hearings and for the trial.

13       If I made a mistake about our prior history

14   together, and I may have, um, I'm sorry I did that and

15   maybe Ms. Conrad will be able to clarify who she and I

16   were speaking about.  I assume she remembers our

17   colloquies.

18       But go ahead.

19           MR. McGINTY:  I will say I have searched my

20   memory and I have tried to -- I'd even looked through

21   chronology of cases, trying to unearth the instance

22   where I fell short, um, of an obligation in a case where

23   the Court brought it to my attention and where the issue

24   of contempt or the consequences or a penalty or a

25   discipline or anything of that sort was ever raised with

1   me and frankly I --

2           THE COURT:  And for present purposes, I'm

3   going to accept that.

4           MR. McGINTY:  Now, um, I have --

5           THE COURT:  Subject to learning something

6   else.

7           MR. McGINTY:  I have tried in this case to

8   raise the issues which I thought were fairly raised by

9   the indictment.  I raised those understanding and

10  appreciating that this court takes those issues

11  seriously.  So in each briefing I've done, I've tried to

12  address cases both favorable and unfavorable.  I've

13  tried to place it in a light that expresses as best I

14  can what I think are the novel issues that are, um --

15  are raised in this case and the novel issues which I

16  think sort of push the law beyond what any known cases

17  have permitted.  I've done that as carefully as I've

18  could.  I've tried to raise every issue I could possibly

19  raise.

20          THE COURT:  But you raised nothing, you

21  addressed nothing on January 13th.  You filed nothing.

22          MR. McGINTY:  And I have no excuse for that.

23  I have none.  You know, a failure -- and I told this to

24  my client.  I have -- you know, where there's an

25  obligation to file papers, I have the obligation to meet

1      that date.  I didn't do that here.

2              THE COURT:  And you or somebody must have been

3      doing some work on this because what you filed last

4      night, um, didn't look like you had written it in just a

5      couple of hours.

6              MR. McGINTY:  No, I've been working on this

7      case.  I was in Judge Saylor's session just last week

8      trying to get access to some impeachment material that I

9      might use in connection with one of the government's

10     witnesses.  The government was there as well.  There has

11     been -- I have tried to parse in this case, as best I

12     can, what I think are a series of issues, sorting them

13     and identifying how they interrelate with one another,

14     and this has posed some difficulty.  I have tried as

15     best I can to sort those.  I had drafted papers to do

16     that.

17             So yesterday, no, I didn't, last night, try to,

18     um, write -- without having outlined, without having

19     tried to thought through or think through what exactly

20     would be the issues that would have to be addressed in

21     the papers.

22             I am dismayed by my failure, um, and I tried to

23     make that plain to Mr. Harris, because apart from

24     apologizing to the Court, he has little way of assessing

25     whether a lawyer is acting appropriately, diligently,

```
 1    carefully, and responsibly, and his few ways of doing
 2    that depend upon judgments that are relatively
 3    underinformed.  So he has to rely on me and failing to
 4    do something in time to raise issues before the Court is
 5    a significant dereliction, and I told him that, and I
 6    told him that he has to make a judgment about whether
 7    this reflects on my larger commitment to the case and my
 8    larger preparation to the case, because I think it does.
 9          So I am dismayed in my failure to meet the Court's
10    order.  I am dismayed at the failure to raise issues
11    which I think are consequential in how this court frames
12    instructions to the jury on how the Court identifies
13    what issues the jury is going to address and how that's
14    going to be framed for them.  There are numerous novel
15    issues here and it aids the Court not a bit to have
16    those presentations made untimely.
17          I would say with respect to the motions in limine,
18    um, the difficulty that I had in framing this is in
19    trying, um, to try to find an order and coherence to the
20    contest to the way the government is presenting the case
21    and -- so that certain of the issues that are in the
22    memorandum are addressed in one frame, um -- so, for
23    example, the issue of the rim on the conspiracy, um,
24    depends upon issues that relate to a web forum and how
25    that web forum -- whether the content of the web forum
```

1   is admissible and under what circumstances.

2        So in the papers I'm addressing multiply the issue

3   of the admissibility and the consequence of the

4   admission of those things because they interrelate to a

5   number of issues that sort of weave through the

6   presentation.

7             THE COURT:  Well, the -- I've read, but not

8   studied your submission and the government's trial

9   brief, and some of these issues are issues that I either

10  identified or amplified when you were here on December

11  13th.  They're serious issues.  I pointed you and --

12  it's in my written order, to my *Pappathanase* decision,

13  the only time in almost 27 years I've granted a Rule 29

14  on a whole case, that a particular conspiracy charge was

15  not a conspiracy that could have been proven on the

16  evidence.  And these are challenging issues.  And I can

17  see you're doing some work on them.

18            MR. McGINTY:  And I tried to address

19  *Pappathanase* several times in my brief to sort of

20  develop the issue.

21            THE COURT:  I know.  I know.  And -- well, let

22  me see what Ms. Conrad has to say about all of this.

23            MS. CONRAD:  Thank you, your Honor.

24        Your Honor, first of all, with respect to the

25  question about prior interactions about these types of

1      issues, I recall one occasion probably about five years

2      ago, if memory serves, I think the issue was the late

3      filing of a sentencing memorandum by another assistant

4      public offender, um, not --

5                  THE COURT:  Who is that?

6                  MS. CONRAD:  Oscar Cruz.

7                  THE COURT:  Yeah, it occurred to me today that

8      I may have confused Mr. McGinty with Mr. Cruz.

9                  MS. CONRAD:  I am aware of one other instance

10     in which the Court had expressed its displeasure about a

11     missed deadline.  I don't remember the details.  I do

12     not recall that I appeared in court on that matter.  I

13     believe the instance with Mr. Cruz was the only

14     instance.  I, at that time informed the staff or

15     reminded the staff of the importance of meeting

16     deadlines, the importance of not simply presuming that a

17     motion for leave -- a motion for leave to file late

18     would be allowed and simply letting the deadline blow

19     past.  And in particular I discussed and have discussed

20     those issues with Mr. McGinty on many occasions, not

21     because of any concern I had about his ability to meet

22     those, but because he's the First Assistant Federal

23     Public Defender and in that capacity we discuss

24     administrative and supervisory issues on a regular

25     basis, and I know he's well aware and has joined me in

1    reminding the staff of the importance of these things.

2         I am ultimately convinced that Mr. McGinty simply

3    failed to report the deadlines in a place where he would

4    be reminded of it and I think that was compounded by the

5    fact that he was out of the country in a different time

6    zone from January 4th through January 20th working on a

7    case where largely he was in Rwanda with limited ability

8    to communicate with the office.  So I think that there

9    is -- this was absolutely an instance of, at most,

10   negligence.

11        However, I also want to emphasize that with

12   respect to the entirety of this case, it is not a

13   reflection of neglect of this case.  Mr. McGinty has

14   been working very hard on this case for quite some

15   time.  Um, I pass his office on the way in in the

16   morning.  I pass his office on the way out in the

17   evening.  He is in early, he's been meeting with

18   others.  He's been working on the case, researching the

19   case and preparing for trial.  And I know that he has

20   devoted and dedicated himself to this case as he does

21   with all of his cases.  And I don't think there's any

22   question that, um, this was an instance in which he

23   simply put the case on the back burner and neglected to

24   attend to it.

25             THE COURT:  Well, when I saw Mr. McGinty in

1    December, he told me he had another major case, um,

2    beginning I think in April, um, maybe even earlier, and

3    he actually was asking for the February 6th trial date

4    because he wanted to interview witnesses after that.

5    And he has, up to this point, you know, paid serious

6    attention to the case and he's certainly capable of

7    doing it, but in my view you share substantial

8    responsibility for this.  The case is assigned to you,

9    the Federal Public Defender, you decide how to staff

10   it.

11        Mr. McGinty keeps telling me, and I don't think

12   he's exaggerating, that this case is unprecedented or

13   particularly presents novel challenging issues.  You

14   know, in many -- you know, if he's got that other major

15   matter and he's got this case and he can't do both of

16   them in a timely way, um, you've got other people in

17   your office.  And, in fact, typically, I believe, these

18   days two assistant federal defenders as well as two

19   prosecutors show up in every case, including felon in

20   possession cases.  As I recall when you were before me

21   in *Andrews* recently, you had somebody sitting next to

22   you, but I don't know what she did.

23             MS. CONRAD:  She's not an assistant federal

24   public defender.

25             THE COURT:  The point is, um, it strikes me

1    that this is an institutional failure as well as an

2    individual failure.  I've actually had some discussion

3    since yesterday with about five of my colleagues who --

4    well, they haven't had this problem, they've had others

5    with Mr. McGinty's colleagues and outside the context of

6    this case I expect you'll be informed of those and

7    they'll be addressed.

8              MS. CONRAD:  Well, I certainly welcome their

9    feedback, your Honor.  I try to monitor things as best I

10   can.  The only reason I point out the issue as far as an

11   assistant public defender as well as another type of

12   lawyer is that we do have in our office a research and

13   writing specialist who provides substantial assistance

14   on the cases.  But we also are attempting to staff our

15   cases in a way where we can maximize the percentage of

16   indigent cases that we can take and that does not

17   necessarily entail having double staffing trials,

18   unlike, I'd say, most of the U.S. Attorneys do.  We have

19   done that, in the past, for training purposes, but it is

20   not the rule of thumb.

21             THE COURT:  Well, we're not at trial and this

22   was in part a failure with regard to research and

23   writing.

24             MS. CONRAD:  Right.

25             THE COURT:  There are novel issues.  I -- that

1   were identified by the parties.  There were issues

2   identified by me.  Did you read my December 14th order?

3             MS. CONRAD:  I did.

4             THE COURT:  I thought you would.  You know,

5   I'm pointing out cases, I'm sculpting questions that are

6   not ordinarily done.  And aren't those the type of

7   matters that your research and writing specialist

8   assists on?

9             MS. CONRAD:  Yes, and I believe that

10  Mr. McGinty has had the assistance of a research and

11  writing specialist in this case, which is probably one

12  of the reasons why he was able to file a thorough memo

13  last night.  It was simply a failure to, um,

14  internalize, if you will, what the deadline was.  It was

15  not a failure to do the underlying work.

16            THE COURT:  Well --

17            MS. CONRAD:  I know that Mr. McGinty was

18  appalled when he realized that he had missed this

19  deadline.  I was present when the order -- he called me

20  immediately when he received the order.  I was already

21  aware of the order.  And, um, he was quite abashed and

22  flummoxed by the fact that he had done this.  But --

23            THE COURT:  And this was -- I confidently

24  assumed yesterday that this wasn't intended to be

25  disrespectful of the court and I'm confirmed in that

1    assumption.  My concern is for my ability to manage a
2    very busy calendar and to decide challenging issues on
3    an informed basis, which requires that they be briefed
4    well, sufficiently far in advance, so the parties have a
5    chance to address each other's arguments and so I can
6    study them and make informed decisions.  I've carved out
7    at least two mornings next week to do that.  And my
8    focus -- our focus is now going to be on what remains to
9    be done, um, so I can try to accomplish what I intended
10   to accomplish next week and so anything further that
11   needs to be done before February 21, um, when we start
12   trial, will be done and so the trial can proceed as
13   efficiently as possible, because it is going to proceed
14   on that date.

15        When I have everything that I previously ordered
16   -- and the government's got more work to do, too, um,
17   there will be no more issue of civil contempt.  Civil
18   contempt is intended to compel compliance with orders.
19   Potentially there's the issue of criminal contempt, but,
20   um, at the moment I'm not inclined to go in that
21   direction either, but I haven't -- it's not what I
22   intend to focus on right now.

23        I don't have any actual motions in limine, I don't
24   have any memos in support of them, and I don't have it
25   from the government either.  And I think the

1    government's treatment of a number of these evidentiary

2    issues have been far too casual.  I think I said this in

3    December, but -- I know I can conditionally admit

4    co-conspirator hearsay.  I also have the authority to

5    require that all of the evidence that you're going to

6    use be presented first.  In most cases I wouldn't do

7    that.  But it's not clear to me, from reading the

8    government's trial brief, who the alleged

9    co-conspirators are as to whom I'm making *Petrozziello*

10   rulings and it's not even clear to me that the

11   government's identified the people who made the

12   statements or want submitted under Rule 801(d)(2)(E).

13   And if you've got cases -- and maybe you mentioned it,

14   but if you've got cases that say something can come in

15   under Rule 801(d)(2)(E) without identifying a declarant,

16   um, that's not a common issue.  And that's by way of

17   example, because I haven't studied it.

18        Of course I'm offended that it was at about 8:00

19   last night you raised some issues that seem to be --

20   well, they're at least new to me.  I don't know to what

21   extent they're new to the government regarding

22   admissibility.  Are they new, some of them?

23              MR. BOOKBINDER:  Some are, your Honor.  I

24   think that's fair to say.

25              THE COURT:  You're supposed to have two weeks

1    -- not two weeks, but 12 days to address them.  And I

2    was supposed to have them the 25th to the 7th to work on

3    them.

4          I don't issue orders that I don't intend to

5    enforce and I don't issue orders that I feel are

6    impossible to obey, but my inclination is to order the

7    defendant and the government to convert their

8    submissions regarding the evidentiary issues into

9    motions in limine, discrete documents, each with a

10   supporting memo, just as stated in the pretrial order

11   and just as stated in Rule 7.1, and to have them filed

12   by 9:00 on Friday morning -- unless you persuasively

13   tell me that's not feasible, and if it's not, tell me.

14              MR. BOOKBINDER:  Your Honor, from the

15   government's perspective, could I have a moment to

16   consult?

17              THE COURT:  Yes.

18              MR. BOOKBINDER:  Thank you.

19              (Pause.)

20              MR. BOOKBINDER:  Your Honor, from the

21   government's perspective, if you're talking about us

22   filing motions in limine to admit essentially the

23   co-conspirator statements, um, and I think we've now --

24   we're now in a position where we've narrowed and focused

25   more on those statements than we had when we filed the

1    trial brief.  So we ought to be able to file something

2    about that by Friday morning.  I think if what the

3    Court's looking for is for us to respond to the issues

4    Mr. McGinty raised, that may be difficult.

5              THE COURT:  Yeah, I'm just -- maybe I'm -- but

6    you raised a couple of issues -- evidentiary issues.

7    It's Page 26, regarding the post -- you cite some cases

8    there.  You've come closer to what I had in mind.

9        On this issue of co-conspirator statements, I just

10   told you what I thought, but, you know, it's true as far

11   as it goes on Page 29 that, under *Petrozziello* I can

12   conditionally admit -- I think I said this in December,

13   but maybe I didn't.  I also have, as I said, the

14   discretion to require that you make a substantial

15   showing either before trial or with your first

16   witnesses.  I don't want to try this case for three

17   weeks and then tell the jury, um, they have to disregard

18   a substantial amount of evidence.  That's going to

19   invite a mistrial and maybe precipitate it.

20             MR. BOOKBINDER:  Your Honor, it may be helpful

21   to -- we've got some clarification on what our witness

22   order is going to be and when things will come in and

23   the posts --

24             THE COURT:  I don't want to hear about this

25   now.

1              MR. BOOKBINDER:  Okay, but we may get --

2              THE COURT:  But here's the issue.  You know, I

3    didn't see in your submission who you want me to make

4    *Petrozziello* rulings on.  What you should give me is the

5    names of all those people and what the evidence is going

6    to be that they made the statements in furtherance of

7    some conspiracy, not necessarily a conspiracy in this

8    case -- and there are First Circuit cases that you could

9    cite for that proposition, um, and then, you know, we're

10   scheduled to start on Tuesday morning with these issues,

11   on Tuesday morning, on Wednesday morning, and then I

12   thought I wasn't going to see you again until we started

13   trial.

14        Mr. McGinty, you know, starting on Page 19 of your

15   memorandum you filed last night, there's a whole series

16   of statements with the citation of virtually no cases,

17   um, that various forms of proposed evidence are

18   inadmissible.  Each of those is, in fact, a motion in

19   limine.

20        Is your office able to supplement this by Friday

21   morning?

22              MR. McGINTY:  Yes.

23              THE COURT:  And I think these are -- because

24   of the novelty of the case, you know, I think these are

25   serious issues.  And the reason I directed you -- I also

1    don't have -- the trial memo makes some mention of jury

2    instruction issues, again, without much authority on

3    them.  The government's proposed jury instructions,

4    which I've only glanced at, seem to me to be too generic

5    for this case and this is why I asked you to confer to

6    try to identify the issues.  But I don't have any

7    proposed jury instruction from the defendant, including

8    the trial brief.  I mean, there's some mention

9    particularly of --

10              MR. McGINTY:  I differ -- I differ.  There's a

11   list of instructions with footnotes in support of them,

12   instructions that create the balance --

13              THE COURT:  I want a complete set of

14   substantive instructions as I typically, um, would get

15   so I can read one and read the other.  I mean, this is

16   helpful.  This is a beginning.

17              MR. McGINTY:  Your Honor, the difficulty is

18   that I can't -- I can't foresee the government's case

19   surviving Rule 29.  I can't.  So my difficult in framing

20   --

21              THE COURT:  But this is exactly why -- what

22   I'm ordering you to do, what I previously ordered you to

23   do is so important.  Because I can't make informed

24   evidentiary rulings unless I have a good sense of what

25   I'm going to instruct at the end of the case.  And it

1    evolves.  It evolves.  That's one.  And, two, um, you

2    need that for a Rule 29.  I don't need proposed

3    instructions on reasonable doubt.

4         But I essentially am looking to -- what I was --

5    if you had all done what I directed you -- ordered you

6    to do on December 13th and 14th, these issues would now

7    be in much sharper focus.  I would have a better idea of

8    what the government is going to need to prove to survive

9    a Rule 29 motion.  And now I'll look the this.  It's

10   helpful.  But it doesn't strike me as complete.

11             MR. McGINTY:  If I could just frame my

12   difficulty.

13        The government's view, and they express it in one

14   of their instructions, is that the inherent

15   susceptibility of a sole object to be misused is -- can

16   support a finding of a conspiracy with this, between the

17   seller and the purchaser, and aiding and abetting of the

18   seller, um, of the conduct of the purchaser.  Now, I

19   can't find any cases that support that.  And I would

20   submit that ***Direct Sales*** says quite the opposite.

21        So in terms of my framing an instruction that

22   guides the jury to understand a proposition which I

23   don't think is supported in the law, I can't do it.

24             THE COURT:  I think we had some of this

25   discussion in December.  You talked about the hammer --

or was that another case?

MR. McGINTY:  But I think that --

THE COURT:  You know, if you sell somebody a
hammer, it's not intrinsically illegal, but if somebody
-- I think I said this in December.  If somebody says to
you, you know, at Home Depot, "Sell me a hammer.  I want
to go home and bash my wife's skull and kill her and
collect the insurance," and the guy says, "I'm happy to
sell you a hammer for that purpose and, you know, you're
not just going to pay me for the hammer, you're going to
pay me another 1,000 bucks."  The hammer's an overt act.

MR. McGINTY:  That conspiracy involves a
person being drawn into the specific conduct.  That's
the -- precisely the problem here is that that's not the
case.  And what I tried to do in the motion to dismiss
is to say that the government's summary of what their
evidence is going to be is that three of the four
purchases, purchased without conversation, without
communication, without expression of what they were
going to do, with no information between conveyed
between buyer and purchaser.  So under those
circumstances, for me to frame an instruction that gives
the jury to understand what the boundaries are of the
law that helps them distill that, I can't do it because
the answer is that's not a proposition supported by the

1    law.  **Direct Sales**.

2            THE COURT:  So you would just write out what

3    you would like me to say to the jury.

4            MR. McGINTY:  And that's exactly what I did.

5    So turn to Page 3, 4, 5, 6 and 7.

6            THE COURT:  Okay.  So where do you define here

7    the elements of wire fraud?

8            MR. McGINTY:  I did not put the elements down

9    there and I apologize for that.

10           But in terms of the boundaries particular to this

11   case and in terms of what the propositions are that's

12   going to guide the jury's evaluation of the facts, I

13   can't give structure to a theory that I don't think is

14   supported in the law.  I don't know how to do that.

15           THE COURT:  You don't have to give me their

16   theory, I want you to give me -- I've ordered you.  I'm

17   ordering you again, to give me -- you know what proposed

18   jury instructions look like.  Your office files them in

19   almost every case.  But the generic pattern instructions

20   require considerable tailoring and I gave you elaborate

21   conspiracy instructions.

22           There's no proposed instruction here that I recall

23   seeing, for example, about venue.  This is a case that

24   involves the jury being required to find something that

25   I can't ever remember having instructed on.  Doesn't the

1  government have to prove venue?  That was part of your

2  motion to dismiss.

3          MR. McGINTY:  I remember it quite well and

4  I --

5          THE COURT:  I want a set of documents that I

6  can use to fashion jury instructions.  When I have the

7  jury instructions from the two sides, it will bring into

8  sharper focus for me what I have to resolve and give me

9  a framework that I expect will evolve, as I continue to

10  work on it, to decide the foreseeable Rule 20 -- to

11  decide the evidentiary issues.  In other words, it's not

12  that evidence of a hammer is inadmissible, but it's not

13  alone enough, it's not intrinsically unlawful to buy a

14  hammer.  Um, it will assist me in making evidentiary

15  rulings.  It will give me a framework -- certainly your

16  view of the framework as to how I would decide a Rule 29

17  motion.

18      And I think -- and I'll study this far more, but I

19  think there are -- based on what I've been told, there

20  are substantial questions about whether the conspiracy

21  charged can be proven.

22      In fact, where is Mr. Hanshaw now?

23          MR. BOOKBINDER:  Mr. Hanshaw, your Honor, is

24  now in custody.  We had a final revocation hearing last

25  week.  That's what Mr. McGinty had hinted at as well.

1   His release has been revoked.  He is in custody for the

2   next four months.  So he will be a witness.

3            THE COURT:  Okay.  Here, I want those jury

4   instructions in their familiar form.  Even your

5   positions on them might evolve.

6        But can that be done by Friday, too?

7            MR. McGINTY:  Well, I can't -- I will try to

8   do that by Friday by 5:00 p.m.

9        Um, your Honor, I don't mean to belabor this

10  point, but I read the government's instruction on when

11  it is a seller of an object can be complicit in a

12  conspiracy.  It creates no cognizable standard that a

13  jury could use in evaluating what passes for sufficiency

14  to prove that.

15       In asking me to provide a responsive instruction

16  to give life to a theory of culpability which I don't

17  think is supported by law, I literally don't know how to

18  do that.

19       Now, I can give the Court -- I can go through the

20  instructions that the Court used in *DiMasi* and propose

21  those to the Court, the omission is going to be that I

22  can't furnish the theory that they have to give life to

23  to explain how it is that a seller becomes responsible

24  for consequential conduct of third parties.  I mean,

25  what is the knowledge component?  What has to be

1   communicated?  Do there have to be multiple sales?  What

2   are the predicates a jury evaluates to make complicity

3   someone, who by operation of law, is not complicit

4   without that added ingredient.

5          Now, if the example's going to be if someone's

6   sold a knife and is told, "I'm going to take this and

7   kill my wife tonight with this knife," I can write that

8   instruction.  That if the person identifies with

9   precision the culpable conduct, that -- that -- I can

10  write that.  That's not --

11          THE COURT:  Well, you write what you think

12  needs to be proven and cite the authority and some of

13  it, I'm sure, or maybe all of it's in your footnotes.  I

14  want to know what you think I should tell the jury.  And

15  then the government will know, we'll see the

16  differences, and I'll be able to focus on it.

17          I'll give you until 4:00 on Friday to do that by.

18  And then we'll start, as scheduled, on Tuesday morning.

19  I have until 1:00.  We'll continue on Wednesday morning,

20  I expect.  We'll get as far as we can get.  That's all

21  we'll do next week.  And we'll see what remains to be

22  done before trial.

23          The government needs to -- let me ask you this.

24  The defendant needs to respond to the government's

25  motion in limine, motions in limine, and the government

1    needs to respond to the defendant's.  How about Monday

2    morning?  Which means you need to finish all this --

3    except for perhaps Ms. Sedky, before 6:00 on Sunday

4    night when the Patriots play in the Superbowl.

5              MS. SEDKY:  I will not be watching, your

6    Honor.

7              THE COURT:  That's what I meant.

8              MS. SEDKY:  I will be happily working on the

9    briefing.

10             MR. BOOKBINDER:  Um, your Honor, yes, we'll

11   file our responses by Monday morning.  If I could just

12   clarify --

13             THE COURT:  I'm going to say by 9:30 on Monday

14   morning.  You're both going to finish your motions in

15   limine, submit them on Friday.  Did I give you a time?

16   What did I say, 9:00?  You can make that --

17        Is that what I said?

18             (Pause.)

19             THE COURT:  Well, go to 10:00.  All right?

20   And we'll give you a written order on this, too.

21             MR. BOOKBINDER:  Your Honor, I just want to

22   clarify and make sure I understand, because we don't

23   want to -- we want to provide what will to be helpful to

24   the Court.  I think there were -- the issue that, um,

25   the Court would like us to address in our motions is

about the co-conspirator statements that we mention in
the trial brief, um, who the speakers are, um, and why.
What the evidence is that the -- that we will be
presenting that these people are co-conspirators.  Is
that correct?

           THE COURT:  Just a second.

           (Pause.)

           THE COURT:  Starting on page -- on Page 28 are
the issues about the co-conspirator hearsay.  You can
tell the defendant and me now.

    Is the government going to be trying to get
admitted as co-conspirator hearsay statements by
unidentified individuals?

           MR. BOOKBINDER:  Your Honor, if I could have
one second.

           THE COURT:  Yes.

           (Pause.)

           MR. BOOKBINDER:  Your Honor, the reason we
hesitate in answering are there are two sets of what
would qualify as co-conspirator statements.  There are
the posts, and the posts are discussed on Page 28, and
there are also -- and starting on Page 26, I guess.  And
then there are also a set of what are chats, which are
conversations between Mr. Harris and a specific
individual.  On four of the posts, um, we know who those

1    people are.  They use, you know, nicknames to post --

2    what we have, um, the records would show what people

3    bought and what are their names.  So in those cases

4    they're not unidentified.  We do know who they are.

5         But for the chats, there are conversations between

6    Mr. Harris and, um, some of them are between people who

7    are going to be witnesses in the case, so there's

8    obviously a question about who they are, and they're

9    between people who are going to be co-conspirators,

10   Mr. Phillips, Mr. Hanshaw.  There are also chats with

11   other people who are not witnesses and who we only know

12   by nicknames.  In those cases, um, I believe that our

13   position is -- and we'll crystallize this for the Court,

14   is that we are not seeking to introduce for their truth

15   statements made by these other people who we don't know

16   who they are.  Any statements of theirs would come in,

17   if at all, to show context for what Mr. Harris says or

18   to show their effect on him.  So we would not be seeking

19   to introduce those as co-conspirator statements and I

20   think that's the distinction that we're going to make.

21        THE COURT:  I want you to identify at least a

22   sample of each of those, so it's not an abstract concept

23   for me, and you've cited some cases for these

24   propositions, but, you know, what propositions are you

25   relying on?  How -- you know, "These statements like the

```
1   following are not being entered for their truth" --
2   although -- well, I need the statement.  If some
3   unidentified person says, "Your product is great.  It
4   permits me to steal Internet service.  I'm saving a
5   fortune and ripping off Comcast, which I hate," I don't
6   know whether you regard that as being for the truth or
7   not.
8              MR. BOOKBINDER:  That's a good question.
9              THE COURT:  Well, there's a good argument it's
10  for the truth and I think it's probably for the truth
11  because if you -- it seems to me that if you have to --
12  you know, you've undertaken to say -- to prove -- to say
13  you recognize you should prove, you're required to prove
14  that Mr. Harris knew that the product would be used by
15  particular people to get something of value without
16  paying from the internet service providers.
17             MR. BOOKBINDER:  Your Honor, we will flesh it
18  out in what we file and we will attach at least samples
19  of all of the --
20             THE COURT:  All right.
21             MR. BOOKBINDER:  Your Honor, you also -- you
22  know, you refer to the jury instructions and the fact
23  that --
24             THE COURT:  I'll have to look at them more
25  closely.
```

1              MR. BOOKBINDER:  That you thought they may be

2     too generic.

3              THE COURT:  I'll look at them.  I haven't

4     studied them.

5              MR. BOOKBINDER:  So we won't plan to deal with

6     that until Friday.

7              THE COURT:  I'll take a look at them.  See in

8     view of what Mr. McGinty filed, whether you think they

9     require some refinement.  This is already injuring our

10    ability to work the way I intend to work.  But, you

11    know, we're starting a trial in three weeks, and I'll

12    say the following.

13         Mr. Harris, are you still there?

14              THE DEFENDANT:  Yes, I am.

15              THE COURT:  Um, in Mr. McGinty you have a very

16    experienced, intelligent, and energetic lawyer.  No

17    lawyer has just one case and he made a disturbing

18    mistake in this case, up till now, in the last month.

19    Having said that, he knows your case.  I expect that he

20    and Ms. Conrad are going to make sure that not only he,

21    but whoever else is necessary, um, will work on

22    representing you.  A person with court-appointed counsel

23    does not have a right to whoever he wants to represent

24    him, there has to be a good reason to replace counsel,

25    and particularly as trial approaches.

1          So you can talk to Mr. McGinty about whatever you

2     want to talk to him about.  If any motions are filed,

3     I'll deal with them.  But nobody should fail to obey any

4     of my orders because he or she thinks that this case is

5     not going to proceed on the schedule that I've

6     established.

7          And, Ms. Conrad, the order I'm going to issue,

8     probably tomorrow, is going to direct you to discharge

9     what is your responsibility anyway, to make sure that

10    all orders in this case are obeyed.  It's your office

11    that's appointed.  And while I certainly don't expect

12    there's going to be any repetition of this problem in

13    this case, if there is, the order's directed to you as

14    well as Mr. McGinty and anybody who may appear with

15    him.

16         It's very unfortunate that any of us have had to

17    spend time on this, but, as I've said, we've got three

18    weeks until trial.  We'll do what's necessary to start

19    that trial and I trust to finish it on schedule and I

20    think it raises a lot of interesting issues, many of

21    them identified by Mr. McGinty.

22         Is there anything further for today?

23              MS. CONRAD:  Not from me, your Honor.

24              MR. BOOKBINDER:  Not from the government, your

25    Honor.

1          THE COURT:  All right.  The Court is in

2     recess.

3               (Ends, 5:00 p.m.)

4

5               C E R T I F I C A T E

6

7          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

8     hereby certify that the forgoing transcript of the

9     record is a true and accurate transcription of my

10    stenographic notes, before Chief Judge Mark L. Wolf, on

11    Tuesday, February 1, 2012, to the best of my skill and

12    ability.

13

14

15    /s/ Richard H. Romanow 11-06-12

16    _____
      RICHARD H. ROMANOW  Date

17

18

19

20

21

22

23

24

25